RECEIVED
06/17/2026
KELLY L. STEPHENS, Clerk

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JEFFREY RYAN FENTON,

                  Plaintiff

      v.

VIRGINIA LEE STORY et al.,

                Defendants

CASE NO. 25-5592[1]

## EMERGENCY MOTION TO STAY OR EXTEND APPELLANT BRIEF DEADLINE; FOR LEAVE TO FILE DELAYED OBJECTIONS AND RECONSIDERATION OF DOC 31-1 AND DOC 42-1; FOR PANEL REVIEW; AND FOR THRESHOLD CAPTION, ACCESS, SERVICE, RECORD-CORRECTION, TRUTH-CERTIFICATION, AND NO-GOOD-FAITH / IFP RELIEF BEFORE MERITS BRIEFING

Plaintiff-Appellant Jeffrey Ryan Fenton respectfully moves for emergency relief from and concerning the June 16, 2026 appellant brief deadline. This motion is filed to prevent dismissal, default, forfeiture, or forced merits briefing under unresolved threshold defects that Plaintiff timely raised but that remain narrowed, deferred, or unresolved.

1.      Plaintiff alternatively requests an extension sufficient to allow meaningful panel review and completion of threshold objection, access, caption, service, record-correction, and no-good-faith/IFP issues before merits briefing resumes;

---

[1]   This lawsuit was originally filed on October 13, 2023, in the United States District Court for the Western District of Michigan (hereinafter "MIWD") as case no. 1:23-cv-01097. On October 25, 2024, MIWD transferred this lawsuit as ordered in ECF 127 to the United States District Court for the Middle District of Tennessee (hereinafter "TNMD") as case no. 3:24-cv-01282. The language used in the file stamps of each page filed is slightly different between the two courts. MIWD uses the term "ECF No." (which I abbreviate as "ECF"), while in place of that, TNMD uses the term "Document" (which I abbreviate as "DOC"). Both courts use the term "PageID" (which I abbreviate as "PID"). Citations to the court record in this lawsuit will be notated without the case name or number, using the starting DOC/ECF number, followed by both the beginning and ending PID. The Notice of Electronic Filing for this transfer is recorded in TNMD DOC 131, at which point the DOC/ECF number from MIWD was retained and continued, but the PID was reset after DOC 130, PID 5727, to restart at zero.

2.      Plaintiff requests that the Court, at minimum, enter immediate interim relief today preventing dismissal, default, or forfeiture while this emergency motion and threshold matters are reviewed;

3.      Plaintiff requests that the Court grant leave, for good cause, to file delayed objections and/or reconsideration as to DOC 31-1 and DOC 42-1;

4.      Plaintiff requests that the Court refer the threshold issues to a three-judge panel or the ultimate merits panel before requiring merits briefing;

5.      Plaintiff requests that the Court correct or direct review of the appellate caption based on caption-correction materials the court docketed at DOC 24, Pages 34-35, although Plaintiff submitted those materials as separate case-opening/caption materials and did not intentionally bundle them with the abeyance/continuance motion;

6.      Plaintiff requests that the Court review the no-good-faith / IFP determination because the record contains nonfrivolous threshold access, service, record-correction, Rule 59, public-access, and misconduct-preservation issues; and

7.      Plaintiff requests that the Court grant any relief needed to preserve appellate rights before the Court decides whether and how merits briefing should proceed, including staged briefing, corrected captioning, clarification of the appealable issues, one-substantive-issue-at-a-time briefing as a disability-related accommodation, leave to file separate papers by substantial issue, waiver or enlargement of the ordinary page limit, application of the page limit per paper/topic, or other issue-narrowing relief.

**EMERGENCY POSTURE**

8.     DOC 45 sets the appellant brief deadline for June 16, 2026 and warns that a late brief risks dismissal for want of prosecution. Plaintiff is filing today to show that he is not abandoning the appeal and is not refusing to brief. He is asking the Court to resolve threshold matters that directly affect whether fair merits briefing is possible.

9.     DOC 31-1 denied without prejudice Plaintiff's 90-day abeyance request, denied direct CM/ECF filing privileges, allowed pro se email submission through the Court's designated pro se email box, denied public-access relief without prejudice, and referred substantive relief to the ultimate merits panel. DOC 42-1 later denied IFP and adopted a no-good-faith conclusion. Those rulings now combine with DOC 45 to force merits briefing under unresolved threshold defects.

10.     This delay was not caused by neglect. Plaintiff raised these threshold issues at the beginning of this appeal and in the district court before dismissal. The present emergency exists because the Court narrowed, deferred, denied without prejudice, or left unresolved the same access, caption, service, record-correction, and misconduct-preservation issues that make the appeal procedurally unready today.

11.     Plaintiff has repeatedly informed the Court that fourteen-day response periods are not meaningfully accessible for substantial filings. Because of Plaintiff's disabilities, pro se status, record volume, and unresolved threshold issues, fourteen days may be consumed merely determining what must be filed before Plaintiff can research, organize the record, draft, revise, cite, format, and file a proper response. This is central to why the present objections are late and why Plaintiff requests panel review, active case management, and deadline relief. Each time the Court

refuses to apply the truth already preserved in Plaintiff's pleadings to the matter before it, Plaintiff's burden increases and meaningful justice moves further beyond reach.

## I. PANEL REVIEW IS NEEDED BEFORE MERITS BRIEFING

12.     DOC 31-1 already referred Plaintiff's requests for substantive relief to the ultimate merits panel. Plaintiff respectfully asks that the threshold matters now be reviewed by a three-judge panel or the ultimate merits panel before forcing the filing of an appellant brief. The issues are not merely scheduling preferences. They concern whether the appeal record, party caption, access conditions, service record, and no-good-faith framing are accurate enough for fair appellate briefing.

13.     The panel-review request includes: the unresolved corrected caption; delayed objection/reconsideration of DOC 31-1; reconsideration or panel review of DOC 42-1; public-access and sealed-record issues; unresolved ECF/remote/ADA access requests; unresolved service and service-cure issues; and the Court's treatment of prior misconduct, truth-certification, and Rule 59 manifest-injustice filings.

## II. THE CORRECTED CAPTION REMAINS UNRESOLVED

14.     The court-docketed materials found at DOC 24, Pages 34-35 include both the verified complaint caption and an "OFFICIAL COURT OF APPEALS CAPTION FOR 25-5592 (WITH CORRECTIONS APPLIED)." Plaintiff submitted those caption-correction materials with his case-opening materials, not as part of the abeyance/continuance motion; the court or clerk later docketed or stamped them where Plaintiff found them. The Court has not corrected the caption. Plaintiff should not be forced to brief this appeal under an inaccurate or incomplete caption after the correction was already submitted.

15. The caption is not cosmetic. It identifies the parties, clarifies the party structure, and affects the public docket's presentation of this appeal. The correction includes not only names, but the distinction between individual-capacity, official-capacity, and private-actor defendants. Private attorneys do not have an official capacity, while certain judicial or governmental actors are sued only in official capacity and others are sued in both capacities. An inaccurate or incomplete caption makes the appeal appear more confused than the corrected record, and that prejudice should be corrected before merits briefing.

## III. THE RECORD ALSO REQUIRES CORRECTION OF THE FALSE THRESHOLD FRAMING OF THE CASE

16. Plaintiff asks the Court to review and correct the false threshold framing that this action was properly reducible to scattered, defective, or implausible party geography rather than the corrected party structure. To the extent the record or prior rulings relied on any supposed Maryland-defendant problem or multi-state confusion, that framing was false or materially misleading. The issue involved address-template remnants and correctable address information in the original complaint, not the existence of Maryland defendants.

17. The address issue was known, disclosed, and correctable, and the reason Plaintiff objected to the court's framing is that the repeated address pattern itself showed an obvious template/remnant issue rather than bad faith. Plaintiff told court staff when filing that some addresses were incomplete, unknown, or required correction; Plaintiff did not have completed summonses and service materials on the filing day because he understood he had time to amend as of right and correct address/service information before service. The leftover South Dartmouth/template address did not create Maryland defendants or alter the party structure: the

same address appeared for multiple unrelated parties who plainly did not live together, and later summons/service materials kept those parties' names while using separate Tennessee addresses.

## IV. ACCESS, ECF, REMOTE PARTICIPATION, ADA, PUBLIC-ACCESS, AND RECORD-CORRECTION REQUESTS REMAINED UNRESOLVED

18. Plaintiff repeatedly sought access and threshold relief in both district courts, including ECF access, remote participation, ADA-related accommodations, public access to filings, unsealing/minimizing redactions, service extensions, protective relief, and record correction. These issues began on the day the original complaint was filed. Plaintiff included his Tennessee ADA modification request for temporary use in this federal case, ECF 1-38, PID 2032-2045, and also filed his mother's declaration describing his disability-related legal-writing burden, inability to multitask, need to restart after interruptions, all-night legal work, and overwhelming burden, ECF 1-2, PID 49-53. Five days later, Plaintiff filed his Pro Se Application for Electronic Filing and Service, ECF 5, PID 2094-2095. The pattern continued through ECF 16, ECF 17, ECF 61, ECF 62, ECF 109, DOC 177, DOC 197, DOC 207, DOC 212, DOC 216, DOC 222, DOC 238, and related filings.

19. Plaintiff cannot fairly prepare a merits brief while the record still reflects unresolved access barriers, sealed or redacted materials, unresolved caption correction, unresolved service issues, and unaddressed requests for truthful certification and merits accountability. This is especially prejudicial because Plaintiff has now paid filing fees twice, yet remains forced to carry the entire burden of defending access, service, procedure, truth-certification, and merits preservation without any defendant having filed an honest sworn answer on the merits.

20.     Plaintiff also requests clarification and record-preservation relief regarding digital-media exhibits filed in both district courts. Plaintiff did not know whether separate action was required to ensure those physical or digital exhibits are transmitted to the Sixth Circuit. Because none of the MIWD or TNMD record has been fairly adjudicated on the merits, Plaintiff needs access to and appellate preservation of everything filed to date, including digital media, sealed materials, returned/rejected materials if part of the record, and any exhibits maintained outside ordinary PDF docket entries.

21.     The present posture would require Plaintiff, after paying filing fees twice and being denied meaningful access repeatedly, to compress a sprawling case, an omnibus dismissal, unresolved access and service disputes, and substantial record-correction issues into a single 30-page appellant brief. That is not a fair merits-briefing posture where no defendant has been required to file an honest sworn answer on the merits and Plaintiff has had to keep defending access, service, procedure, truth-certification, and record integrity before he can even reach the merits.

22.     Plaintiff further asks the Court to confront the procedural contradiction. This case was treated as institutionally sensitive when it was transferred, when every District and Magistrate Judge in the Middle District of Tennessee recused, and when the Chief Judge of the Sixth Circuit designated an outside judge. Yet Plaintiff's case was later dismissed without hearing, without meaningful access assistance, without service assistance, without adequate ADA accommodation, without truth-certification, and without point-by-point engagement with the record-supported misconduct concerns Plaintiff preserved. If the case was serious enough to require transfer, full-

district recusal, and outside designation, it was serious enough to require careful threshold management before dismissal.

23. Plaintiff also preserves that this is not merely a disagreement with the district court's merits conclusion. Plaintiff challenges whether there was ever a valid merits adjudication at all, because the court fundamentally denied the due-process conditions necessary to be heard before judgment: meaningful access, adequate disability accommodation, reasonable service assistance, threshold clarification, truth-testing, and hearing before unresolved procedural barriers were converted into dismissal. A judgment entered without hearing or opportunity to be heard is not a valid judicial determination of the party's rights. See Windsor v. McVeigh, 93 U.S. 274 (1876).

## V. SERVICE AND SERVICE-CURE ISSUES REQUIRE RECORD REVIEW

24. Plaintiff continued attempting service throughout the case and repeatedly asked for court assistance when defendants disputed, dodged, or attempted to exploit service issues. From the beginning, Plaintiff filed service/protective/access-related threshold requests, including ECF 16 (motion for extension of time to serve parties) and ECF 17 (motion for protective order). While the case was pending in Michigan, Plaintiff was attempting service under Michigan notice-based service rules, including certified/registered mail and other notice methods. Multiple defendants had actual notice, counsel involvement, public docket access, service attempts, or email/web notice, while still claiming not to have received service or at least not to have received adequate service. Under MCR 2.105(K)(3), "[a]n action shall not be dismissed for improper service of process unless the service failed to inform the defendant of the action within the time provided in these rules."

25. After transfer, Plaintiff also filed updated summonses and asked TNMD to inspect service as to the parties. Plaintiff requested that if any service effort was defective, the court initiate or direct service in the interests of justice, including through court-directed or U.S. Marshals service where appropriate. This particularly matters as to Tennessee state actors and represented state-connected parties who had notice, counsel involvement, or state participation but continued to contest whether service was sufficient. The court dismissed before meaningfully using lesser remedies or clarifying which objections remained live, cured, disputed, or moot.

26. Defendant Walker provides a concrete example. After Walker raised a federal-service objection regarding service on the United States or Attorney General, Plaintiff acted to cure that issue by serving the Attorney General′s Office. Yet the court never acknowledged that cure, and no party clarified whether the objection remained live, had been cured, was moot, or required any further action. Plaintiff should not be forced to spend limited merits-brief pages guessing whether Walker′s service issue remains central, cured, waived, moot, or irrelevant when Plaintiff already took corrective action and the court never clarified the effect of that cure.

27. A separate service group concerns outstanding bankruptcy-related private actors, including the remaining law-firm/attorney defendants who have been served or substantially served but have not appeared, and whom no court has yet compelled to appear. Those actors are important because ordinary immunity defenses do not apply to them in the same way, and the bankruptcy-sale sequence is one of the clearest examples of criminal impropriety alleged in this case. Plaintiff asks the Court to preserve and review these service/readiness issues before delay is later used as another ground to claim waiver, forfeiture, limitations prejudice, or default against Plaintiff.

## VI. THE DISTRICT COURT DISMISSED BEFORE FIRST RESOLVING THRESHOLD MOTIONS AND ACCESS CONDITIONS

28. Plaintiff continued filing for service, access, court assistance, truthful certification, sanctions, record correction, and relief from misconduct after transfer and while awaiting meaningful adjudication. Plaintiff reasonably expected the assigned district judge to address those pending threshold filings before deciding whether dismissal was proper. Instead, the case was dismissed wholesale while Plaintiff's filings were substantially narrowed, minimized, or mischaracterized.

29. Plaintiff built the record because the court's early framing created a specific danger: if Plaintiff did not rapidly substantiate the facts, the case could be dismissed as totally implausible, completely frivolous, or devoid of merit without ever requiring defendants to answer truthfully. ECF 31 confirmed that the district court reviewed ECF Nos. 14-30, recognized that Plaintiff had paid the filing fee and could not be screened under 28 U.S.C. § 1915(e), and rejected immediate venue dismissal at that stage, but also discussed the possibility of sua sponte dismissal where allegations are deemed totally implausible, completely frivolous, or utterly devoid of merit. Plaintiff therefore filed extensive declarations and evidence, including his mother's substantial declaration and other sworn materials, to show that the facts were not frivolous and that the claims were record-supported before false doubt could harden into dismissal.

30. This is why Plaintiff asks the Court not to treat this appeal as a frivolous, elective, or profit-seeking dispute. The case concerns the forced loss of Plaintiff's home, life savings, labor, premarital and retirement resources, and the ability to meet basic needs necessary for a sustainable life. The property at issue was forced through auction for $324,359 on October 30, 2019, resold four months later for $540,000, and recently resold again for $925,000 on April 14, 2026, while

Plaintiff has preserved that he received nothing from the loss of the home and was left financially devastated. The court has been notified of these consequences, but the consequences have not been meaningfully acknowledged before the case was treated as implausible. Threshold review is therefore necessary because the case concerns due process, federal jurisdiction, property rights, and deprivation of life-sustaining resources, not an abstract grievance.

31. That posture is central to this emergency motion. The appeal is being forced into merits briefing before the Court has corrected the procedural record that explains why merits development never occurred: defendants were not required to appear and plead truthfully on the merits; service disputes were not cured; access requests were not meaningfully granted; and multiple filings seeking transparency, public access, and truthful certification were not resolved before dismissal.

## VII. THE RULE 59 / MANIFEST-INJUSTICE AND FRAUD-ON-THE-COURT ISSUES ARE NONFRIVOLOUS

32. The no-good-faith finding cannot stand without panel review because Plaintiff's Rule 59 filing did more than disagree with dismissal. Plaintiff described the substance of manifest injustice, clear legal error, fraud on the court, ignored evidence, denial of access, and procedural unfairness. Plaintiff did not know the technical labels "manifest injustice" and "clear legal error," but he tried his best as a pro se litigant to explain precisely those same concepts in substance. DOC 24 specifically preserved that the Rule 59 order rejected DOC 238 through 238-3 while Plaintiff was challenging false statements, record concealment, misconduct, and access denial.

33. A pro se appellant with disability-related limitations should not lose appellate rights because the district court refused to construe the substance of his filings, denied or ignored

threshold access requests, and then certified the appeal as not in good faith. The existence of these unresolved record and access issues is itself a nonfrivolous basis for panel review.

## VIII. CIRCUIT EXECUTIVE SUBMISSION SHOWS DILIGENCE AND GOOD CAUSE

34. Plaintiff also respectfully notifies the Court, only to show diligence and good cause, that he has submitted judicial-conduct materials to the Circuit Executive through the proper administrative channel. Plaintiff does not ask this motions panel to adjudicate the substance of those administrative matters here. The point is narrower: the submission required substantial, time-sensitive work to preserve threshold judicial-conduct concerns while appellate deadlines remained pending.

35. Plaintiff did not negligently choose to ignore the appellant brief. He had been working on those administrative materials since approximately October and reasonably hoped to complete that preservation work before the IFP issue was decided. Judicial-conduct rules also make timing significant: Rule 11(e) of the Rules for Judicial-Conduct and Judicial-Disability Proceedings permits a chief judge to conclude a complaint proceeding in whole or in part when intervening events render allegations moot or make remedial action impossible. When DOC 42-1 denied IFP and DOC 45 later set the appellant-brief deadline, the emergency accelerated. Plaintiff's decision to finish months of preservation work rather than file a compressed merits brief under an unresolved 30-page omnibus posture was good-faith diligence, not abandonment of this appeal.

36. Plaintiff also objects that his July 22, 2025 filing was not just an abeyance request. It was a motion for continuance to prepare criminal and ethics filings, with notice of judicial and professional misconduct and failure to enforce codes of conduct required to maintain a fair and impartial tribunal. DOC 31-1 reduced that filing to a 90-day abeyance request to document alleged

misconduct, then denied abeyance because no briefing schedule would issue unless and until Plaintiff received IFP or paid the filing fee. That false framing and deferral shifted time against Plaintiff even though the filing itself was heavily fortified with citations and proof offered to show good cause and why the Court needed to act before briefing. Plaintiff objects that the order did not sufficiently engage the record before concluding that grounds had not been shown, and that the public record now reflects the narrowed procedural label rather than the misconduct-notice, ethics, and fair-tribunal function of what Plaintiff actually filed.

### IX. PLAINTIFF DOES NOT SEEK TO EVADE MERITS BRIEFING

37.     Plaintiff is not asking the Court to excuse him from briefing the appeal. Plaintiff asks the Court to stay the brief deadline until the threshold record is meaningfully narrowed, corrected, and reviewed by a panel, including dismissal or resolution of frivolous procedural objections and clarification of what issues are properly before Plaintiff for merits briefing. Plaintiff further requests staged briefing or leave to file separate papers addressing each substantial issue. In the alternative, Plaintiff requests waiver or enlargement of the page limit in the interests of justice, or application of the 30-page limit per paper and per substantial topic, because the omnibus dismissal cannot be fairly addressed in one compressed brief without forcing Plaintiff to omit preserved issues the Court may later deem central.

### X. A FIXED EXTENSION ALONE IS NOT ENOUGH WITHOUT ACTIVE CASE MANAGEMENT, ISSUE-NARROWING, AND THRESHOLD REVIEW

38.     A fixed number of additional days will not cure the problem if the Court waits, leaves the same unresolved threshold defects in place, and later imposes another briefing deadline under the same distorted record. Plaintiff respectfully requests a stay or structured briefing order

under active case management, not merely a short continuance that leaves the appeal in the same impossible posture.

39.    DOC 45 imposes a combined merits-brief limit of 30 pages or 13,000 words. That limit may be workable in an ordinary appeal with a narrowed record and defined issues. It is not workable here while the dismissal remains omnibus, the corrected caption remains unresolved, numerous access and service-cure requests remain unaddressed, defendants were not required to plead truthfully on the merits, and the district court's dismissal and Rule 59 rulings substantially ignored or mischaracterized Plaintiff's filings.

40.    Before Plaintiff can fairly brief the merits within the ordinary page limit, the Court should either resolve the threshold matters or narrow the appeal in a way that identifies what issues must be briefed first. Otherwise Plaintiff is forced to use a limited appellant brief to answer every false premise, unresolved service objection, access denial, caption defect, immunity theory, jurisdictional theory, no-good-faith finding, and misconduct/record-correction issue at once. That would not produce fair appellate review.

41.    Plaintiff therefore asks the Court to stay merits briefing until the threshold matters are meaningfully reviewed and narrowed, or to enter a staged briefing order that first addresses caption correction, IFP/no-good-faith review, abeyance/access review, service/readiness issues, record correction, and the procedural effect of the unresolved district-court access motions. The Court should either allow separate filings on each substantial issue, enlarge or waive the ordinary page limit, or apply the 30-page limit per paper and per substantial topic so that Plaintiff is not forced to guess which issue the Court will later deem central.

42.     Plaintiff now requests the practical accommodation of staged, issue-by-issue briefing as the clearest accessible path forward. That is the most reasonable way to proceed in an unusually large, access-burdened, disability-affected appeal arising from an omnibus dismissal order where the courts have not credited or clarified the sufficiency of any pleading to date. Sequential or staged review would require the Court to do some narrowing work first, but that is precisely what is needed to make appellate review fair, orderly, and meaningful.

43.     A staged order could first identify the issues that remain genuinely operative after caption correction, access review, service-cure review, IFP/no-good-faith review, and dismissal of unsupported or frivolous defenses. Plaintiff could then brief the remaining substantive issues one at a time, or in a narrowed sequence directed by the Court, instead of being forced to guess which of many dismissal theories and unresolved threshold disputes must be addressed simultaneously under an ordinary merits-brief limit.

44.     This requested structure is also disability-related. The omnibus dismissal and lack of narrowing force Plaintiff into panic-driven overinclusion, because he must try to answer every possible premise, every defendant position, every access defect, every service dispute, and every dismissal rationale at once. A one-issue-at-a-time or staged-briefing structure would reduce needless confusion, preserve judicial resources, and allow the Court to test the actual merits rather than defaulting Plaintiff for failing to compress a sprawling, court-created procedural record into a single ordinary brief, while failing to acknowledge the sufficiency of any of Plaintiff's pleadings to date.

45.     I respectfully request leave to file my supporting declaration after midnight tonight, as soon as I am physically able to complete it.

## CERTIFICATION AND DECLARATION

By signing below, I, Jeffrey Ryan Fenton, certify that this document has been executed in good faith, in the honest pursuit of justice, and in strict compliance with F.R.Civ.P. 11(b).

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct, except as to matters herein stated to be on information and belief, and as to such matters, I certify as aforesaid that I verily believe the same to be true.

All rights reserved.

Executed on June 16, 2026.

**JEFFREY RYAN FENTON**
Pro Se Appellant/Plaintiff
Sixth Circuit No. 25-5592
P.O. Box 400
Linden, MI, 48451-0400
Notice@FentonvStory.com
https://FentonvStory.com
(P) 615.837.1300
#TNinjustice
#iAMhuman

# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

**JEFFREY RYAN FENTON,**

Plaintiff

v.

**VIRGINIA LEE STORY et al.,**

Defendants

**CASE NO. 3:24-cv-01282**

RECEIVED

APR 2 3 2025

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

**DECLARATION OF UNCONSTITUTIONAL DESTRUCTION AND OPPRESSION[1]
WITH ADA INTERFERENCE, COERCION, INTIMIDATION, AND RETALIATION**
**(IN SUPPORT OF MY RULE 59 MOTION TO AMEND JUDGEMENT OR FOR A NEW TRIAL)**

This testimony is brought pursuant to 28 U.S. Code § 1746; 42 U.S. Code § 1983, § 1985, and

§ 12101 et seq; T.C.A. §16-3-803, § 23-3-112, § 39-14-112, § 39-15-502, § 39-17-309, § 39-16-402,

§ 39-16-403, § 39-16-503, § 39-16-504, § 39-16-507, § 39-16-510; Tenn. Sup. Ct. R. 8 & 10, Tenn.

Sup. Ct. Administrative Policy #2.07; the Constitution of Tennessee; and the U.S. Constitution.

I, Jeffrey Ryan Fenton, declare under oath as follows:

1. I was born in Washington State during 1969.

2. I am domiciled in Genesee County, Michigan.

---

[1] This lawsuit was originally filed on October 13, 2023, in the United States District Court for the Western District of Michigan (hereinafter "MIWD") as case no. 1:23-cv-01097. On October 25, 2024, MIWD transferred this lawsuit as ordered in ECF 127 to the United States District Court for the Middle District of Tennessee (hereinafter "TNMD") as case no. 3:24-cv-01282. The language used in the file stamps of each page filed is slightly different between the two courts. MIWD uses the term "ECF No." (which I abbreviate as "ECF"), while in place of that, TNMD uses the term "Document" (which I abbreviate as "DOC"). Both courts use the term "PageID" (which I abbreviate as "PID"). Citations to the court record in this lawsuit will be notated without the case name or number, using the starting DOC/ECF number, followed by both the beginning and ending PID. The Notice of Electronic Filing for this transfer is recorded in TNMD DOC 131, at which point the DOC/ECF number from MIWD was retained and continued, but the PID was reset after DOC 130, PID 5727, to restart at zero.

Page <strong>1</strong> of <strong>46</strong>

Initials:

3.      Ms. Fawn Fenton (hereinafter "Ms. Fenton", "wife", or "ex-wife") and I were together for fifteen years, thirteen during which we were married, in Tennessee.

## PRO SE LITIGANT – MERITS RULE OVER TECHNICALITIES

4.      I am acting in a *pro se*[2] capacity in this lawsuit by necessity and entitled to a liberal reading and less stringent standards since my filings have been prepared without the assistance of counsel.  See *Haines v. Kerner,* 404 U.S. 519, 92 S. Ct. 594 (1972).

## QUALIFIED AMERICAN WITH DISABILITIES ACT LITIGANT

5.      I am a qualified ADA party with disabilities affecting my communication and cognitive functions, which make research for and drafting of legal pleadings exceptionally slow and challenging.

6.      I request any accommodations the court can provide to help me fully participate in, be protected by, and receive justice through the federal judiciary as would a party without these disabilities.

7.      I suffer from several cognitive disabilities: Obsessive-Compulsive Personality Disorder (OCPD) DSM-5 301.4 (F60.5), Generalized Anxiety Disorder (GAD) DSM-5 300.02 (F4L1), Attention-Deficit Hyperactivity Disorder (ADHD) DSM-5 314.01 (F90.2), Circadian Rhythm Sleep Disorder (CRSD) Non-24-Hour Sleep-Wake Disorder (Non-24) DSM-5 307.45 (G47.24).  Letters from my doctors[3] and a declaration[4] regarding my disabilities are on file in this federal lawsuit.  Medications I take regularly can only control these afflictions, not cure them.

---

[2]    DOC 1-35, PID 1960

[3]    DOC 1-38, PID 2032-2045 | https://rico.jefffenton.com/evidence/2020-07-08_tnsc-coa-ada-request-for-modification.pdf

[4]    DOC 32, PID 3296-3309 | https://rico.jefffenton.com/evidence/fenton-declaration-of-disabilities.pdf

**ODE TO THE TENNESSEE PREDATORS[5]**

**AMERICANS WITH DISABILITIES ACT[6] — NO STATE HAS IMMUNITY**

42 U.S.C. § 12202.  State immunity: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter.  In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State."

**42 U.S. CODE § 12203[7] (A) PROHIBITION AGAINST ADA RETALIATION AND COERCION**

"Retaliation: No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

---

[5]   Throughout this document, the term "Tennessee Predators" and "Predators" refers to the defendants in this lawsuit.  This is based on the fact that the preceding litigation executed by the defendants was what I have learned to recognize as "Predatory Litigation" since, as explained in various filings throughout this lawsuit, as well as online at the two web addresses below:

https://tninjustice.org/predatory-litigation-101/ | The exploitation of our courts for predatory criminal practices must be stopped.

https://jefffenton.com/predatory-litigation-how-us-courts-were-designed-to-produce-justice-why-they-fail-how-to-restore-justice-again/

Courts should be keen to *predatory litigation* in any case involving a *pro se* litigant, where counsel chooses to elevate *process* and *procedures* above *merits* and *conduct*.  That is a tell-tale sign that the council or court's priorities are not in alignment with real justice.

[6]   https://www.law.cornell.edu/uscode/text/42/12202

[7]   https://www.law.cornell.edu/uscode/text/42/12203

Initials:

## 42 U.S. CODE § 12203[8] (B) ADA INTERFERENCE

"Interference, coercion, or intimidation: It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

## 42 U.S. CODE § 12205[9] — ADA ATTORNEY'S FEES

"In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual."

## FEDERALLY UNCONSTITUTIONAL ACTS
## — NO STATE OFFICER HAS IMMUNITY —

The U.S. Supreme Court stated that "when a state officer acts under a state law in a manner violative of the Federal Constitution, he comes into conflict with the superior authority of that Constitution, and he is in that case *stripped of his official or representative character* and is **subjected in his person to the consequences of his individual conduct.** The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States."

*Scheuer v. Rhodes*, 416 U.S. 232, 94 S. Ct. 1683, 1687 (1974)

---

[8]    https://www.law.cornell.edu/uscode/text/42/12203

[9]    https://www.law.cornell.edu/uscode/text/42/12205

## MY LIFE BEFORE INTERFERENCE BY TENNESSEE'S PREDATORS

8.      According to Wikipedia[10]: "Williamson County[11] is ranked as the wealthiest county in Tennessee, as well as among the wealthiest counties in the country.  In 2006 it was the 17th-wealthiest county in the country according to the U.S. Census Bureau[12], but the Council for Community and Economic Research ranked Williamson County as America's wealthiest county (1st) when the local cost of living was factored into the equation with median household income.  In 2010, Williamson County is listed 17th on the Forbes list of the 25 wealthiest counties in America."

## BRENTWOOD MARITAL RESIDENCE



---

[10]     https://en.m.wikipedia.org/wiki/Williamson_County,_Tennessee

[11]     https://williamsoncounty-tn.gov/

[12]     DOC 43, PID 3713-3716 | https://rico.jefffenton.com/evidence/2017-2021_census-brentwood-tennessee-v-fenton-michigan.pdf

Page **5** of **46**                                                              Initials: _____

9.      My ex-wife and I owned a beautiful home located at 1986 Sunnyside Drive[13], Brentwood[14], TN, 37027 (hereinafter "marital residence," "residence," "property," or "home").  We purchased our marital residence on April 29, 2011, for $350,000[15].

10.     I invested everything that I had into the purchase and renovation of our home, including all my premarital retirement funds[16] along with proceeds from my own premarital duplex[17].

11.     This investment was further complemented by nearly a decade of my "sweat equity," including thousands of hours of labor making and supervising roughly $200,000 of improvements[18] to our property.

12.     This work was also my primary contribution to our family for much of the time between 2011 and 2018, during which my ex-wife built her career in architecture and doubled her vocational value.[19]

13.     Together we had roughly $550,000[20] invested in our home, plus thousands of hours of work.

14.     The money my ex-wife and I invested in our marital residence wasn't to raise its curb appeal or add flashy trim that could realize immediate returns upon investment if sold.  We

---

[13]   DOC 19-1, PID 2624-2628 | https://rico.jefffenton.com/evidence/2011-04-29_1986-sunnyside-brentwood-tn-deed.pdf

[14]   DOC 19-1, PID 2629 | https://rico.jefffenton.com/evidence/1986-sunnyside-brentwood-tn-2019-property-taxes.pdf

[15]   DOC 42, PID 3631-3657 | https://rico.jefffenton.com/evidence/2011-04-29_1986-sunnyside-premarital-assets-invested.pdf
       DOC 19-1, PID 2620-2623 | https://rico.jefffenton.com/evidence/2011-04-29_fenton-marital-residence-tenancy-by-entirety.pdf

[16]   DOC 42, PID 3631-3657 | https://rico.jefffenton.com/evidence/2011-04-29_1986-sunnyside-premarital-assets-invested.pdf

[17]   DOC 214, PID 921 | https://rico.jefffenton.com/evidence/fenton-finances-roles-property-education-support-fraud.pdf

[18]   DOC 42, PID 3665-3676 | https://rico.jefffenton.com/evidence/1986-sunnyside-property-improvement-highlights.pdf

[19]   DOC 43, PID 3702-3704 | https://rico.jefffenton.com/evidence/2017-04-06_wifes-belated-raise-after-protest.pdf

[20]   DOC 42, PID 3665-3676 | https://rico.jefffenton.com/evidence/1986-sunnyside-property-improvement-highlights.pdf

invested into the core features of the home[21]—replacing the roof[22], remediating mold[23], and removing/replacing many of the electrical and mechanical systems[24] for improved health, safety, efficiency, and comfort.  The work performed on the property was done with the expectation that we would live there for the next twenty years, not quickly "flip" it.

15.      It was not possible in 2019 for us to sell our home, either by auction or on the market, without losing a substantial amount of money, for which we had no means of compensation or recovery.  That is why I fervently fought to keep our property[25], but the bad actors in this lawsuit refused to allow it.

16.      However, over the next few years, the property nearly doubled in value due to its location, as we expected.  The market needed time, which is evidenced by the fact that the home appreciated roughly $100,000[26] per year for the next four consecutive years.

### PREDATORY LITIGATION[27]—THE BLEEDING BEGINS

17.      That home is currently worth more than $900,000[28] and was our sole asset and retirement investment.  Yet defendant Chancery Court for Williamson County Tennessee (hereinafter "Chancery Court") forced the liquidation of our home for just $324,360[29]—

---

[21]   DOC 42, PID 3665-3676 | https://rico.jefffenton.com/evidence/1986-sunnyside-property-improvement-highlights.pdf

[22]   DOC 60, PID 60

[23]   DOC 1-2, PID 57

[24]   DOC 1-2, PID 58

[25]   DOC 1-17, PID 692-702 | https://rico.jefffenton.com/evidence/2019-07-29_response-to-wifes-motion-to-sell-residence.pdf
DOC 18-7, PID 2526-2589 | https://rico.jefffenton.com/evidence/2019-08-29_husbands-one-and-done-answer-to-all.pdf

[26]   DOC 52, PID 4211-4217 | https://rico.jefffenton.com/evidence/2023-05-31_1986-sunnyside-brentwood-tn-appreciation.pdf

[27]   https://tninjustice.org/predatory-litigation-101/ | The exploitation of our courts for predatory criminal practices must be stopped.
https://jefffenton.com/predatory-litigation-how-us-courts-were-designed-to-produce-justice-why-they-fail-how-to-restore-justice-again/
Courts should be keen to *predatory litigation* in any case involving a *pro se* litigant, where counsel chooses to elevate *process* and *procedures* above *merits* and *conduct*.  That is a tell-tale sign that the council or court's priorities are not in alignment with real justice.

[28]   DOC 52, PID 4211-4217 | https://rico.jefffenton.com/evidence/2023-05-31_1986-sunnyside-brentwood-tn-appreciation.pdf

[29]   DOC 48, PID 4019-4029 | https://rico.jefffenton.com/evidence/2019-10-29_1986-sunnyside-real-estate-deed-fraud.pdf

suspiciously the exact amount due on our mortgages plus auctioning fees and closing costs—without one dollar to myself or to Ms. Fenton (to the best of my knowledge) despite all the time, money, and other resources we had invested in it.

18.    That is a *six hundred-thousand-dollar* net difference and **loss** (in just four years), between myself and my ex-wife, had the defendants in this case not illegally and unethically **interfered** with our lives.

### MY VOCATIONAL AND ECONOMIC POTENTIAL

19.    That is likely more money than I have the education, aptitude, and vocational capacity to earn **throughout the remainder of my life combined.**

20.    Therefore, I cannot prioritize any vocational pursuit (it would be irresponsible of me to try), at the expense of **losing time** critically needed to research law and bring this case to trial, to receive the remedy I am ethically and lawfully due, for the crimes committed by the defendants against myself and my family.

### HOW ADHD AND OCPD AFFECT MY MULTI-TASKING AND PRODUCTIVELY

21.    This lawsuit must remain my primary focus and chief pursuit until a lawful remedy is reached.  Especially since my disabilities[30] of ADHD and OCPD specifically impede my ability to successfully multi-task major projects and pursuits concurrently, such as *pro se* litigation, vocational training, and obtaining gainful employment in a new professional field, as the harm caused by the defendants now necessitates.

---

[30]    DOC 32, PID 3296-3309 | https://rico.jefffenton.com/evidence/fenton-declaration-of-disabilities.pdf
    DOC 1-38, PID 2032-2045 | https://rico.jefffenton.com/evidence/2020-07-08_tnsc-coa-ada-request-for-modification.pdf
    DOC 52, PID 4254-4257 | https://rico.jefffenton.com/evidence/tn-ada-disabilities-exploited-for-advantage-ocpd-merck.pdf

## INTERFERENCE WITH MY FINANCIAL INDEPENDENCE & SUSTAINABILITY

22.  The defendants may claim that my disabilities aren't their problem, which would be true if not for the fact that they intentionally, strategically, attacked, exploited, and overwhelmed my most significant disabilities for the express purpose of committing fraud on both State and Federal courts concurrently, deceptively influencing and assisting in a fraudulent Federal Bankruptcy action[31], to unconscionably and illegally deprive me and my two lawful tenants/roommates[32] of "adequate protection" as required by bankruptcy rules and law[33], while unconstitutionally stealing our significant, critically needed, and extremely valuable Brentwood, Williamson County property interests[34].

## THE UNLAWFUL AND OPPRESSIVE ORDERS OF PROTECTION

23.  To make matters even worse, the same group of bad actors who stole my home, also ordered an oppressive *default* "order of protection" against me for many years, despite knowing that it "interferes" and prevents me from qualifying for and obtaining suitable employment, which defendant Story acknowledged herself in Chancery court during the August 1, 2019, hearing[35].

---

[31]  DOC 19-2, PID 2632-2646 | https://rico.jefffenton.com/evidence/2019-04-26_ausbrooks-story-fraudulent-bk-petition.pdf

[32]  DOC 45, PID 3800-3807 | https://rico.jefffenton.com/evidence/2019-03-26_fenton-sunnyside-roommate-lease-merriman.pdf
DOC 45, PID 3808-3813 | https://rico.jefffenton.com/evidence/2019-04-09_fenton-sunnyside-roommate-lease-garcia.pdf

[33]  DOC 38, PID 3445-3496 | https://rico.jefffenton.com/evidence/2019-04-26_bankruptcy-crimes-rules-and-laws-violated.pdf

[34]  DOC 1-12, PID 479-596 | https://rico.jefffenton.com/evidence/2019-10-29_tn-wilco-deed-fraud-ada-financial-exploitation.pdf

[35]  DOC 22, PID 2818-2862 | https://rico.jefffenton.com/evidence/2019-08-01_chancery-hearing-transcript.pdf

**THE FRAUDULENT ORDER INTERFERES WITH MY EMPLOYMENT**

24.     I clearly informed the Tennessee Court of Appeals and the Tennessee Supreme Court about my need for the fraudulent "protective order" to be removed **so that I could pass pre-employment background checks and obtain suitable employment**[36], but none of them showed any interest or care whatsoever.  Despite being repeatedly informed that my elderly mother (whom the Tennessee Courts dumped me on), has a life-threatening immunity disorder[37], **preventing me from obtaining employment outside her home** after COVID-19, <u>for as long as I continue to reside with her.</u>  This was further substantiated with letters and an affidavit[38] executed by my mother on October 13, 2020, filed with the Tennessee Court of Appeals, along with notes from her doctors.

25.     This has been further substantiated since, in an extensive seventy-two-page declaration[39] (with evidence attached) by my mother, titled "DECLARATION OF MARSHA ANN FENTON REGARDING SON JEFFREY RYAN FENTON AND TENNESSEE LEGAL PROCEEDINGS", filed in this lawsuit on January 19, 2024, in DOC 18 through DOC 18-10, PID 2417-2616.

26.     To dismiss both of our sworn testimonies, filed under the penalty of perjury, combined with substantial clear and convincing (if not irrefutable) evidence, while leaving me **destroyed** and **unemployable**, after more than five years, for no honest lawful reason or any opportunity to be heard and defend myself, would be an abuse of discretion by this court, clearly

---

[36]  DOC 1-28, PID 1658 | https://rico.jefffenton.com/evidence/2021-01-19_tnsc-immunity-disorder-strike-expunge-op.pdf
    DOC 50, PID 4082-4086 | https://rico.jefffenton.com/evidence/2020-10-16_coa-emergency-motion-reporting-misconduct.pdf

[37]  DOC 1-38, PID 2032-2045 | https://rico.jefffenton.com/evidence/2020-07-08_tnsc-coa-ada-request-for-modification.pdf

[38]  DOC 1-2, PID 48-63 | https://rico.jefffenton.com/evidence/2020-10-13_affidavit-of-mother-marsha-ann-fenton.pdf

[39]  DOC 18, PID 2417-2616 | https://rico.jefffenton.com/evidence/2024-01-16_marsha-fenton-sons-tn-legal-proceedings.pdf

proving judicial bias and rendering any subsequent ruling **void**.

27.    At some point, somebody must respond honestly and lawfully to what the defendants have done to me or pay for the damages caused by trespassing upon my life, liberty, and property in an almost incomprehensibly violent, destructive, inhumane, and oppressive manner.

"No judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued; and an attempt to enforce it beyond these boundaries is nothing less than **lawless violence**." *Ableman v. Booth*, 21 Howard 506 (1859) (emphasis added).

This cannot be ignored its fact recorded! Judgment is a void judgment if court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, **or acted in a manner inconsistent with due process**, Fed. Rules Civ. Proc., Rule 60(b)(4), 28 U.S.C.A., U.S.C.A. *Const. Amend. 5 -Klugh v. U.S.*, 620 F.Supp. 892 (D.S.C. 1985) (emphasis added).

"An unconstitutional act is not law; it confers no rights; it imposes no duties; affords no protection; it creates no office; it is in legal contemplation, **as inoperative as though it had never been passed.**" *Norton v. Shelby County*, 118 U.S. 425 p. 442 (emphasis added).

**The Court Has a Responsibility to Correct a Void Judgment:** The statute of limitations **does not apply** to a suit in equity to vacate a void judgment. (*Cadenasso v. Bank of Italy*, p. 569; Estate of Pusey, 180 Cal. 368,374 [181 P. 648].) This rule holds as to all void judgments. In the other two cases cited, *People v. Massengale* and *In re Sandel*, the courts confirmed the judicial power and responsibility to correct void judgments (emphasis added).

## THE REAL PURPOSE OF THIS PREDATORY ORDER

28.    The real purpose of this "order of protection" was to assassinate my character prior to my first appearance in court, to "set the stage" for defendant Story's fraudulent narrative[40]. This act strategically disempowered me, effectively "silencing my voice", while simultaneously empowering defendants Story and Binkley to exceed the lawful limits of the court's authority and jurisdiction, with complete disregard for the actual law, under the fraudulent pretense of "protecting" my ex-wife.

29.    This further positioned the defendants to leverage the Williamson County Sheriff's Office in the **execution** and **enforcement** of multiple **felony crimes** against me, while they **trespassed** upon my property, treated me like a dangerous felon **inside my own home**, and wrongfully evicted me from **my property,** with **no** *honest*, *lawful*, *good faith* purpose, cause, or reason whatsoever**,** while telling me, **"don't come back"** (or something substantially similar) just before exiting **my driveway**.

30.    This order was misused for many purposes, none of which were legal or honestly admitted by counsel in the petition for the order or any subsequent filings.  This was essentially a **tool of terrorism** by the Williamson County Chancery Court, defendants Story, Ausbrooks, Binkley, and Beeler.  It was the proverbial **"noose"** around my neck for *six years*, which was pulled so tight that I was hyperventilating as the Williamson County Sheriff's Office trespassed upon my property and unlawfully seized my home.

---

[40]    DOC 19, PID 2617-2716 | https://rico.jefffenton.com/evidence/2019_tn-court-motions-in-chronological-order.pdf
DOC 22, PID 2818-2862 | https://rico.jefffenton.com/evidence/2019-08-01_chancery-hearing-transcript.pdf
DOC 33, PID 3310-3391 | https://rico.jefffenton.com/evidence/2019-08-01_hearing-professional-and-judicial-misconduct.pdf

## COERCING AND EXTORTING COOPERATION THROUGH
## THE THREAT OF INCARCERATION

31.     This order along with the **threat of incarceration**[41] was used to repeatedly **bully** me, to **intimidate** and **coerce** my cooperation **as they stole my home** under the fraudulent color of official right and law.  It was used to **threaten** and **extort my silence** about their crimes and misconduct against me.  It was used to **pressure** and **punish** me when I attempted to assert and defend my constitutional rights, and finally it was used to **retaliate** against me, by **intentionally causing me emotional distress** (as they held my most coveted **civil rights hostage** for five more years[42] without providing me with a *reason*, *notice*[43], *motion*, or *hearing*; still to date) after I reported the fraudulent misconduct by defendants Story and Binkley to defendant Coke[44] with the Administrative Offices of the Courts.  This qualifies as Hobb's Act "**extortion**[45]" by "force or fear[46]", as well as "under color of official right[47]" and "color of law".  This also qualifies as "official misconduct[48]" and "official oppression[49]".  This qualifies as "harassment[50]" and "civil rights intimidation[51]".  This qualifies as ADA[52] Interference, Coercion, Intimidation, and

---

[41]  DOC 23, PID 2863-2920 | https://rico.jefffenton.com/evidence/2019-08-29_chancery-hearing-transcript-audio-markers.pdf
     DOC 23-4, PID 2920 | https://rico.jefffenton.com/evidence/2019-08-29_chancery-hearing-audio-recording.mp3

[42]  DOC 1-31, PID 1794-1873 | https://rico.jefffenton.com/evidence/2020-09-24_5yr-op-ext-retaliation-no-notice-motion-hearing.pdf

[43]  DOC 54-1, PID 4369 | https://rico.jefffenton.com/evidence/2020-09-30_wilco-inquiry-about-extended-op-and-sales-records.mp3

[44]  DOC 26-1, PID 3259 | https://rico.jefffenton.com/evidence/2020-02-13_tnsc-aoc-ada-gc-john-coke-phone-call.mp3
     DOC 26, PID 3227-3258 | https://rico.jefffenton.com/evidence/2020-02-13_tnsc-aoc-ada-gc-john-coke-transcript.pdf
     DOC 57-1, PID 4527 | https://rico.jefffenton.com/evidence/2020-09-09_tn-aba-free-legal-answers-site-question-closed.pdf

[45]  https://www.justice.gov/archives/jm/criminal-resource-manual-2402-hobbs-act-generally

[46]  https://www.justice.gov/archives/jm/criminal-resource-manual-2403-hobbs-act-extortion-force-violence-or-fear

[47]  https://www.justice.gov/archives/jm/criminal-resource-manual-2404-hobbs-act-under-color-official-right

[48]  https://law.justia.com/codes/tennessee/title-39/chapter-16/part-4/section-39-16-402/

[49]  https://law.justia.com/codes/tennessee/title-39/chapter-16/part-4/section-39-16-403/

[50]  https://law.justia.com/codes/tennessee/title-39/chapter-17/part-3/section-39-17-308/

[51]  https://law.justia.com/codes/tennessee/title-39/chapter-17/part-3/section-39-17-309/

[52]  https://www.law.cornell.edu/uscode/text/42/12202

Retaliation[53].   Under the Americans with Disabilities Act, this also qualifies for awards of reasonable attorney's fees[54], while there is no state immunity[55] available under the Eleventh Amendment of the United States Constitution for violations of this act.

32.      When the truth is finally realized about how this so-called "order of protection" has been executed, manipulated, and misused for malicious criminal purposes, serving as an unlawful civil restraint and coercive threat against my life and liberty, it will become clear how defendants Story, Binkley, Beeler, and others unlawfully stripped me of my most fundamental natural human rights.  This includes the wrongful deprivation of my ability to qualify for and secure appropriate employment under the circumstances crucial for my survival amidst the defendants' cruel, unethical, and illegal actions.

33.      Furthermore, it unjustly deprived me of my Second Amendment right to keep and bear arms—an essential constitutional freedom—depriving my ability to **protect my family** during one of the most volatile decades our country has known during my lifetime, without any legitimate reason, lawful jurisdiction,[56] or authority.  Further prohibiting me from enjoying the sports of hunting and shooting with my friends, both being significant recreational activities in Michigan.

34.      If this lawsuit is dismissed for any reason prior to curing these injustices, this court combined with the defendants and their counsel herein, will have committed another felony crime against myself and my family, even if the court enjoys immunity from prosecution, it would be ghastly irresponsible if not negligent to dismiss this lawsuit and everything I have invested over the past two years in an attempt to reach a remedy, without at the very least terminating this wrongful

---

[53]   https://www.law.cornell.edu/uscode/text/42/12203

[54]   https://www.law.cornell.edu/uscode/text/42/12205

[55]   https://www.law.cornell.edu/uscode/text/42/12202

[56]   DOC 68, PID 5009-5029 | https://rico.jefffenton.com/evidence/2024-08-22_memorandum-of-law-about-void-tn-court-orders.pdf

order so that I can freely **move forward** and **qualify for critically needed employment** and **enjoy my constitutional rights** unimpeded.

## TENNESSEE COURTS UNLAWFULLY DESTROYED ME
## AND RENDERED ME HOMELESS

35.     Today, I have absolutely no income, savings, or real property as a direct result of the defendant's cruel, criminal, abusive, depraved, bullying, oppressive, ethically and lawfully unjustifiable conduct[57], spanning state and federal courts in Tennessee.

## INTERFERENCE WITH MY HEALTH

36.     Toward the end of 2019, I lost my Tennessee health insurance coverage (provided by my ex-wife's employer) suddenly and without notice.  Then I was forcefully geographically displaced, against my will, hundreds of miles away to the State of Michigan to survive.  Where I no longer had physical access to my health care providers, for physical or mental health, also abruptly losing access to most of my support systems I had developed during my adult life.

## INTERFERENCE WITH MY MEDICATION REGIMEN

37.     Even more critically, I lost access to many of the medications which I had taken for years, to treat my disabilities, which had helped me to function at my best.  These drugs had previously helped me to hone my focus to complete complex legal research and writing, to be able to reduce distractions, to concentrate my time, energy, and resources to complete one meaningful project or legal filing at a time, and to be physically capable of determining when "good enough" was really the best that I could do under the circumstances, so that I could actually **finish** projects, tasks, documents, and filings.

---

[57]   DOC 214, PID 911-975 | https://rico.jefffenton.com/evidence/fenton-finances-roles-property-education-support-fraud.pdf

## INTERFERENCE WITH MY ABILITY TO ARTICULATE CONCISELY & LITIGATE

38.     **Finishing** tasks is one of the most difficult challenges for people with "obsessive-compulsive personality disorder", which I suffer from.  Due to the massive scope of this lawsuit, combined with how completely and unconscionably I had been destroyed, further exacerbated by losing access to Vyvanse, my ADHD medication for the better part of three years, it was literally impossible for me to tell my own story about what the defendants had done to me, especially in any sort of concise, linear, or structured format.

39.     That didn't stop me from trying though, I spent over a year writing on average twenty-five to fifty pages per day, every day.  Often working 12-16 hours per day, rewriting what I had written the day before while trying to improve it to no end, but I couldn't do it.  After I lost my access to Vyvanse, I couldn't tell my own story to save my life.  The defendants had made the truth **too big of a story to tell**, while also making it so outrageous that it was unlikely that anyone would believe me.

## VYVANSE—THE ONLY ADHD DRUG THAT WORKS FOR ME

**Radnor Psychiatric Group, PLC**
5123 VIRGINIA WAY
SUITE C-11
BRENTWOOD, TENNESSEE 37027

Telephone: (615) 373-5205
Fax: (615) 373-5165

RE:  Jeffrey Fenton

To Whom It May Concern:

Jeffrey Fenton has been a patient under my care since 2012.  He is treated for a severe Generalized Anxiety Disorder, Attention Deficit Disorder, and suffers from an Obsessive Compulsive Personality Disorder.  He also has specific phobias regarding weather, driving across bridges, and flying, along with obsessive concerns over his health.

I have prescribed medication including Lexapro 40 mg a day, Vyvanse 70 mg a day, Xanax 1 mg every six hours as needed, and Restoril 30 mg at night for chronic insomnia.  He also has continued to see Terry Huff, LCSW, in psychotherapy.  Despite his compliance with his medication and therapy, his symptoms continue to be disabling.

Sincerely,

Richard E. Rochester, M.D.
RER/sde

## RETURNING TO MY TENNESSEE PSYCHIATRIST

40.     My first few years in Michigan, I couldn't find a suitable replacement for my mental health care providers.  In fact, I couldn't even find a Michigan doctor who would continue my pre-existing regimen of medications which I had taken for many years in Tennessee.  After the onset of COVID-19, I returned to seeing my Tennessee Psychiatrist (Doctor Richard Rochester in Brentwood, Tennessee), over the phone again for the next couple of years.

## MICHIGAN MEDICAID REFUSED TO PAY FOR TENNESSEE PRESCRIPTIONS

41.     The problem with this solution, was that though he would prescribe me all the same medications as I had been taking for years, once I was on Michigan's Medicaid program (almost immediately upon arrival in Michigan), they would only pay for prescriptions which were prescribed by doctors who were *members* of the Michigan Medicaid System, which of course my Tennessee Psychiatrist was not a member of.  Therefore, I could get the prescriptions, and pharmacies in Michigan would fill them (being the same pharmacy chains who had filled my prescriptions for years), but I had to *pay cash* for them.

42.     Subsequently I had to switch my medications to cheaper forms of generic alternatives, while paying cash for them each month, continuously borrowing the money from my family.

43.     The most significant downside to this was that there was no generic for Vyvanse and I couldn't afford the cash price ($300 - $400 per month), while Vyvanse is the only ADHD medication which has ever worked for me.

Initials:

## I LOST AFFORDABLE ACCESS TO VYVANSE FOR THREE YEARS

44.     As a temporary substitute my doctor tried Adderall which helped me a tiny bit (it was slightly better than nothing at all), but it made me jittery, there were significant peaks and troughs, the affect was not smooth like Vyvanse, and my window of improved focus and best functioning went from about 10 hours per day with Vyvanse, down to roughly four hours per day with Adderall, while still failing to provide my mind with the "overall sense of calm" consistently experienced with Vyvanse.

45.     My doctor and I tried Adderall extended-release capsules, we tried taking it twice per day, but nothing really worked to help with my ADHD until I was finally able to switch over to a Michigan mental health care provider, roughly two years ago, at which point I was finally able to slowly begin taking Vyvanse again.  (This required several failed attempts at working with mental health professionals, trying to find the right practitioner who would prescribe me the medications which I had successfully taken for many years in Tennessee.)

46.     Due to my elderly mother's life-threatening immunity disorder, our household remained on strict quarantine for a long time, which postponed me continuing the search for suitable Michigan health care providers after my fist attempts failed, right before COVID hit.

## DIFFERENT WORLDVIEWS IN STATE GOVERNANCE AND HEALTHCARE

47.     There are some significantly different worldviews in governance and healthcare between Tennessee and Michigan.  For example, in Tennessee, my ex-wife's gynecologist would prescribe her antidepressants a year at a time.  I don't know of a doctor in Michigan who will prescribe the same antidepressants without wanting to see the patient every three months.

48.     Similarly, I've had a very difficult time getting Xanax for my anxiety or prescription sleep medications so I can rest peacefully in Michigan, but they sell recreational marijuana all over the place.  It is simply different world views, about what is good and bad for society, while the laws are structured in favor of their viewpoint.  Unfortunately, Michigan's viewpoint has never allowed me to return to the regimen of medications which worked best for me in Tennessee.

**MICHIGAN AUTOMATED PRESCRIPTION SYSTEM (MAPS)**

49.     Upon information and belief, Michigan healthcare workers have also educated me about a program called "Michigan Automated Prescription System[58]" (hereinafter "MAPS"), which I'm told was a response to the opioid epidemic, and though none of my medications are opioids, this system is used to closely monitor all controlled substances prescribed in the State of Michigan.

50.     Upon information and belief, my understanding is that MAPS assigns a score to each controlled substance, then they aggregate the scores of each patient under each prescribing practitioner, and divide that by their total number of patients, to calculate the average score per patient.  If that score is above a certain threshold, then the medical license for that prescribing physician or nurse is at risk of being penalized or lost for abusively overprescribing controlled substances.

51.     Upon information and belief, which doesn't sound bad at first, until you learn how low the threshold is per patient, especially when compared to how high the values are for ADHD medications, under the MAPS system.  I was told by my current provider that by taking Vyvanse

---

[58]     https://www.michigan.gov/lara/bureau-list/bpl/health/maps
https://www.house.mi.gov/hfa/PDF/LARA/LARA_DIFS_Subcmte_Testimony(BureauofProfessionalLicensing_3-1-16).pdf
https://www.ojp.gov/ncjrs/virtual-library/abstracts/prescription-drug-monitoring-program-michigan-state-profile

alone (at a lower dosage than I took for years in Tennessee), the score for that one medication is so high, it automatically pushes me over the target threshold per patient, harming the prescriber's overall average. Therefore, if I want to take Vyvanse to help my brain work (to have any chance at reaching a remedy through this lawsuit), then they will prescribe me no other controlled substances, for any reason. (Not because of the impact on my health, good or bad, but because of the risk to the prescribing practitioner's medical license under MAPS.)

52. Beginning to take Vyvanse again, to help with my ADHD, in exchange for losing access to every other controlled substance I used to take to help with anxiety and insomnia, is the choice I made a little over two years ago (the first opportunity I had to obtain Vyvanse with Michigan Medicaid) so that I could begin to pull my thoughts together to file this lawsuit.

53. This is the state of my medications currently.

**GEPHYROPHOBIA (THE FEAR OF GOING OVER BRIDGES)**

54. Therefore, I can't do things, like driving over the Cincinnati bridge[59] currently, which requires me to have Xanax (to cope with gephyrophobia), because I don't have access to Xanax anymore. Similarly, I can't maintain any sort of regular sleep schedule, bedtime, or daily routine, because I have Non-24[60] and my body doesn't operate with a normal 24-hour circadian rhythm. In many ways I have sacrificed my comfort and rest, in exchange for having my brain work, as well as it can under the circumstances.

55. Let me be perfectly clear that I have chosen to prioritize my ADHD medication during this season over medications for anxiety and insomnia specifically so that I have the best

---

[59] I have gephyrophobia as explained in the MOTION TO MAINTAIN VENUE filed on 10/20/2023 in ECF 7, PID 2097.

[60] https://my.clevelandclinic.org/health/diseases/12115-circadian-rhythm-disorders

Initials:

chance possible at litigating for a remedy[61].  Without Vyvanse, I believe that justice would remain beyond my reach.  Especially with the current culture of our courts, without the State of Tennessee proactively showing an interest in holding the bad actors accountable.

56.    This is the focus and purpose of my life now.  Fighting to improve the judicial integrity of Middle Tennessee, demanding common-sense policy changes to help protect Tennessee litigants while seeking to hold the bad actors accountable to protect the ethical "practice of law" throughout the state.  In many ways, it is too late to save my life, but it's not too late to save the lives, property, and liberty of other Tennessee families.

## I SHOULD NOT BE PENALIZED FOR HOW TENNESSEE'S PREDATORS KNOWINGLY STACKED THE DECK AGAINST ME

57.    By the bad actors coaching my ex-wife to terminate spousal support (which she had previously agreed to pay and had paid prior to the defendants involvement[62]), while also having her secretly quit paying our mortgage payments (as previously agreed[63]), and to fraudulently file for bankruptcy[64] (without lawful need or notice) while specifically requesting the court sell our jointly purchased, owned, deeded, and improved marital residence, which I was lawfully in possession of, all without ethical or legal notice, without a hearing or adversarial proceeding in Federal Court as required by bankruptcy rules and law, while the Chancery Court illegally terminated my only stream of income in that moment (tenant/roommate rents[65]), wrongfully evicting me from my

---

[61]  Against a legion of powerful and well financed bad actors.

[62]  DOC 44, PID 3769-3770 | https://rico.jefffenton.com/evidence/2018-12-22_projected-gross-taxes-alimony-net.pdf
DOC 27, PID 3260-3275 | https://rico.jefffenton.com/evidence/2018-07-12_arons-and-associates-divorce-planning.pdf

[63]  DOC 43, PID 3720-3721 | https://rico.jefffenton.com/evidence/2018-05-02_family-budget-living-apart.pdf
DOC 1-26, PID 1317-1318 | https://rico.jefffenton.com/evidence/2018-10-27_verbal-settlement-agreement.pdf

[64]  DOC 19-2, PID 2632-2646 | https://rico.jefffenton.com/evidence/2019-04-26_ausbrooks-story-fraudulent-bk-petition.pdf

[65]  DOC 1-17, PID 692-702 | https://rico.jefffenton.com/evidence/2019-07-29_response-to-wifes-motion-to-sell-residence.pdf

Brentwood home, without equal and due process, an impartial tribunal, lawful jurisdiction[66], or just cause, rendering me literally homeless within the State of Tennessee (almost instantly), and subsequently forcing my geographic displacement by roughly 600 miles away from the Chancery Court and the section of Middle Tennessee which I had called "home" for the past 25-years. Not out of any willful desire or plan to ever move to Michigan, but rather simply to obtain emergency replacement shelter and provision from my extended family, so that I could **physically survive** the cruel and unconscionable orders of Tennessee's state and federal courts.

58.     Let me state unequivocally, that defendants Chancery Court, Story, and Binkley knew[67] prior to their unlawful August 29, 2019, order[68], wrongfully evicting me from my Brentwood home[69] (and subsequently the state of Tennessee), that I can't drive over the Cincinnati Bridge[70] without help[71]. They also knew that as a direct result of their eviction, I would be displaced to the State of Michigan, to stay with my extended family. They also knew that once I was on the east side of the Cincinnati Bridge (the side leading to Michigan), I didn't have the resources or ability to be physically present in Tennessee's courts or to travel back and forth so that I could be physically present to defend myself in Tennessee's courts again. This was all well known by the court and counsel prior to them wrongfully evicting me from my Brentwood home and forcing me to the east side of the Cincinnati Bridge, in a desperate attempt to survive their cruel and careless crimes against myself and my family.

---

[66]   DOC 33, PID 3310-3391 | https://rico.jefffenton.com/evidence/2019-08-01_hearing-professional-and-judicial-misconduct.pdf
DOC 68, PID 5009-5029 | https://rico.jefffenton.com/evidence/2024-08-22_memorandum-of-law-about-void-tn-court-orders.pdf

[67]   DOC 23-4, PID 2920 | https://rico.jefffenton.com/evidence/2019-08-29_chancery-hearing-audio-recording.mp3
DOC 23, PID 2863-2920 | https://rico.jefffenton.com/evidence/2019-08-29_chancery-hearing-transcript-audio-markers.pdf

[68]   DOC 19-7, PID 2674-2677 | https://rico.jefffenton.com/evidence/2019-08-29_chancery-court-order-once-pro-se.pdf

[69]   DOC 1-12, PID 479-596 | https://rico.jefffenton.com/evidence/2019-10-29_tn-wilco-deed-fraud-ada-financial-exploitation.pdf

[70]   Officially called the "John A. Roebling Bridge", referred to as the "Cincinnati Bridge" herein.

[71]   DOC 23-4, PID 2920 | https://rico.jefffenton.com/evidence/2019-08-29_chancery-hearing-audio-recording.mp3
DOC 23, PID 2863-2920 | https://rico.jefffenton.com/evidence/2019-08-29_chancery-hearing-transcript-audio-markers.pdf

59.     I was wrongfully displaced from Tennessee against my will and strong protest, strictly due to the unlawful and criminal acts of the defendants. They should not gain the added advantage of being able to force me to litigate in a court which I do not reasonably have access to (roughly 600 miles away), where I cannot be actively present (in person or remotely), to fully participate in every phase of this lawsuit.

60.     Furthermore, the defendants have strongly objected to MIWD having jurisdiction to hear this matter, while that court is reasonably and practically within my reach.

## EQUITABLE ESTOPPEL

61.     Case law from across the nation makes perfectly clear that litigants should not benefit from their own misconduct. "'[Equitable estoppel] is wholly independent of the limitations period itself and takes its life, not from the language of the statute, but from the equitable principle that *no man will be permitted to profit from his own wrongdoing* in a court of justice.' (*Battuello*, 64 Cal. App. 4th 842, 847-848, 75 Cal. Rptr. 2d 548 quoting *Bomba v. W.L. Belvidere, Inc.* (7th Cir. 1978) 579 F.2d 1067, 1070.)" *Lantzy v. Centex Homes*, 73 P. 3d 517 (Cal. 2003) (strongest emphasis added).

62.     Unless this court allows this litigation to proceed while also allowing me ECF filing privileges and to participate in this lawsuit remotely[72], *equitable estoppel* is being **ignored** by the courts and the defendants continue to profit (through unjust enrichment and other unlawful means), from their cruel, depraved, bullying, abusive, and criminal misconduct[73].

---

[72]   DOC 197, PID 445-486 | https://rico.jefffenton.com/evidence/2025-01-10_motion-for-ecf-and-remote-participation.pdf

[73]   DOC 33, PID 3310-3391 | https://rico.jefffenton.com/evidence/2019-08-01_hearing-professional-and-judicial-misconduct.pdf
       DOC 68, PID 5009-5029 | https://rico.jefffenton.com/evidence/2024-08-22_memorandum-of-law-about-void-tn-court-orders.pdf

## SYMPTOMS AND SIGNS OF OCPD — FROM MERCK MANUALS[74]

"In patients with obsessive-compulsive personality disorder, preoccupation with order, perfectionism, and control of themselves and situations interferes with flexibility, effectiveness, and openness. Rigid and stubborn in their activities, these patients insist that everything be done in specific ways."

"To maintain a sense of control, patients focus on rules, minute details, procedures, schedules, and lists. As a result, the main point of a project or activity is lost. **These patients repeatedly check for mistakes and pay extraordinary attention to detail.** They do not make good use of their time, often leaving the most important tasks until the end. **Their preoccupation with the details and making sure everything is perfect can <u>endlessly</u> delay completion.** They are unaware of how their behavior affects their coworkers. **When focused on one task, these patients may neglect all other aspects of their life.**"

## PREDATORY TACTICS: ATTACK AND DESTROY SO CRUELLY, ABSOLUTELY, AND LAWLESSLY THAT NOBODY WILL EVER BELIEVE THE TRUTH

63.     This deprives the victim of resources to seek a remedy, while causing the *truth* to be so *outrageous* that it is treated as "unbelievable" by the courts, law enforcement, and the public.

64.     I've written tens of thousands of pages of documents and drafts in desperate attempts to articulate the depth and breadth of the damages caused me by the defendants. Attempting to reach help, accountability, protection, a remedy or cure, which is unreasonably overwhelming given the scope of this case and the number of bad actors directly involved. Further

---

[74]  Obsessive-Compulsive Personality Disorder (OCPD) - Psychiatric Disorders - Merck Manuals Professional Edition
DOC 52, PID 4254-4257 | https://rico.jefffenton.com/evidence/tn-ada-disabilities-exploited-for-advantage-ocpd-merck.pdf

exacerbated by their friends in high places who continue to cover for their overt misconduct and felony crimes, while refusing to intervene and help the injured party.

65.     I believe this is a strategic and intentional element of *predatory litigation*[75], as I have learned to recognize the preceding Tennessee actions to have been.

66.     <u>I believe that one of the goals of *predatory litigation*, is to make the **truth** so outrageous, overwhelming, illegal, unreasonably cruel, and at times downright sadistic, that most people will **never believe the truth**</u>, if or when the victim or "mark" is able to understand and communicate what has happened to them.

### THERE CAN BE NO "JUSTICE" IN A COURT OF "FRIENDS"

67.     This is one of the major reasons why no judge should hear a legal argument or case presented by one of their friends or prior associates[76].  Not because of intentional bias as is clear in this case, but because of the subconscious **preformed trust** of the *known* party, automatically giving them an *unfair* advantage over the *unknown* party.

68.     This is especially true when dealing with *pro se* litigants, who judges rarely side with or believe over counsel in the first place.

### ADJUDICATING THE MATTER VERSUS JUDGING THE PERSON

69.     The almost unsurmountable challenge for the *unknown* party, is in addition to not knowing the credibility of their claims, the judge must also determine the credibility of their *person*, their honesty, their integrity, their mental health, their motives, whether their knowledge of the

---

[75]    https://tninjustice.org/predatory-litigation-101/

https://jefffenton.com/predatory-litigation-how-us-courts-were-designed-to-produce-justice-why-they-fail-how-to-restore-justice-again/

[76]    DOC 43, PID 3726-3729 | https://rico.jefffenton.com/evidence/2018-08-30_tennessean-story-hosts-vacations-with-judges.pdf

DOC 44, PID 3740-3741 | https://rico.jefffenton.com/evidence/2018-09-24_tenn-binkley-defends-partying-with-lawyers.pdf

relevant law is accurate or displaced, almost none of which the judge is contemplating about the attorney, especially when that attorney is someone the **judge already knows**, is fond of, respects, has a relationship with (the closer the relationship, the more prone to error and natural bias), and ultimately whom the judge trusts or favors, at least on a subconscious level.

## THE "BENEFIT OF THE DOUBT"

70.     When one of the judge's close personal friends (such as defendant Story), whom the judge has known and trusted for years (at least on some professional level), whom the judge is fond of, has great respect for, who has influence in the community and the courts, who has influence with the judge's family and friends, along with in local politics, especially when that person has been a close family friend for decades (as defendant Story has been with the Binkley family), the judge is automatically inclined by both conscious and subconscious **human nature** to hear, receive, and believe or give her claims "the benefit of the doubt" in court.  At the very least, more so than any *unknown* party, especially a *pro se* litigant (often looked down on, despised, ridiculed, abused, and ignored by BAR members).

71.     Yet the disparity does not stop there, that is merely the starting point.

72.     Using defendants Story and Binkley, from this case for example, during the first hearing I had counsel, but that made truly little difference whatsoever.  Defendant Story was taken at face value by defendant Binkley, with nearly every word spoken treated as if a matter of fact, without material evidence, verification, or proofs, even when in direct violation of the court's rules of conduct and local laws.

73.      That's a poor example of what I'm trying to convey though, because there *was* nefarious intent involved on the part of both defendants Story and Binkley, while I'm trying to

provide an example where *absent* nefarious intent, it is *still* unreasonable to expect a judge to overcome the subconscious bonds and trust in relationships (human nature), to have any realistic chance of providing an *unknown* party with an honestly impartial tribunal, as is constitutionally required to operate courts of equity or law in this great nation.

## AN EXAMPLE WITHOUT JUDICIAL MISCONDUCT

74.     Using a hypothetical example instead, removing all misconduct and criminal intent from the court and judge (in a best-case scenario), but not from the *known* and *trusted* attorney, who is a close family friend of the judge (a common reality, our judicial system must anticipate and responsibly protect the public from—human nature), let me explain the impact that both honest and predatory testimony has, by the known party in court, on the tribunals "impartiality" (assuming the judge is trying to act honestly in good faith), and how that impacts the unknown party's testimony, how the court receives it, and the resulting access to justice realistically within reach of the *unknown* party.

## WHEN CLAIMS BY BOTH PARTIES ARE SIMILAR IN NATURE

75.     In the above example, when the testimony provided by both the known (liked, previously trusted, friend of the judge) and *unknown* parties are **close** or **similar** in nature, meaning that the two parties' claims aren't very different from each other, rather they are slightly different variations of primarily the same thing, the judge is in the best position to honestly hear, pause, and contemplate the claims by the *unknown* party, the subtle differences between the claims of both parties, and the honest application of the law between the two.

76.     This requires the judge to only make a conclusion about the **issues being heard**, and how the law is applied to those specific considerations, without the need to make any

significant conclusions about the honesty, character, integrity, lawful intent, mental health, motives, etc… about either party. Even more importantly, this does not require the judge to rule in a manner which is incongruent or even worse, which defies or offends their preformed beliefs about the *known* party (by human nature).

77.     Hence the closer the claims between the *known* and *unknown* parties, the better chance the court has of honestly acting fairly and impartially.

## WHEN THE KNOWN AND TRUSTED PARTY LIES

78.     In contrast, back to the example before (assuming that the court and the judge honestly have the best of intentions), when the testimony provided by both the *known* (liked, previously trusted, friend of the judge) and *unknown* parties are **extremely far apart** and fundamentally different in nature, especially if offensive to each other or the publicly recognized nature of justice, the judge is almost certain to go with their **gut feeling**, by *continuing* to believe the *known* and trusted party, over the party of *unknown* honesty, character, integrity, mental health, motives, agenda, etc… that's simply human nature.

## THE BIGGER THE LIE, THE MORE LIKELY THE COURT TO BELIEVE IT

79.     To make this disparity even more diabolical, the more evil, sadistic, cruel, abusive, inhumane, illegal, obscene, unconscionable, outrageous, unconceivable, implausible, the actions and claims by the *known* and trusted party (previously trusted, liked, friend of the judge), the more likely the judge will without delay rule strongly in favor of the known party and rule harshly against the interests of the *unknown* party[77]. (Regardless of the truth in the matters before the court.)

---

[77]    As this court has repeatedly done in this lawsuit, with or without personal knowledge of the players, favoring the BAR defendants.

Initials:

80. To do otherwise would first *require* the judge to *reject* their subconscious, gut-level, instinctive belief that the *known* party is *reasonably* honest, trustworthy, respectable, respecting of the court, competent, lawful, and operating in good faith for the purposes claimed.

81. It wouldn't just require a judge to face the shortcomings of a friend whom they previously trusted and/or thought highly about, to rule in favor of the *unknown* party, once there is this large of a disparity between the claims by both parties, but it would also force a judge to face their own shortcomings for having a friend who would attempt to improperly exploit their relationship, while committing fraud on the court, to intentionally cause unconscionable criminal harm to an innocent party, purely for their profit and gain, along with that of their client, their mutual friends, and fellow associates.

82. When the facts and case history show that it would take a **monster**, nearly devoid of a conscience, to fabricate such a foul plot, for the purpose of fraudulently robbing an ADA party of their highly valuable and critically needed property interests; **the judge is almost certain to rule in favor of their friend.** (It would require a massive departure from cultural norms to do otherwise.)

83. **"Impartiality" was never realistically possible in this scenario**[78]**, in the first place.** While it was judicial misconduct and impropriety at the highest levels in the State of Tennessee, which has negligently allowed Tennessee judges to violate the ethical canons by refusing to recuse themselves, even when there are obvious conflicts of interest. At the same time the State has egregiously required the public to participate in and submit to the unlawful arbitrary

---

DOC 236, PID 1491-1503 | https://rico.jefffenton.com/3-24-cv-01282/doc/236.pdf

DOC 237, PID 1504 | https://rico.jefffenton.com/3-24-cv-01282/doc/237.pdf

[78] As in this lawsuit, where the court has proactively acted in favor of the BAR defendants, showing an obvious **agenda** to dismiss this lawsuit without allowing one single hearing, to consider the facts or the evidence in the matters before the court, before terminating it.

exercise of biased and discriminatory power; often in "fixed" cases, while misappropriating the state's resources on doubling down and defending the unlawful exercise of power, instead of helping the injured parties and holding the bad actors accountable, to improve the honest judicial integrity throughout the state.

84.    With each breath that each party violated the Constitution of the United States of America and my rights therein, they simultaneously forfeited any "qualified immunity" they may have been otherwise entitled to, had they obeyed the rule of law, operated in good faith, and not targeted, interfered, intimidated, coerced, extorted, retaliated, and oppressed a disadvantaged ADA litigant.

85.    Shame on them for being such foul hideous creatures, but they shall not be spared from being held accountable for their actions, no matter what their titles or roles were.

86.    This is a case where one honest, God fearing, law abiding, officer of the court with exceptional moral fortitude could have prevented this entire catastrophe (the illegal loss of my Brentwood property, my liberty, and years of my life), from taking place; but simply put **no such person existed** or played a role in the preceding Tennessee matters.

87.    One of the sickest realities that I have learned about this, is the more cruel, criminal, evil, sadistic, and/or inhumane the actions and claims by the *known* and trusted BAR party, the more likely they will significantly reduce their time and costs in litigation, while winning very favorably in court, overwhelming the *unknown* party (the victim or "mark") with catastrophic financial damages, debilitating and consuming to survive, along with a *reality* and testimony which is *too large* and frankly *unbelievable* to be heard by most.  This almost guarantees the success of the predatory counsel, increasing their predatory take, while protecting them from getting caught or ever having to face the consequences for the <u>unconscionable and inhumane crimes they actually committed.</u>

## EVIDENCE THIS PREDATORY TACTIC WORKS TO HARM THE PUBLIC

88.     The effectiveness of this predatory tactic is extreme, unconscionable, and currently **devoid of a remedy in the Sixth Circuit** unless the court reconsiders the MEMORANDUM OF OPINION AND ORDER filed by District Judge Patricia Gaughan in DOC 236, PID 1497-1498, (shown in part below):

> "Further, even without a motion to dismiss, federal courts are courts of limited jurisdiction and have an independent duty to police the boundaries of their jurisdiction in every case. *See* Fed. R. Civ. P. 12(h)(3). A district court "may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally **implausible**, attenuated, unsubstantial, frivolous, **devoid of merit**, or **no longer open to discussion**." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). In other words, summary dismissal of even a fee-paid complaint may be appropriate where the plaintiff's claims "**lack the legal plausibility** necessary to invoke federal subject matter jurisdiction." *Id.*"

> "Applying these standards, the Court finds that Plaintiff's action warrants dismissal. For multiple reasons, **Plaintiff's Complaint is totally implausible, devoid of merit, and no longer open to discussion**" (emphasis added).

## WHEN THE COURT CLAIMS THAT THE <u>TRUTH</u> IS TOTALLY <u>IMPLAUSIBLE</u>

89.     At this point, regardless of any intent to the contrary, the court has become an instrument of lawless oppression, unconstitutional deprivation, and in many cases, litigious terrorism; causing substantial harm to the life, liberty, property, health, and happiness of the people, while pretending that what plagues them is ***<u>simply</u> <u>not real</u>***.  There are few insults greater to free and intelligent people than to dismiss their complaints as illegitimate and baseless, treating them without interest, care, respect or regard for their most basic natural human rights or constitutional rights in this great nation, destroying years' worth of work toward reaching a remedy for crimes which the state and the courts should have reasonably protected the public from and prevented from happening in the first place.

## TENNESSEE'S OVERSIGHT OF THE "PRACTICE OF LAW" IS BEING LEVERAGED FOR CRIMINAL PURPOSES

90.     When on top of that the bad BAR actors are buddies with people who are trusted to oversee and regulate the "practice of law" throughout the entire state, having enough influence to leverage the state's oversight boards to do their bidding (such as defendant Binkley has proven able to do[79] with former Attorney Whistleblower Manookian), while being protected from sanctions, discipline, and being disbarred as defendants Story and Binkley obviously are[80], that which was

---

[79]     DOC 1-14, PID 597-640 | https://rico.jefffenton.com/evidence/2021-03-21_knox-news-binkley-threatens-prior-restraints.pdf

DOC 58-3, PIC.4632-4710 | https://rico.jefffenton.com/evidence/2024-02-16_tnsc-disbarred-whistleblower-brian-manookian.pdf

DOC 58-4, PID 4712-4716 | https://rico.jefffenton.com/evidence/2024-02-16_tnsc-manookian-disbarment-opinion-justice-lee.pdf

[80]     As proven by past complaints I've filed with the Board of Professional Responsibility of the Supreme Court of Tennessee, which defendant Garrett has chosen to ignore and refused to take action on.  Repeatedly proven afresh each day that the State of Tennessee continues refusing to take action regarding the heavily documented **attorney** and **judicial misconduct** filed in this lawsuit and copied to the State of Tennessee, the Tennessee Supreme Court, the Administrative Offices of the Courts, the Board of Professional Responsibility of the Supreme Court of Tennessee, along with other divisions of State and County government, responsible for ensuring the lawful, honest, and fair use of **public resources and tax dollars**, for the public's broad benefit throughout the state, not just to benefit the *predators* who have influence and *control* over the courts and capital.

DOC 216, PID 984-1015 | https://rico.jefffenton.com/evidence/2025-02-24_notice-to-all-bar-members.pdf

designed as an office of public trust, meant to safe-guard the public from the *unethical* "practice of law", becomes a *racketeering enterprise*[81] of criminal collusion, arbitrary power, deprivation, oppression, and corruption, perverting the state's courts and the power therein for dishonest, unethical, and obscene purposes, referred to by some ethics whistleblowers and victims of *predatory litigation* as **"state-sponsored terrorism"**.

91.     It is for this exact reason that this lawsuit has been brought and must be allowed to proceed to trial, as long as the **Constitution of the United States of America** is <u>not</u> **dead letter**, provides any tangible **protection to the people**, and is still considered to be the **supreme Law of the Land.**

> "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding[82]." U.S. Const. art. VI, cl. 2.

> "It will be an evil day for American Liberty if the theory of a government outside supreme law finds lodgement in our constitutional jurisprudence. **No higher duty rests upon this Court than to exert its full authority to prevent all violations of the principles of the Constitution.**" *Downs v. Bidwell*, 182 U.S. 244 (1901) (emphasis added).

---

[81]   Operation Greylord | https://www.fbi.gov/history/famous-cases/operation-greylord

Kids-for-Cash | https://www.npr.org/2022/08/18/1118108084/michael-conahan-mark-ciavarella-kids-for-cash

Thomas Girardi | https://rico.jefffenton.com/evidence/girardi-investigation-for-the-state-bar-of-california.pdf

Thomas Girardi | https://rico.jefffenton.com/evidence/girardi-lion-air-flight-610-crash-memorandum-order.pdf

https://davisvanguard.org/2023/06/petition-for-antitrust-complaint-against-state-bar-and-chairman-filed-and-decided-without-complainants-knowledge/

[82]   The citation for the Supremacy Clause is U.S. Const. art. VI, cl. 2. This clause establishes that the Constitution, federal laws made in accordance with it, and treaties made under the authority of the U.S. are the supreme law of the land, overriding any conflicting state laws or constitutions.

https://constitution.congress.gov/browse/essay/artVI-C2-1/ALDE_00013395/

"Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy." *Olmstad v. United States*, (1928) 277 U.S. 438

## TENNESSEE'S TREADING DANGEROUSLY CLOSE TO TREASON

92.     Upon information and belief, the **truths** disclosed in this declaration along with other filings in this lawsuit, *show* that the *actions* and *inactions* by some of the powerful defendants, Williamson County, the State of Tennessee, both State and Federal Courts, and even divisions, departments, offices and/or officers of the United States of America, are treading dangerously close to **treason**.  I have prayed, worked, and fought to compel state and federal courts to take this complaint seriously and **intervene**; to lawfully restore honest, ethical, protection to the "practice of law" and the public at large throughout the State of Tennessee.  So far, everyone has refused.

93.     Upon information and belief, with the amount of outrageous crimes committed against me by the defendants (as are irrefutably documented in this lawsuit[83]), despite holding multiple elevated offices of public trust in Tennessee (which they have repeatedly betrayed), if the law firms, attorneys, courts, and judges involved figure out a way *to deprive me of a remedy*, regardless of what "legal" theory their motions and orders are based on, or how craftily they are executed, **that will constitute an additional <u>felony crime</u>** (cause of action) against me **by every party involved**, including the court.  That being another RICO count of racketeering via the courts, under color of law, office, or official right (Hobb's Act[84]), along with ADA "interference,

---

[83]   DOC 53, PID 4258-4349 | https://rico.jefffenton.com/evidence/2024-03-13_irrefutable-proof-of-criminal-conspiracy.pdf

[84]   https://www.justice.gov/archives/jm/criminal-resource-manual-2402-hobbs-act-generally
https://www.justice.gov/archives/jm/criminal-resource-manual-2403-hobbs-act-extortion-force-violence-or-fear

[84]   https://www.justice.gov/archives/jm/criminal-resource-manual-2404-hobbs-act-under-color-official-right

coercion, or intimidation[85]", as well as more *extrinsic fraud*[86], commonly referred to as "fraud on the court by officers of the court", extending the statute of limitations indefinitely, until the court obeys the rules of judicial and professional conduct, acts honestly in *good faith*, while ethically and lawfully **providing me with a reasonable remedy.**

94.     Upon information and belief, no one who continues leveraging offices of public trust, the state, the courts, or the "law"; to deprive peaceful people of their property and rights, **can enjoy any form of immunity** within the United States of America.  There is no such Constitutional immunity that exists or can be provided to protect them from the consequences of their crimes.  The proposition itself shows an intolerable level of disrespect, if not disdain, for the people, our flag, and the Constitution under which we live.  Power and responsibility have always gone hand-in-hand.  The defendants in this lawsuit have negligently, and in some cases egregiously exercised both.

## MISAPPROPRIATION OF PUBLIC FUNDS, EGREGIOUS COURT MISCONDUCT, PROFESSIONAL NEGLIGENCE AND IMPROPRIETY

95.     The State of Tennessee is involved in professional negligence and impropriety, along with every BAR member and law firm they employ to evade, deflect, and/or dismiss them from liability and responsibility for their actions under color of law, office, and official right.

96.     Every dollar that Williamson County and the State of Tennessee spend to argue for immunity rather than to force the bad actors to ethically comply with the State of Tennessee's Rules of Judicial and Professional Conduct[87] is a misappropriation of public resources and tax

---

[85]   42 U.S.C. §§ 12202-12205 | https://www.law.cornell.edu/uscode/text/42/12202 | No state immunity for anyone.

[86]   https://en.wikipedia.org/wiki/Extrinsic_fraud

[87]   DOC 41, PID 3570-3608 | https://rico.jefffenton.com/evidence/tennessee-rules-of-judicial-and-professional-conduct.pdf

dollars for private criminal purposes.

97.     The deflection by the defendants from doing what is honest, ethical, and lawful, shall continue to create new, never-ending, **causes of action**, until the courts stop these bad actors from playing games and forces them to obey the law, including the ethical canons, applied equally for public benefit throughout the state.

98.     I have been forced onto Medicaid and Michigan's Supplemental Food Assistance Program in order to survive the crimes committed against me by these powerful Tennessee bad actors, without any care or concern for whether or not it was even physically possible for me to survive their cruel, biased, and unlawful court orders.

### MY LIFE REMAINS UNSUSTAINABLE AS A RESULT OF MY WRONGFUL EVICTION

99.     Except for during a short period of State and Federally funded financial relief (around the time of COVID-19), I have not been able to afford my own shelter, utilities, or even essential toiletries like soap, shampoo, toothpaste or toilet paper since being forcefully rendered homeless from my Brentwood residence, on **September 3, 2019**, around noon, by the Williamson County Sheriff's Office, during my wrongful eviction.

100.     This wrongful eviction was caused by excessive fraud on the court, including false claims of both fact and law in open court by defendant Story[88], while defendant Binkley played along with her misconduct and joined in instead of correcting, disciplining, or reporting Story's misconduct, as the State of Tennessee's Rules of Judicial Conduct require.

---

[88]    DOC 33, PID 3310-3391 | https://rico.jefffenton.com/evidence/2019-08-01_hearing-professional-and-judicial-misconduct.pdf

101.    Instead, defendant Binkley issued illegal court orders[89], wrongfully depriving me of **both** my only steam of income, along with my valuable and critically needed Brentwood property interests, without the lawful jurisdiction to hear or dispose of either matter[90], while depriving me of equal and due process of law, and notice by which I could save, mitigate my losses in, or redeem my most essential property interests, as is constitutionally guaranteed.

**FALSE CLAIMS ABOUT REAL ESTATE AND CONTRACT LAW IN OPEN COURT**

102.    These wrongful actions by the court were unfairly elicited and justified by defendant Story's false, fictitious, and fraudulent claims[91] about *common matters* of *real estate* and *contact law*, in open court on August 1, 2019.  Every BAR member present in court that day should have reasonably known that defendant Story had materially misrepresented the law in those matters.  While every defendant[92], Attorney, and Judge in this matter, should now reasonably know the same.

103.    I was forcefully displaced, against my will, to the State of Michigan to obtain emergency replacement shelter and provision from my extended family, as a direct result of being wrongfully evicted from my Brentwood, Williamson County, residence on September 3, 2019.

---

[89]    DOC 19-6, PID 2669-2672 | https://rico.jefffenton.com/evidence/2019-08-01_chancery-court-order-with-counsel.pdf
    DOC 19-7, PID 2674-2677 | https://rico.jefffenton.com/evidence/2019-08-29_chancery-court-order-once-pro-se.pdf
    DOC 19-13, PID 2706-2709 | https://rico.jefffenton.com/evidence/2019-10-21_chancery-final-decree-of-divorce.pdf
    DOC 1-31, PID 1794-1873 | https://rico.jefffenton.com/evidence/2019-10-21_order-of-protection-as-illegal-prior-restraint.pdf
    DOC 1-31, PID 1794-1873 | https://rico.jefffenton.com/evidence/2020-09-24_5yr-op-ext-retaliation-no-notice-motion-hearing.pdf

[90]    DOC 53, PID 4258-4349 | https://rico.jefffenton.com/evidence/2024-03-13_irrefutable-proof-of-criminal-conspiracy.pdf

[91]    DOC 33, PID 3310-3391 | https://rico.jefffenton.com/evidence/2019-08-01_hearing-professional-and-judicial-misconduct.pdf

[92]    DOC 216, PID 984-1015 | https://rico.jefffenton.com/evidence/2025-02-24_notice-to-all-bar-members.pdf

## DISCLOSING DISABILITIES & REPORTING FRAUDULENT MISCONDUCT

104.     While I have repeatedly disclosed my disabilities[93] to the courts along with how the defendants herein have fraudulently, cruelly, and unconscionably exploited my disabilities[94] for **their own gain**, with no honest, moral, ethical, or lawful basis for their actions.

## TRYING TO SURVIVE & SEEK A REMEDY IS MY FULL-TIME JOB NOW

105.     The research of law and the development of skills needed to bring forth this lawsuit have been the most demanding full-time pursuit of my life.  Between the "order of protection" and restrictions caused by COVID-19, followed by a need for caution to continue protecting my elderly mother's health (due to her life-threatening immunity disorder), plus the thousands of hours I have invested in legal research while seeking a remedy for the crimes committed against my family, it has not been possible so far for me to obtain or maintain any employment by which to help support myself and contribute towards my basic living expenses, in any meaningful capacity or duration.

## F.R.CIV.P. RULE 2 — ONE FORM OF ACTION

106.     I've done everything in my power to study law and cite my claims as accurately, completely, and timely as I know how, in my FAC[95].

107.     There has been no less fruitful pursuit in my life than trying to compel the defendants, the Court and multiple Federal Judges to respect my natural and constitutional rights,

---

[93]   DOC 57-1, PID 4460 | https://rico.jefffenton.com/evidence/2019-09-23_seeking-ada-assistance-coa-referred-aoc.pdf
       DOC 1-38, PID 2032-2045 | https://rico.jefffenton.com/evidence/2020-07-08_tnsc-coa-ada-request-for-modification.pdf
       DOC 52, PID 4254-4257 |   https://rico.jefffenton.com/evidence/tn-ada-disabilities-exploited-for-advantage-ocpd-merck.pdf
       DOC 32, PID 3296-3309 | https://rico.jefffenton.com/evidence/1-23-cv-01097_fenton-declaration-of-disabilities.pdf

[94]   DOC 18-7, PID 2526-2589 | https://rico.jefffenton.com/evidence/2019-08-29_husbands-one-and-done-answer-to-all.pdf
       DOC 57-1, PID 4419-4441 | https://rico.jefffenton.com/evidence/2019-09-20_halt-confronting-criminal-misconduct-by-story.pdf
       DOC 57-1, PID 4452-4459 | https://rico.jefffenton.com/evidence/2019-09-23_notified-binkley-false-claims-in-storys-order.pdf

[95]   DOC 66, PID 4870-5007 | https://rico.jefffenton.com/evidence/3-24-cv-01282_fenton-vs-story-first-amended-complaint.pdf

obey the law, and to not trespass upon my life, my liberty, my property, or my pursuit of happiness. To say that the defendants in this case have egregiously violated every last one, would be an understatement.

108.    I began working full-time on this lawsuit, a little over a year before filing it on October 13, 2023.  That first year, I worked a minimum of *twelve hours* per day, *six days* per week, often seven. That was a minimum of *three thousand, seven hundred and forty-four* (3,744) hours of work prior to filing on October 13, 2023.

109.    I maintained that pace for most of the second year also, and I have **never** worked on it less than *ten hours per day*, *six days per week* since.

110.    From October 13, 2023, to today (April 22, 2025) is *five hundred and fifty-seven* (557) days in total.  Which divided by seven days per week equals a little over *seventy-nine* weeks. Multiplied by a minimum of *sixty hours* of work per week, equals another *four thousand, seven hundred, and forty* (4,740) hours of work.

111.    Finally, by adding the *three thousand, seven hundred and forty-four* hours of work prior to filing on October 13, 2023, and the *four thousand, seven hundred, and forty* hours of work since that date, equals a minimum of *eight thousand, four hundred and eighty-four* (**8,484**) hours of work I have invested into this lawsuit, to date.

112.    Calculated based upon an average pay rate of *thirty dollars* per hour for my labor, that is a total investment of *two hundred and fifty-four thousand, five hundred and twenty* dollars ($254,520) in my time and labor invested into this lawsuit, plus over *ten thousand dollars* ($10,000) in cash that I borrowed from family for supplies, professional subscriptions, and service, which cost me over six thousand ($6,000) dollars in cash alone.

Initials:

113.    Completely and entirely wasted by one single careless court order, calling it all **"implausible"** and **"devoid of merit"**, without a single hearing, despite thousands of pages of evidence and sworn testimony, already filed on court record, proving beyond any reasonable doubt that the majority of my claims are in fact **true**, and can not be honestly denied or defended by the defendants or their counsel, but this court chose to intervene on their behalf, claiming that it is **"no longer open to discussion."**

114.    Now the Court has fraudulently dismissed my lawsuit, literally wasting years' worth of painstaking work, and the last funds which I have access to for seeking a remedy in the foreseeable future.

115.    Obviously, I'm not going to be able to receive lawful and equitable relief by bringing a lawsuit against this entire wall of power that I am up against, at one time.

116.    Over a dozen different lawsuits could easily be broken out of this one.  Probably twice that many could.

117.    Moving forward I will pursue common law remedies in an effort to avoid the obvious conflicts of interest present in the Federal Courts regarding these state level bad actors.

118.    If I must file a lawsuit again, I expect that I will do so in Michigan's State Court System, under the long-arm statute of the State of Michigan.

119.    The State of Tennessee has been illegally depriving my rights and interfering with my ADA employability from a distance, under the VAWA's Full Faith and Credit Provision in 18 U.S.C. § 2265 for over five years without due process, an impartial tribunal, notice, hearing, or lawful jurisdiction, so I'm confident that I can receive a lawful remedy from a distance as well.

120. The State of Tennessee and the defendants had their chance to handle these claims in their own court, with a home field advantage, but just as I anticipated in my AMENDED DECLARATION VOICING PLAINTIFF'S CONCERNS ABOUT TRANSFERRING THIS ACTION TO TENNESSEE[96] filed in ECF 102, PID 5391-5465, they couldn't withstand the temptation of obstructing justice again, by dismissing this lawsuit without taking any remedial action whatsoever.

121. The additional count(s) of racketeering which have now taken place in the Federal Courts, have revived the statute of limitations for pressing criminal charges against all parties, which I will explore with Attorney General Pam Bondi, FBI Director Kash Patel, and Deputy Director Dan Bongino.

122. Since the current order of the court to dismiss this lawsuit[97], predominately consists of extrinsic fraud (aka "fraud on the court by officers of the court") as outlined in my OBJECTION TO MEMORANDUM OF OPINION AND ORDER , AND JUDGMENT ENTRY , WITH DECLARATION AND RULE 59 MOTION TO ALTER JUDGMENT OR FOR A NEW TRIAL, there is no longer a statute of limitations for me obtaining a civil remedy.  Especially as long as the Court's continue to deny me one.  It's my responsibility to try, but it's the court's responsibility (along with all court officers) to act ethically and lawfully.

---

[96] DOC 102, PID 5391-5468 | https://rico.jefffenton.com/evidence/2024-10-09_concerns-about-transferring-to-tennessee.pdf

[97] DOC 236, PID 1491-1503 | https://rico.jefffenton.com/3-24-cv-01282/doc/236.pdf

## ADDITIONAL CRIMINAL & CIVIL COUNTS NOT MENTIONED IN COMPLAINT

123.    As stated in part on page 7 of the MEMORANDUM OF OPINION AND ORDER filed by District Judge Patricia A. Gaughan on March 26, 2025, in DOC 236, PID 1497, "to state a claim in federal court, the allegations in the complaint must be sufficient to give the defendants "fair notice of what [the plaintiff's] claims [against them] are and the grounds upon which they rest." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)"

124.    I have been completely destroyed[98] and rendered destitute for nearly **six years**, without any lawful reason, good conduct, due process, jurisdiction, or equal protection under the law, while denying my participation in hearings, after I had my home illegally seized under the fraudulent color of law, essentially forcing me out of the State of Tennessee, **by actions which meet the common law definition for kidnapping**, while they continue to **unlawfully restrain my constitutional rights** for no honest, lawful, good faith purpose whatsoever.

### COMMON LAW KIDNAPPING[99]

"Kidnapping is a crime at common law consisting of an **unlawful restraint of a person's liberty by force or show of force.** Under modern law, this crime usually only requires that the victim be taken to another location or concealed, but historical definitions required bringing the victim to another state or country."

---

[98]    DOC 214, PID 911-975 | https://rico.jefffenton.com/evidence/fenton-finances-roles-property-education-support-fraud.pdf

[99]    https://www.law.cornell.edu/wex/kidnapping

## MODEL PENAL CODE § 212.1 DEFINES KIDNAPPING AS FOLLOWS[100]

"A person is guilty of kidnapping if he **unlawfully removes another from his place of residence** or business, **or a substantial distance from the vicinity where he is found**, or if he **unlawfully confines another for a substantial period** in a place of isolation, with any of the following purposes:

- to hold for ransom or reward, or **as a shield or hostage**; or

- **to facilitate commission of any felony** or flight thereafter; or

- **to inflict bodily injury on or to terrorize the victim or another; or**

- **to interfere with the performance of any governmental or political function.**

"Kidnapping is a felony of the first degree unless the actor voluntarily releases the victim alive and in a safe place prior to trial, in which case it is a felony of the second degree. **A removal or confinement is unlawful within the meaning of this Section if it is accomplished by force, threat, or deception**, or, in the case of a person who is under the age of 14 or incompetent, if it is accomplished without the consent of a parent, guardian or other person responsible for general supervision of his welfare."

The federal kidnapping statute is 28 USC § 1201.

125.    Upon information and belief, I don't remember a defendant yet materially denying or challenging these facts.  Therefore, I don't know by what lawful or ethical authority the court can continue refusing to acknowledge these **facts** as **true**.

---

[100] https://www.law.cornell.edu/wex/kidnapping

126.    Any part of which this court does not believe, then this court owes me an **evidentiary hearing**, which I have mentioned repeatedly, to fulfill this court's responsibility to hold hearings to determine the facts, prior to applying the law to misconduct and material falsehoods.

127.    My "AMENDED COMPLAINT FOR TORTIOUS CONDUCT AND INJUNCTIVE RELIEF" lists roughly fifty violations of civil & criminal law (with court rules), with eleven specifically being felony crimes, along with fourteen separate causes of action.  That is not in any way, shape, or form an exhaustive list of the criminal and civil violations by the defendants, nor is it an exhaustive list of the counts and causes of action which the defendants wrongfully harmed me by, which I am lawfully due a remedy for and am seeking to secure.

128.    That is merely my best effort to date to provide everyone notice about the crimes committed against me by the defendants.

129.    A principal concept of law in that once a party has been give **notice** of harm they have caused you, they become **liable** to provide a reasonable **remedy**.

130.    The defendants, their counsel, the owners of those law firms, the officers of the court who have interfered with these proceedings, you have all been given legal **notice**[101] of the damages you have and continue to cause me.

131.    **I therefore have a <u>claim</u> against each of you**, your family's and your heirs, due to myself, my family, and my heirs, which will transcend any court order which denies me a reasonable lawful, equitable remedy, into perpetuity.

---

[101]   DOC 216, PID 984-1015 | https://rico.jefffenton.com/evidence/2025-02-24_notice-to-all-bar-members.pdf

Initials:

132.    I encourage everyone involved to contact me regardless of the outcome of this lawsuit, to settle my claims against you, as soon as possible.

133.    No party to this lawsuit will be released from this claim unless they specifically obtain from me a fully executed **RELEASE OF ALL CLAIMS**, notarized and signed by myself.

134.    No coerced action or order from any court can alleviate this liability or sever this claim.

135.    I cannot afford to notice the defendants again about this claim, but you can check the status of this claim at any time by visiting my website at https://claims.jefffenton.com.

136.    You have all been given legal notice.

137.    **I reserve all rights to remedies in every form.**

### CONCLUSION

138.    Upon information and belief, no defendant in this case to date has meaningfully challenged the facts in this lawsuit, the prior court records as presented, or the supporting evidence, while swearing under the penalty of perjury that their claims are lawful, filed without misconduct, in the honest interests of justice, and are actually true; as almost all of my testimony in this lawsuit has been sworn, attested, and certified accurate.

139.    Therefore, it would be inappropriate, unfair, and biased for the court to treat the facts as anything less than the actual **truth**.  To proceed without assuming that my claims are true, would further violate my constitutional rights to equal and due process by an impartial tribunal.  At this stage, it is unreasonable to deny me the "benefit of the doubt", since my testimony is sworn to under the penalty of perjury, while including extensive supporting evidence, some of which is literally irrefutable, showing the court who the bad actors are regardless of their claims and filings.

Especially in the absence of any sworn testimony or evidence challenging the facts, it's inappropriate for the court to treat them as less than **true**.

140.    If the court disagrees with this assessment, then at the very least they owe me an **evidentiary hearing**, where I can be heard and prove the **truth** of my claims.

## CERTIFICATION AND DECLARATION

By signing below, I, Jeffrey Ryan Fenton, certify that this document has been executed in good faith, in the honest pursuit of justice, and in strict compliance with F.R.Civ.P. 11(b).

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct, except as to matters herein stated to be on information and belief, and as to such matters, I certify as aforesaid that I verily believe the same to be true.

All rights reserved.

Executed on April 22, 2025.

**JEFFREY RYAN FENTON, PRO SE**
17195 SILVER PARKWAY, #150
FENTON, MI, 48430-3426
CONTACT@JEFFFENTON.COM
HTTPS://JEFFFENTON.COM
(P) 615.837.1300
#TNinjustice
#iAMhuman

The biggest threat to the freedom and prosperity of the American people,
are state and federal government employees, who are willing to write **lies** into court
and government records, as if the **truth**, while hiding from accountability
behind government **immunity**.
—*Jeffrey Ryan Fenton*

*I'm a natural man, not a corporation or property.  Please treat my case accordingly.*

**DOCUMENTS REGARDING** (CASE: 3:24-CV-01282):

1. OBJECTION TO MEMORANDUM OF OPINION AND ORDER, AND JUDGMENT ENTRY, WITH DECLARATION AND RULE 59 MOTION TO ALTER JUDGMENT OR FOR A NEW TRIAL

2. DECLARATION OF UNCONSTITUTIONAL DESTRUCTION AND OPPRESSION WITH ADA INTERFERENCE, COERCION, INTIMIDATION, AND RETALIATION (IN SUPPORT OF MY RULE 59 MOTION TO AMEND JUDGEMENT OR FOR A NEW TRIAL)

3. Plaintiff's Exhibits A, B, C, and D

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2025, I sent the foregoing or above-named papers to the United States District Court for the Middle District of Tennessee, at their address below, for filing in case number 3:24-cv-01282.

I further certify that on April 23, 2025, I am serving these same documents to the defendants or their counsel by first class or priority mail with postage prepaid at the addresses listed below. If for any reason beyond my control, I am unable to complete either on the date specified, I will do so on the very next business day.

UNITED STATES DISTRICT COURT (TNMD)
719 CHURCH ST
NASHVILLE, TN 37203-6940

MEGAN CALME & SARAH MATHEWS
WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
3102 WEST END AVE STE 400
NASHVILLE, TN 37203-1623

FENTON v. STORY et al.                Page 1 of 4                CASE NO. 3:24-cv-01282

Case 3:24-cv-01282    Document 238    Filed 04/23/25    Page 60 of 64 PageID #: 1564

PEAKO ANDREA JENKINS
TENNESSEE ATTORNEY GENERAL'S OFFICE
PO BOX 20207
NASHVILLE, TN 37202-4015

KATHRYN LYNN YARBROUGH
223 TOWN CENTER PKWY UNIT 1897
SPRING HILL, TN 37174-3040

LISA M. CARSON
BUERGER, MOSELEY & CARSON, PLC
4068 RURAL PLAINS CIR STE 100
FRANKLIN, TN 37064-8039

CAROLINA MARTIN & COURTNEY WILLIAMS
GORDON & REES SCULLY MANSUKHANI, LLP
4031 ASPEN GROVE DR STE 290
FRANKLIN, TN 37067-2951

ALEXANDER SERGEY KOVAL
CLARK & WASHINGTON, P.C.
1321 MURFREESBORO PIKE STE 320
NASHVILLE, TN 37217-2858

ANTHONY NOEL & LARUA BASSETT
LEITNER, WILLIAMS, DOOLEY, AND NAPOLITAN, PLLC
750 OLD HICKORY BLVD STE 200
BRENTWOOD TN 37027-4567

ANICA CLARISSA JONES
U.S. ATTORNEY'S OFFICE
719 CHURCH ST STE 3300
NASHVILLE, TN 37203-7155

SANDRA J. DENSHAM
PLUNKETT COONEY
333 BRIDGE ST NW STE 530
GRAND RAPIDS, MI 49504-5365

THOMAS E. ANDERSON
1187 OLD HICKORY BLVD STE 125
BRENTWOOD, TN  37027-4248

FENTON v. STORY et al.          Page 2 of 4          CASE NO. 3:24-cv-01282

Case 3:24-cv-01282     Document 238     Filed 04/23/25     Page 61 of 64 PageID #: 1565

GREGORY BROWN & WILLIAM HICKERSON
LOWE YEAGER & BROWN, PLLC
920 VOLUNTEER LANDING LN STE 200
KNOXVILLE, TN 37915-2584

ALAN RHENEY
SPRAGINS, BARNETT & COBB, PLC
312 E LAFAYETTE ST
JACKSON, TN 38301-6220

BRET CHANESS
RUBIN LUBLIN, LLC
3145 AVALON RIDGE PL STE 100
PEACHTREE CORNERS, GA 30071-1570

R L MOORE
BANKERS TITLE & ESCROW CORPORATION
3310 WEST END AVE STE 540
NASHVILLE, TN 37203-6802

B. GOLDAMMER & D. SUEDEKUM
KAY GRIFFIN, PLLC
222 2ND AVE N STE 340M
NASHVILLE, TN 37201-1649

G. CATE & K. INGRAM-HOGAN
BRADLEY ARANT BOULT CUMMINGS, LLP
1221 BROADWAY STE 2400
NASHVILLE, TN 37203-7238

ERIK HALVORSON
BRADLEY ARANT BOULT CUMMINGS
1221 BROADWAY STE 2400
NASHVILLE, TN 37203-7238

FENTON v. STORY et al.     Page 3 of 4     CASE NO. 3:24-cv-01282

Case 3:24-cv-01282     Document 238     Filed 04/23/25     Page 62 of 64 PageID #: 1566

## ELECTRONIC SERVICE OPTIONS

Many of my filings in this lawsuit are also made publicly available on the Internet, through my list[1] of documents filed by myself in this lawsuit, since the release of my lawsuit service package[2]. I typically try to do this as quickly as I can after filing them in court, depending upon my workload. Not every filing warrants being electronically published in this manner, while my time is extremely limited, therefore I cannot provide any guarantees about which documents will or will not be made available online, or exactly when.

For those interested, these files are usually "true" digitally created PDF files, in full color, often with optical character recognition enabled, sometimes with electronic bookmarks, and occasionally with a built-in table of contents which is hyperlinked for easy and efficient referencing, in my largest and most significant documents, such as my amended complaint[3].

## CERTIFICATION AND DECLARATION

By signing below, I, Jeffrey Ryan Fenton, certify that this document has been executed in good faith, in the honest pursuit of justice, and in strict compliance with F.R.Civ.P. 11(b).

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct.

All rights reserved.

Executed on April 22, 2025.

**JEFFREY RYAN FENTON, PRO SE**

17195 SILVER PARKWAY, #150
FENTON, MI, 48430-3426
CONTACT@JEFFFENTON.COM
HTTPS://JEFFFENTON.COM
(P) 615.837.1300
#TNinjustice
#iAMhuman

---

[1]    https://jefffenton.com/digital-service-package-for-lawsuit/fenton-filings-since-service/

[2]    https://jefffenton.com/digital-service-package-for-lawsuit/
       ECF 69, PID.5030-5042 | https://rico.jefffenton.com/evidence/1-23-cv-01097_fenton-vs-story-lawsuit-service-pack-details.pdf

[3]    DOC 66, PID 4870-5007 | https://rico.jefffenton.com/evidence/3-24-cv-01282_fenton-vs-story-first-amended-complaint.pdf

FENTON v. STORY et al.                Page **4** of **4**                CASE NO. 3:24-cv-01282

Case 3:24-cv-01282   Document 238   Filed 04/23/25   Page 63 of 64 PageID #: 1567

Address:          4455 LINDEN CREEK
                  PARKWAY
                  FLINT
                  MI 48507
Location:         FNTA
Device ID:        -BTC01
Transaction:      940405614275

---

FedEx Priority Overnight
Tracking Number:
  287843453246    3.50 lb (S)      108.45
     Declared Value    100
Recipient Address:
     UNITED STATES DISTRICT CT
     ATTN: CLERK OF THE COURT COURT
     719 CHURCH STREET
     Nashville, TN 37203-6940
     8104286500

Scheduled Delivery Date 4/23/2025

Pricing option:
     ONE RATE

Package Information:
     FedEx Medium Box

          Shipment subtotal:     $108.45

                 Total Due:      $108.45

M = Weight entered manually
S = Weight read from scale
T = Taxable item

Terms and conditions apply, including terms that limit
FedEx's liability. The estimated shipping charge
may be different than the actual charges for your
shipment. Differences may occur based on actual weight,
dimensions and other factors. Shipment-related terms
and conditions and details on how shipping charges
are calculated are available upon request or at
fedex.com/serviceguide.

          We value your feedback!
          Tell us how we're doing!
             fedex.com/fscfeedback

          *** Thank you ***

          Visit us at: fedex.com
          Or call 1.800.GoFedEx
             1.800.463.3339

          Apr 22, 2025 6:38:25 PM





**NOTICE OF ADDRESS CORRECTION AND CERTIFICATE OF SERVICE**

I certify that on June 17, 2026, at 12:06 AM, I submitted this "EMERGENCY MOTION TO STAY OR EXTEND APPELLANT BRIEF DEADLINE; FOR LEAVE TO FILE DELAYED OBJECTIONS AND RECONSIDERATION OF DOC 31-1 AND DOC 42-1; FOR PANEL REVIEW; AND FOR THRESHOLD CAPTION, ACCESS, SERVICE, RECORD-CORRECTION, TRUTH-CERTIFICATION, AND NO-GOOD-FAITH / IFP RELIEF BEFORE MERITS BRIEFING" to the United States Court of Appeals for the Sixth Circuit through the Court's designated pro se email filing address.

I served defendants and/or their counsel by email at the same time I emailed this filing to the Court, consistent with prior court-staff approval for email filing and service. A copy of the transmittal email, including the names and email addresses noticed, is provided as proof of service.

Most noticed email addresses were obtained directly from the "Attorney to be Noticed" section of the TNMD PACER docket because the Sixth Circuit docket does not display all counsel email addresses in the same usable manner.

To add, update, or remove an email address from this service and distribution list, please email notice@fentonvstory.com.

This filing was transmitted approximately six minutes after midnight despite my best efforts to meet the deadline. As a pro se litigant, I am required to print, physically sign, scan, and email filing documents. During final emergency preparation, my printer toner unexpectedly ran out immediately before I urgently attempted to print and execute this filing. I had diligently worked on this filing for nearly 24 hours straight. The delay was not caused by lack of effort, abandonment, or disregard of the deadline, but by emergency filing conditions, my disability-related

communication and drafting burdens, and the unresolved access posture addressed in the filing. I respectfully request leave, for good cause, for the approximately six additional minutes required to complete transmission.

I also notify the Court that, because of those same emergency filing conditions, the motion transmitted at 12:06 AM contained my former signature/address block on page 16. I am submitting a corrected version of the same motion with this filing and respectfully request that the Court file or substitute the corrected version in place of the version transmitted at 12:06 AM. I certify that the corrected version is identical in substantive content to the version transmitted at 12:06 AM, except that the signature/address block on page 16 has been corrected.

I also maintain public notice pages at https://fentonvstory.com/notices/ and https://fentonvstory.com/defendant-notices/. Because of the emergency timing and access limitations, I respectfully request reasonable latitude to complete any supplemental email or website notice steps within a few days after filing.

# CERTIFICATION AND DECLARATION

By signing below, I, Jeffrey Ryan Fenton, certify that this document has been executed in good faith, in the honest pursuit of justice, and in strict compliance with F.R.Civ.P. 11(b).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, except as to matters herein stated to be on information and belief, and as to such matters, I certify as aforesaid that I verily believe the same to be true.

I expressly reserve all rights, objections, and arguments concerning venue, transfer, jurisdiction, forum access, preservation of claims, and all available remedies.

Executed on June 17, 2026.

JEFFREY RYAN FENTON
Pro Se Appellant/Plaintiff
Sixth Circuit No. 25-5592
P.O. Box 400
Linden, MI, 48451-0400
Notice@FentonvStory.com
https://FentonvStory.com
(P) 615.837.1300
#TNinjustice
#iAMhuman

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JEFFREY RYAN FENTON,

PLAINTIFF

v.

VIRGINIA LEE STORY ET AL.,

DEFENDANTS

CASE NO. 25-5592[1]

## DECLARATION AND NOTICE OF UNRESOLVED THRESHOLD FILINGS, ACCESS BARRIERS, RECORD-CORRECTION ISSUES, AND GOOD CAUSE FOR STAY, EXTENSION, PANEL REVIEW, AND STRUCTURED BRIEFING

This notice and testimony is respectfully brought pursuant to 28 U.S. Code § 1746.

I, Jeffrey Ryan Fenton, declare under penalty of perjury as follows:

1.      I am the Plaintiff-Appellant in this appeal. I proceed without counsel.

2.      I file this declaration and notice in support of my emergency motion for stay, extension, panel review, and structured threshold relief. I am not abandoning this appeal. I am asking the Court to prevent default, forfeiture, and unfair merits briefing while unresolved threshold issues remain outstanding.

---

[1]  This lawsuit was originally filed on October 13, 2023, in the United States District Court for the Western District of Michigan (hereinafter "MIWD") as case no. 1:23-cv-01097. On October 25, 2024, MIWD transferred this lawsuit as ordered in ECF 127 to the United States District Court for the Middle District of Tennessee (hereinafter "TNMD") as case no. 3:24-cv-01282. The language used in the file stamps of each page filed is slightly different between the two courts. MIWD uses the term "ECF No." (which I abbreviate as "ECF"), while in place of that, TNMD uses the term "Document" (which I abbreviate as "DOC"). Both courts use the term "PageID" (which I abbreviate as "PID"). Citations to the court record in this lawsuit will be notated without the case name or number, using the starting DOC/ECF number, followed by both the beginning and ending PID. The Notice of Electronic Filing for this transfer is recorded in TNMD DOC 131, at which point the DOC/ECF number from MIWD was retained and continued, but the PID was reset after DOC 130, PID 5727, to restart at zero.

3.     This appeal is not procedurally ready for fair merits briefing. Unresolved threshold issues include access, ADA accommodation, caption correction, service disputes, public access, sealed and redacted records, digital-media exhibits, record transmission, truth-certification issues, and the district court's no-good-faith certification.

4.     The present posture is fundamentally unfair because the district court dismissed the case wholesale before fairly resolving those threshold matters. That left me required to brief the entire case on appeal while the record, caption, access conditions, and service posture remain unresolved or mischaracterized.

5.     I placed ADA and access limitations in the record from the first day this federal case was filed. My original filing included my Tennessee ADA modification request for temporary use in this federal case, ECF 1-38, PID 2032-2045. That request sought procedural and technical flexibility, additional time, electronic communications, patience, and accommodations for OCPD, ADHD, anxiety, Non-24 sleep disorder, poverty, and forced geographic distance from court.

6.     My mother's declaration was also filed with the original complaint. It described my disability-related legal-writing burden, inability to efficiently multitask substantial concurrent projects, tasks, filings, the need to restart after interruptions, all-night legal work, and overwhelm. ECF 1-2, PID 49-53.

7.     Five days after filing the complaint, I filed my Pro Se Application for Electronic Filing and Service, ECF 5, PID 2094-2095. That request was not a convenience request. It was part of the access structure I needed because of my disabilities, poverty, and forced geographic distance from court.

8.    I have repeatedly informed the courts that fourteen-day response periods are not meaningfully accessible for substantial filings, at least not for me. Because of my disabilities, pro se status, poverty, record volume, lack of ECF access, and the number of unresolved threshold issues, fourteen days may be consumed merely determining what must be filed before I can research, draft, revise, cite, format, and file a proper response.

9.    This is central to why my objections and requests for relief are late. I did not disregard the Court. I repeatedly tried to explain that my disability-related limitations and the court-created unresolved posture make compressed deadlines functionally inaccessible.

10.    Each time the court refuses to apply the truth in my pleadings to the matters before it, or refuses to clarify which facts, filings, issues, or threshold requests matter, the court substantially increases my burden and pushes justice further beyond my reach.

11.    My filings have repeatedly preserved access, service, and record-correction issues, including but not limited to ECF 1-38, ECF 1-2, ECF 5, ECF 16, ECF 17, ECF 60, ECF 61, ECF 62, ECF 70, ECF 71, ECF 72, ECF 92, ECF 109, ECF 110, ECF 111, MIWD ECF 139-1, ECF 140-1, ECF 141-1, and TNMD DOC 177, DOC 197, DOC 207, DOC 212, DOC 216, DOC 222, DOC 223, DOC 224, and DOC 238 through 238-3.

12.    These issues were not late-created after dismissal. They began with the original complaint and continued throughout the case.

### *PRO SE* LITIGANT – MERITS RULE OVER TECHNICALITIES

13.    I am acting in a *pro se*[2] capacity in this lawsuit by necessity and entitled to a liberal reading and less stringent standards since my filings have been prepared without the assistance of

---

[2]    DOC 1-35, PID 1960

counsel.  See *Haines v. Kerner,* 404 U.S. 519, 92 S. Ct. 594 (1972).

## QUALIFIED AMERICAN WITH DISABILITIES ACT LITIGANT

14.     I am a qualified ADA party with disabilities affecting my communication and cognitive functions, which make research for and drafting of legal pleadings exceptionally slow and challenging.

15.     I request any accommodations the court can provide to help me fully participate in, be protected by, and receive justice through the federal judiciary as would a party without these disabilities. My ADA and access requests have always sought judgments based on actual law, truth, and record evidence, not the technical manipulation of words, procedural traps, or whether I can cite and argue law better than trained attorneys.

16.     I suffer from several cognitive disabilities: Obsessive-Compulsive Personality Disorder (OCPD) DSM-5 301.4 (F60.5), Generalized Anxiety Disorder (GAD) DSM-5 300.02 (F4L1), Attention-Deficit Hyperactivity Disorder (ADHD) DSM-5 314.01 (F90.2), Circadian Rhythm Sleep Disorder (CRSD) Non-24-Hour Sleep-Wake Disorder (Non-24) DSM-5 307.45 (G47.24).  Letters from my doctors[3] and a declaration[4] regarding my disabilities are on file in this federal lawsuit.  Medications I take regularly can only control these afflictions, not cure them.

17.     I previously filed caption-correction materials that appear in DOC 24, pages 34-35, including an official corrected Court of Appeals caption. I did not intend those materials to be treated as part of the motion later reduced by the Court to an "abeyance" request. They were separate case-opening or caption-correction materials submitted at the same general time and apparently docketed together by the Clerk.

---

[3]     DOC 1-38, PID 2032-2045 | https://rico.jefffenton.com/evidence/2020-07-08_tnsc-coa-ada-request-for-modification.pdf

[4]     DOC 32, PID 3296-3309 | https://rico.jefffenton.com/evidence/fenton-declaration-of-disabilities.pdf

18.     The correction remains unresolved. It includes not only party names, but whether parties are sued individually, officially, or as private actors with no official capacity.

19.     The continuing caption defect prejudices me because the docket continues to present the case in a narrowed and inaccurate manner even though I already submitted corrected caption materials.

20.     I also seek correction of the false threshold framing that treated this case as if it involved scattered or decentralized party geography, Maryland defendants, or address confusion that justified prejudicial procedural treatment.

21.     There were never Maryland defendants in the actual party structure. The issue came from leftover address-template remnants and correctable address information in the original complaint, not from false party identity, bad faith, or an implausible party structure.

22.     I told court staff when filing that some addresses were incomplete, unknown, or required correction. I did not realize that some South Dartmouth, Massachusetts template remnants remained. I did not bring summonses for service on the filing day because I understood that I had time to amend as a matter of right before service, and to correct the complaint and summons information before any defendant had to respond. I intended from the beginning to file my First Amended Complaint before service.

23.     The repeated address problem should have been treated as a correctable service, summons, caption, or address issue. It should not have been used to create an implication that the case was frivolous, scattered, implausible, deceptive, or improperly pleaded.

24.     After reading Magistrate Judge Kent's R&R and District Judge Maloney's subsequent order in ECF 31, I reasonably believed the immediate danger was that the Court might

characterize my case as frivolous, implausible, or insufficiently substantiated. I therefore worked to build a sworn evidentiary record, including large declarations and evidence, to show that the facts were not frivolous. That is also why my mother filed a substantial declaration: to help substantiate the record facts and show that this was not a frivolous lawsuit.

25. Judge Kent assumed the worst of my intentions in nearly all matters despite substantial sworn testimony, filings, and record materials attempting to correct him and clarify my posture. That forced me to keep repeating and expanding my pleadings in an effort to be heard, not because I refused to be concise, but because the court continued taking detrimental action while failing to apply my sworn testimony and evidence to the case.

26. During the first year of this case, I was forced to defend myself primarily against court-created threshold barriers and efforts to preemptively dismiss my lawsuit, instead of reaching the ordinary posture where I could directly address the merits of each actor's arguments. The central fight has been for access, correction, fair process, and truthful treatment of the record before any fair merits briefing could occur.

27. My lawsuit is not frivolous, elective, retaliatory, or profit-seeking. It concerns catastrophic property loss, deprivation of resources necessary to sustain life, denial of due process, federal jurisdiction over bankruptcy and property issues, court access, disability accommodations, and misconduct affecting the integrity of judicial proceedings both in state and federal courts.

28. This case was always central to the damages I experienced while living in Middle Tennessee. I lived in Middle Tennessee for approximately twenty-five years as a peaceful, hard-working person. I was not forced out because I was a social nuisance, an undesirable neighbor, or a danger to the community. I was never arrested and did not receive even one traffic citation during

those twenty-five years. I did not voluntarily leave Tennessee either; I loved it there and had planned for decades to spend the rest of my life in Tennessee. I was forced out of my home, support systems, healthcare, property base, and Tennessee life by the events and misconduct described in this case, with almost no notice, before discovery even began in my purported "divorce."

29.     Even more disturbingly, I lost my home under false and malicious pretenses and fraudulent orders from a state court that lacked jurisdiction, while I was denied ADA accommodations and any honest and fair due process. The judge and opposing counsel had a relationship I later learned was publicly controversial in Williamson County, Tennessee, and they completely failed or refused to disclose that relationship to me.

30.     Afterward, while performing substantial research in an effort to understand what I had experienced and why, I found multiple media articles showing that Judge Binkley and Attorney Story had repeatedly been exposed by the media, with public outcry about their apparent conflicts of interest when appearing in the same court together. Those reports further showed that they were locally known and ill-reputed for being partying[5] and vacationing[6] buddies, as well as close family friends for decades.

31.     They wrongfully ordered the deprivation of my home without any opportunity to save my property, or at the very least to mitigate my losses, before the forced deprivation of my critically needed, constitutionally protected, property interests. Moreover, this wrongful eviction and deprivation of my home was executed and enforced by four armed deputies from the Williamson County Sheriff's Office, based on a court order over property matters for which the state court was specifically prohibited from exercising jurisdiction because the federal bankruptcy

---

[5]   ECF 44, PID 3740-3741 | https://rico.fentonvstory.com/evidence/2018-09-24_tenn-binkley-defends-partying-with-lawyers.pdf
[6]   ECF 43, PID 3726-3729 | https://rico.fentonvstory.com/evidence/2018-08-30_tennessean-story-hosts-vacations-with-judges.pdf

court had both original and exclusive jurisdiction over the property once my former wife and her counsel listed it in her secret bankruptcy petition (which occurred 39 days before any action was filed in state court) and specifically asked the bankruptcy court to sell it. That occurred without notice to me[7] or any opportunity to save my property, despite my status as a lawfully deeded co-owner as tenants by the entirety[8], and despite tenants/roommates who were also denied notice and participation in the bankruptcy court by special request of my former wife's counsel in section 9 of her bankruptcy petition, in nonstandard plan provisions.

32.     Even if the state court had lawful jurisdiction to hear matters related to the deprivation of my property, which it did not, that deprivation could not be honestly and ethically ordered without meaningful and substantive due process, which I never received.

33.     The property at issue was my home where I lived, my life savings, my labor, my improvements, and both my premarital[9] and marital retirement investments. The home was forced to auction for $324,359 on October 30, 2019, resold four months later for $540,000 on February 14, 2020, and recently resold for $925,000[10] on April 14, 2026, as shown by the 2026 resale notice submitted with this declaration. I received nothing[11] from the forced loss of that home and property base, while we invested more money and labor into improving the core systems of that property[12], than any other owner since, based on what I can see in the resale documents available to me.

---

[7]     ECF 52, PID 4208-4210 | https://rico.fentonvstory.com/evidence/2022-03-15_ustp-bk-fraud-referral-confirmed-no-notice.pdf

[8]     ECF 19-1, PID 2620-2623 | https://rico.fentonvstory.com/evidence/2011-04-29_fenton-marital-residence-tenancy-by-entirety.pdf

[9]     ECF 42, PID 3631-3657 | https://rico.fentonvstory.com/evidence/2011-04-29_1986-sunnyside-premarital-assets-invested.pdf

[10]    https://rico.fentonvstory.com/evidence/2026-04-14_1986-sunnyside-drive-brentwood-tn-resale.pdf

[11]    ECF 48, PID 4002-4003 | https://rico.fentonvstory.com/evidence/2019-10-10_chancery-no-proceeds-from-forced-auction.pdf

[12]    ECF 42, PID 3665-3676 | https://rico.fentonvstory.com/evidence/1986-sunnyside-property-improvement-highlights.pdf

34. Upon information and belief, more was stolen from me almost instantly, in the loss of my home, than I can realistically expect to earn, with my education and vocational history, throughout the rest of my life combined.

35. I have primarily been a blue-collar worker most of my life. I have only a high-school education. When I was younger, I often held two and even three jobs at a time. Even so, I did the best I could with what I had and built a life of substance and comfort while owning a home in Williamson County, Tennessee, the wealthiest county in the state and one of the wealthiest counties per capita in the nation.

36. Only once in my life have I earned more than $50,000 in a single tax year from any job I have held, and even that one year was still less than $60,000. I made a lot with a little, and then the property, savings, labor, and stability I built were taken from me anyway. I never needed extended-family or government assistance to survive until I was ambushed by dishonest and unethical bar actors in Williamson County.

37. The consequences have never been abstract. Since 2019, I have lacked basic financial independence, including the ability to purchase ordinary necessities such as food, gas, insurance, medications, counseling, psychiatry, toiletries, soap, shampoo, toothpaste, toilet paper, shelter, utilities, and other life-sustaining needs without family or public assistance. Medicaid and food assistance help me survive now, but I never needed any of that before I was destroyed by the events described in this case.

38. The court knows, or has been repeatedly notified, of the significance of these events and the ramifications they had on my life. Unfortunately, the court has refused to meaningfully

acknowledge them before treating my case as implausible, devoid of merit, or not taken in good faith.

39.     This is why I object so strongly to any framing of this case as frivolous, geographically scattered, or elective. The case concerns critical needs and the sustainability of life after resources were taken without proper process, proper law, proper duty, meaningful hearing, or lawful adjudication. My property was taken without considering the catastrophic impact that would have upon my life and my basic ability to sustain myself afterward.

40.     My Rule 59 filing, including DOC 238 through DOC 238-3, was not merely my disagreement with dismissal. It raised the substance of manifest injustice, clear legal error, access denial, false record framing, fraud on the court, disability interference, and unresolved threshold issues.

41.     I did not know the technical labels "manifest injustice" and "clear legal error" when I first tried to explain these issues. But I tried my best, as a pro se litigant, to explain precisely those same concepts in substance: that the court's orders mischaracterized the record, ignored preserved facts and access barriers, and produced an unjust dismissal posture which was frankly unfair and dishonest.

42.     The no-good-faith conclusion in DOC 42-1 is wrong, premature, and unsupported by any fair engagement with the record. These issues are nonfrivolous, record-based, and necessary for fair appellate review.

43.     I have not pursued this case for money. I have pursued it out of principle, at tremendous physical, financial, emotional, and family expense, because I am human and people are not allowed to hurt other people so quickly, carelessly, and catastrophically without meaningful

due process. The reality is that my life has been unfairly destroyed (since the end of 2019), therefore at the very least something must be learned from my experience to help ensure this does not needlessly happen again to others.

44. My declaration explaining my pursuit of justice and my notice to all bar members are examples of filings I made to clarify that justice *is* my pursuit. Anyone standing in the way of honest and ethical treatment is not acting in the interests of justice, regardless of their job title or role. I do not understand how any honest and impartial review of my efforts can treat them as anything less than exhibiting exceptionally good faith against nearly impossible odds, at no fault of my own.

45. Several Tennessee state actors or represented parties received notice, service attempts, public docket access, counsel involvement, or state-connected involvement, yet continued to dispute whether service was good enough for them. I was attempting service while the case was in Michigan and understood Michigan service rules to require notice rather than to create a technical loophole for evading justice.

46. Three bankruptcy-related actors remain outstanding or unresolved, despite having been repeatedly served at substantial expense. These include one law firm and two attorneys. I moved the trial court to compel their appearance, but the court failed to rule on more than a dozen outstanding motions I filed, primarily seeking court access, honesty, and fairness safeguards to compel all involved to file honest pleadings while swearing they actually conform to F.R.Civ.P. 11(b), as I have repeatedly explained in filings. Without those safeguards, I have been the only party carrying the burden of filing honestly while swearing to the accuracy and good faith of my

filings. Yet I am the one the court claims lacks good faith, which I believe could only be true by changing the definition away from the substance of its publicly recognizable meaning.

47. The bankruptcy actors are important because ordinary immunity defenses may not apply to them in the same way, federal law recognizes circumstances where a bankruptcy trustee may be sued for acts or transactions in carrying on estate business, and the bankruptcy/property sequence is one of the clearest examples of criminal or structurally improper conduct in this case. This is why it remains critical for the Court to address these service and participation issues after everything I have done to serve the trustee and related actors.

48. The service and nonappearance issues should not be blurred together. The Tennessee state-actor service disputes concern notice, counsel involvement, and technical objections despite actual awareness. The bankruptcy-actor issues concern nonappearance, lack of compelled participation, and unresolved merits and accountability issues tied to the bankruptcy/property sequence.

49. What the Court reduced to a "motion for abeyance" was not merely an abeyance request. It was primarily a notice to the Court about substantial misconduct I had been documenting in the record all along. The request for abeyance to file ethical and criminal complaints was secondary to ensuring that what had transpired to date was squarely before the Court and not detached from what led to the dismissal and subsequent appeal. It was titled and intended as a "motion for continuance to prepare criminal and ethics filings, with notice of judicial and professional misconduct and failure to enforce the codes of conduct as required to maintain a fair and impartial tribunal." Continuing the chain of custody of prior proceedings was the primary purpose; obtaining time and access to correct the record was secondary.

50.     The Clerk's or Court's responses substantially mischaracterized the record to date. The Court stated that no briefing schedule would issue until IFP was granted or the filing fee was paid, yet treated the request as if I had failed to show grounds. The Court refused to consider the record until IFP or payment posture was resolved, and that delay was caused by the Court's threshold posture, not by me.

51.     Had I known the Court would narrow my filing as it did, I would have filed separate papers to protect each request. I was filing, while I still could, exactly what I knew I needed before proceeding. Either I must be allowed to raise access, misconduct, caption, service, and record issues in advance, or everyone must wait while I catch up after the Court leaves those issues unresolved. I did everything reasonably within my power to lead with what I needed, instead of ending up stuck while the Court ignored my filings until I was stuck and then demanded performance.

52.     The filing was heavily fortified with citations and proofs to show good cause and the need for the Court to act before merits briefing. The Court and Clerk failed to sufficiently engage the record before treating it as a simple abeyance request or as unsupported.

53.     I have acted diligently and in good faith. I recently submitted judicial-conduct materials to the Circuit Executive through the proper administrative channel. I state that to show diligence, time burden, and good cause. I do not ask this Court to adjudicate the substance of those administrative matters in this emergency filing.

54.     I did not negligently choose to ignore the appellant brief. I had been working on judicial-conduct and misconduct-preservation materials for months and hoped to complete that

preservation work before the Court ruled on IFP. When IFP was denied and the briefing schedule was later issued, everything accelerated.

55.     As the Court did not promptly resolve the threshold access and readiness issues, I also shifted substantial focus to misconduct reporting as a lawful way to continue seeking a remedy while waiting for the Court to proceed.

56.     I chose to finish months of rights-preservation work rather than attempt to defend the whole case in a single appellant brief under an unresolved omnibus dismissal posture, inaccurate caption, unresolved access conditions, unresolved service issues, and unresolved public-record issues.

57.     I have paid filing fees twice, but the burden remains entirely on me to keep defending access, service, procedure, truth-certification, record correction, misconduct preservation, and merits preservation, while no defendant has filed an honest sworn answer on the merits.

58.     A fixed short extension alone will not solve the problem if the same threshold defects remain unresolved. I respectfully need the Court to stay or structure briefing until the record is corrected, threshold access and service issues are reviewed, the caption is corrected, and the issues for merits briefing are meaningfully narrowed.

59.     The ordinary combined page or word limit does not solve that problem. Without narrowing, I am forced to address every possible dismissal rationale, every service dispute, every access defect, every caption issue, every defendant argument, every sealed-record issue, every redacted-record issue, every digital-media issue, every IFP/no-good-faith issue, and every threshold issue at once.

60.     That posture is especially harmful given my disability-related limitations. It forces panic-driven overinclusion and makes it impossible for me to determine what issue the Court expects me to brief first.

61.     I do not remember whether I previously requested "one substantive issue at a time" in exactly those words. I request it now because my disabilities, the size of the record, the court's failure to credit or clarify the sufficiency of any pleading to date, and the need to prevent process from defeating truth make staged issue-by-issue briefing the clearest accessible path forward.

62.     I respectfully ask the Court to stay or structure briefing so that the Court first narrows the operative issues and permits staged review or one-issue-at-a-time briefing where necessary. I request this structure as a disability-related accommodation and as a practical case-management measure.

63.     I also need clarification regarding digital-media exhibits filed in MIWD and TNMD. I do not know whether digital-media exhibits, audio files, video files, DVD exhibits, sealed materials, redacted materials, or nonstandard exhibits automatically transmit to the Sixth Circuit as part of the appellate record.

64.     I need access to everything filed to date in both MIWD and TNMD because none of it has been fairly adjudicated. If digital media, sealed filings, redacted filings, or paper-only materials require special designation, forwarding, transmission, or supplementation, I respectfully request instruction and relief so that the appellate record is complete before merits briefing.

65.     The structural history of this case also requires threshold review before ordinary merits briefing. This case was filed in MIWD, transferred to TNMD, all TNMD district and magistrate judges recused, the Chief Judge of this Court designated an outside judge, and the case

was then dismissed as implausible without a hearing, without access relief, without service clarification, without caption correction, and without threshold truth-testing.

66. That sequence creates public-confidence concerns. The case was treated as institutionally sensitive when transfer, recusal, and designation were necessary, but then treated as implausible when I needed access, accommodation, hearing, service assistance, record correction, and fair review.

67. It appears to me that the courts have shown little appetite for confronting the judicial misconduct and corruption issues implicated by this record. I believe this is also why no attorney has been willing to take the case: it implicates powerful actors and presents serious vocational risk. The courts cannot allow people to be harmed so badly that the truth becomes honestly implausible and then treat that implausibility as a reason no real remedy is within reach.

68. After the last service, access, and threshold filings, dismissal was no longer about what I failed to do. It was about what the court refused to do.

69. I respectfully request panel review, correction of the caption, review of the no-good-faith / IFP issue, review of the abeyance/access ruling, clarification and completion of the appellate record, protection of digital-media and sealed exhibits, active case management, staged pleadings or staged briefing, reasonable page-count relief or issue-specific page limits, narrowing of the record and issues for fair merits briefing, striking or disregarding frivolous, evasive, unsupported, or bad-faith defense pleadings, and clarification of which arguments, if any, the Court believes I have not already sufficiently answered, preserved, or rebutted in my pleadings, so that I may understand what remains genuinely outstanding and focus my limited time, disability-affected

capacity, and page count on the matters the Court actually needs addressed before any dismissal or default.

70.    I further request that the Court treat this filing as an emergency notice that ordinary briefing cannot fairly begin until threshold access, record, caption, service, and issue-structuring problems are addressed.

## CERTIFICATION AND DECLARATION

By signing below, I, Jeffrey Ryan Fenton, certify that this document has been executed in good faith, in the honest pursuit of justice, and in strict compliance with F.R.Civ.P. 11(b).

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct, except as to matters herein stated to be on information and belief, and as to such matters, I certify as aforesaid that I verily believe the same to be true.

I expressly reserve all rights, objections, and arguments concerning venue, transfer, jurisdiction, forum access, preservation of claims, and all available remedies.

Executed on June 17, 2026.

JEFFREY RYAN FENTON
Pro Se Appellant/Plaintiff
Sixth Circuit No. 25-5592
P.O. Box 400
Linden, MI, 48451-0400
Notice@FentonvStory.com
https://FentonvStory.com
(P) 810.735.7456
#TNinjustice
#iAMhuman

‹ Back to search     Zillow    ♡ Save   ⬆ Share   ∘∘∘ More







See all 36 photos

# $925,000
1986 Sunny Side Dr, Brentwood, TN 37027

**4** beds    **3** baths    **2,640** sqft

| | | |
|---|---|---|
| 🏢 Single Family Residence, Residential | 🔨 Built in 1977 | ⚖ 1.47 Acres Lot |
| ⌂ $927,400 Zestimate® | 📊 $350/sqft | 🌿 $3,564 Estimated rent |

## Home value

| Zestimate® | Estimated sales range | Rent Zestimate® |
|---|---|---|
| **$927,400** | **$881,000 - $974,000** | **$3,564/mo** |

## Zestimate® history   Table view
**+105% in last 10 years**

| ⌂ Home values | Ⓢ Rent Zestimate | 📝 Tax paid |
|---|---|---|



$928.6K

$1M

$800K

$600K

$400K

2018  2020  2022  2024  2026

**Table view**

# Market insights for 37027



**Neutral market** (i)
**55**/100
Market index

Buyers market          Sellers market

**Explore selling options**

**-0.6%**
1-year price forecast

**13 days**
Median days to pending

**144**
New listings in the last 30 days

**358**
Active listings for sale

# Listing agent matches for 37027

🏆 These agent matches are featured based on their recent sales in this area.



**Sherry Bowman**          5.0 ★ (140)
Keller Williams Realty
**14** recent sales
**6** sales near you

**Katina Thornton**          4.9 ★ (10)
Keller Williams Realty
**13** recent sales
**5** sales near you

Estimated net proceeds
**$109,697**

Est. selling price of your home          $927,400

| Est. remaining mortgage ⓘ | $736,890 |

Est. prep & repair costs ⓘ $6,000 ⌄

Est. closing costs ⓘ $74,813 ⌄

**Est. total selling costs (9%)** **$80,813**

All calculations are estimates and provided for informational purposes only. Actual amounts may vary.

# Comparable homes

These are recently sold homes with similar features to this home, such as bedrooms, bathrooms, location, and square footage.



**$1,150,000**
**4** bd | **3** ba | **2.4k** sqft
619 Forest Park Dr,...
🟡 Sold

**$1,300,000**
**4** bd | **3** ba | **2.9k** sqft
1713 Pinetree Ln,...
🟡 Sold

**$1,300,000**
**3** bd | **3** ba | **2.5k** sqft
1969 Sunny Side Dr,...
🟡 Sold

**$930,250**
**4** bd | **4** ba | **2.7k** sqft
1017 Boxwood Dr,...
🟡 Sold

MLS ID #3183785, Erin Krueger. RealTracs MLS as distributed by MLS GRID

MLS ID #2992348, Monica Belanger. RealTracs MLS as distributed by MLS GRID

MLS ID #2929634, Elaine Redfern. RealTracs MLS as distributed by MLS GRID



# Comparative value

Here's how this home's value estimate compares to similar homes nearby.



**4**      **5**      **1**      **3**

**$900k**      **$1.13m**      **$1.35m**

# Owner options



**List your home for rent**

Find your next renter with Zillow Rental Manager. Plus, with online applications, you can quickly screen prospective tenants – for free.

**Learn more**

**$3,564**/mo
Rent Zestimate®



**Refinance and save**

Refinancing to a lower rate could help reduce your monthly payments and save thousands over the life of the loan.

**See today's rates**

**$5,228**/mo
Est. payment

# Explore your selling options



**Work with a Zillow partner agent**

Leverage their expertise and Zillow's premium Showcase listings to get your home seen by more buyers.

**Get started**



**List with your own agent**

Get your home in front of millions of buyers by listing it on Zillow.

**Learn how to do it**



**Sell it yourself**

Take full control of how buyers see your home on Zillow by listing For Sale by Owner (FSBO).

**List your home**

# What's special

Set on 1.47 private wooded acres, this beautifully renovated one-level brick ranch offers timeless charm paired with thoughtful updates in a coveted location. Featuring 4 bedrooms and 2.5 updated baths, the home offers two living spaces with additional space for dining.

Inside, you'll find fresh interior and exterior paint, sand-and-finish hardwood floors, updated lighting, and a warm fireplace anchoring the living space. The updated kitchen features granite countertops, a gas cooktop, stainless double ovens, and abundant natural light.

https://rico.fentonvstory.com/evidence/2026-04-14_1986-sunnyside-drive-brentwood-tn-resale.pdf      6th Cir. Case 25-5592 (FENTON v. STORY et al.)

An oversized bonus room with vaulted ceilings and a shiplap accent wall provides flexible living space perfect for a media room, playroom, home office, or whatever you may need. Step outside to a peaceful deck overlooking the wooded backyard, offering exceptional privacy and room to unwind.

Additional highlights include a 2-car garage, generous living spaces, and mature trees that create a serene setting rarely found with such convenient access.

Ideally located with easy access to Brentwood, Cool Springs, Green Hills, and Hillsboro Road, this home is zoned for highly sought-after Grassland / Franklin schools, making it a rare opportunity to enjoy classic ranch living in a truly prime setting.

∧ Hide

Zillow last checked: 3 hours ago
Listing updated: April 14, 2026 at 02:31pm

Listing Provided by: Jamie Hawkins Casey 205-410-5484, Compass RE
Bought with:   Erika Kurre, 349177
               Benchmark Realty, LLC

Source: RealTracs MLS as distributed by MLS GRID,  MLS#: 3152701  realtracs.

---

# Facts & features

## Interior

### Bedrooms & bathrooms

- Bedrooms: 4
- Bathrooms: 3
- Full bathrooms: 2
- 1/2 bathrooms: 1
- Main level bedrooms: 4

### Heating

- Central

### Cooling

- Central Air

### Appliances

- Included: Electric Oven, Electric Range, Dishwasher, Disposal, Refrigerator, Stainless Steel Appliance(s)

### Features

- Flooring: Wood, Tile
- Basement: Crawl Space
- Number of fireplaces: 1
- Fireplace features: Wood Burning

### Interior area

- Total structure area: 2,640
- Total interior livable area: 2,640 sqft
- Finished area above ground: 2,640

# Property

## Parking
- Total spaces: 2
- Parking features: Garage Faces Side
- Garage spaces: 2

## Features
- Levels: One
- Stories: 1
- Patio & porch: Deck

## Lot
- Size: 1.47 Acres
- Dimensions: 150 × 434
- Features: Wooded
- Topography: Wooded

## Details
- Parcel number: 094013J A 03500 00007013N
- Special conditions: Standard

# Construction

## Type & style
- Home type: SingleFamily
- Property subtype: Single Family Residence, Residential

## Materials
- Brick

## Condition
- New construction: No
- Year built: 1977

# Utilities & green energy

- Sewer: Septic Tank
- Water: Public
- Utilities for property: Water Available

# Community & neighborhood

## Location
- Region: Brentwood
- Subdivision: Sunnyside Est Sec 3

∧ **Hide**

## Services availability

AT&T **fiber** Upgrade your Wi-Fi experience ↗

# Price history

| Date | Event | Price |
|---|---|---|
| 4/14/2026 | Sold | $925,000 +0%  $350/sqft |

**2026 Market Resale of Home**

Source: realtracs. RealTracs MLS as distributed by MLS GRID #3152701 Report

| 3/22/2026 | Contingent | $924,900  $350/sqft |

Source: realtracs. RealTracs MLS as distributed by MLS GRID #3152701 Report

| 3/20/2026 | Listed for sale | $924,900 +71.3%  $350/sqft |

Source: realtracs. RealTracs MLS as distributed by MLS GRID #3152701 Report

| 2/14/2020 | Sold | $540,000 -10%  $205/sqft |

**Auction Investor Resold 4-Months Later on the Market for +$200,000**

Source: realtracs. RealTracs MLS as distributed by MLS GRID #2103371 Report

| 1/13/2020 | Price change | $599,990 -3.2%  $227/sqft |

Source: Benchmark Realty, LLC #2103371 Report

| 12/27/2019 | Price change | $619,900 -3.1%  $235/sqft |

Source: Benchmark Realty, LLC #2103371 Report

| 12/5/2019 | Listed for sale | $639,900 +97.3%  $242/sqft |

**Our Family Instantly Lost $250,000+ the Day this Forced Auction Closed**

Source: Benchmark Realty, LLC #2103371 Report

| 10/30/2019 | Sold | $324,359 -7.3%  $123/sqft |

**Fenton Forced Auction After Investing Approx. $200,000 on Improvements Along with Seven Years worth of Labor**

Source: Public Record

| 5/12/2011 | Sold | $350,000 -2.8%  $133/sqft |

**Fenton Family Purchase Home Needed Massive Core Improvements for Health & Safety**

Source: Public Record

| 10/1/2010 | Listed for sale | $360,000 +42.3%  $136/sqft |

Source: Zeitlin & Co., Realtors #1220084 Report

Source: Zeitlin & Co., Realtors #1220084   Report

| 7/13/2005 | Sold | $253,000 +11% |
| | | $96/sqft |

Source: Public Record   Report

| 8/10/1998 | Sold | $228,000 |
| | | $86/sqft |

Source: Public Record   Report

∧ Hide

# Public tax history

| Year | Property taxes | Tax assessment |
| --- | --- | --- |
| 2025 | $2,618 -2% | $201,375 +41.7% |
| 2024 | $2,672 | $142,125 |
| 2023 | $2,672 | $142,125 |
| 2022 | $2,672 | $142,125 |
| 2021 | $2,672 +24.5% | $142,125 +46.9% |
| 2020 | $2,147 | $96,725 |
| 2019 | $2,147 +3.2% | $96,725 |
| 2018 | $2,080 | $96,725 |
| 2017 | $2,080 | $96,725 |
| 2016 | -- | $96,725 +23.7% |
| 2015 | -- | $78,175 |
| 2014 | -- | $78,175 |
| 2013 | -- | $78,175 |
| 2012 | -- | $78,175 |
| 2011 | -- | $78,175 +23.5% |

| 2007 | $1,462 | $63,278 |
| 2006 | $1,462 +9.8% | $63,278 +35% |
| 2005 | $1,331 | $46,873 |
| 2004 | $1,331 | $46,873 |
| 2002 | $1,331 | $46,873 |
| 2001 | -- | $46,873 -75% |
| 2000 | -- | $187,493 |

∧ **Hide**

Find assessor info on the county website

## Neighborhood: 37027



## Getting around

Walk Score®
**0** / 100
Car-Dependent

Bike Score®
**2** / 100
Somewhat Bikeable

# Nearby homes

 



**$1,376,700**

-- bd | 2 ba | 80 sqft

1980 Sunny Side Dr,...

● Off Market



**$966,100**

4 bd | 3 ba | 3.1k sqft

1992 Sunny Side Dr,...

● Off Market



**$1,201,100**

4 bd | 3 ba | 3.9k sqft

1976 Sunny Side Dr,...

● Off Market



**$1,148,900**

-- bd | 4 ba | 2.1k sqft

1998 Sunny Side Dr,...

● Off Market

# Nearby schools

## GreatSchools rating


**6**/10   **Grassland Elementary School**
Grades: **K-5**  Distance: **0.8 mi**


**8**/10   **Grassland Middle School**
Grades: **6-8**  Distance: **0.9 mi**


**10**/10   **Franklin High School**
Grades: **9-12**  Distance: **5.5 mi**

⌄ **Show more**

## Schools provided by the listing agent

Elementary: **Grassland Elementary**
Middle: **Grassland Middle School**
High: **Franklin High School**

Source: RealTracs MLS as distributed by MLS GRID. This data may not be complete. We recommend contacting the local school district to confirm school assignments for this home.

# Local legal protections

⚖ Current legal protections at the state level in Tennessee

⌄ **Show more**

https://rico.fentonvstory.com/evidence/2026-04-14_1986-sunnyside-drive-brentwood-tn-resale.pdf          6th Cir. Case 25-5592 (FENTON v. STORY et al.)

# Get a cash offer in 3 minutes

Find out how much your home could sell for in as little as 3 minutes with a no-obligation cash offer.

**Estimated market value**

**$927,400**

What is this number?

**Unlock your offer**



Based on information submitted to the MLS GRID as of 2026-06-12 14:18:18 PDT. All data is obtained from various sources and may not have been verified by broker or MLS GRID. Supplied Open House Information is subject to change without notice. All information should be independently reviewed and verified for accuracy. Properties may or may not be listed by the office/agent presenting the information. Some IDX listings have been excluded from this website. Click here for more information



**Prep for your move**
Discover tools for easier packing & moving

Ad

Learn more

Zillow

Tennessee · Williamson County · Brentwood · 37027 · **1986 Sunny Side Dr**

## Nearby cities

Arrington Real estate

College Grove Real estate

Franklin Real estate

Brentwood Real estate

Fairview Real estate

Nolensville Real estate

⌄ **Show more**

About

Zestimates

News

Research

Careers

Applicant Privacy Notice

Help

Advertise

Fair Housing Guide

Advocacy

Terms of use

Privacy Notice

Ad Choices

Cookie Preference

Learn

AI

Mobile Apps

Do Not Sell or Share My Personal Information→

Zillow Group is committed to ensuring digital accessibility for individuals with disabilities. We are continuously working to improve the accessibility of our web experience for everyone, and we welcome feedback and accommodation requests. If you wish to report an issue or seek an accommodation, please let us know.

Affiliated Business Arrangement Disclosure

Zillow, Inc. holds real estate brokerage licenses in multiple states. Zillow (Canada), Inc. holds real estate brokerage licenses in multiple provinces. All mortgage lending products and information provided by Zillow Home Loans, LLC, NMLS #10287. NMLS Consumer Access Licensed Mortgage Banker, N.Y.S. Department of Financial Services 2600 Michelson Drive, Suite 1201, Irvine, CA 92612 | Equal Housing Lender | Licensing Information § 442-H New York Standard Operating Procedures § New York Fair Housing Notice TREC: Information about brokerage services, Consumer protection notice California DRE #1522444

Contact Zillow, Inc. Brokerage

For listings in Canada, the trademarks REALTOR®, REALTORS®, and the REALTOR® logo are controlled by The Canadian Real Estate Association (CREA) and identify real estate professionals who are members of CREA. The trademarks MLS®, Multiple Listing Service® and the associated logos are owned by CREA and identify the quality of services provided by real estate professionals who are members of CREA. Used under license.

 

     

© 2006-2026 Zillow



# CERTIFICATE OF SERVICE

I certify that on June 17, 2026, I submitted this declaration and notice, together with my my April 22, 2025 declaration filed in TNMD as DOC 238-3, concerning destruction, oppression, ADA interference, forced displacement, and litigation burden and the 2026 resale notice for 1986 Sunnyside Drive, Brentwood, Tennessee, to the United States Court of Appeals for the Sixth Circuit through the Court's designated pro se email filing address.

I served defendants and/or their counsel by email at the same time I emailed this filing to the Court, consistent with prior court-staff approval for email filing and service.

Most noticed email addresses were obtained directly from the "Attorney to be Noticed" section of the TNMD PACER docket because the Sixth Circuit docket does not display all counsel email addresses in the same usable manner.

To add, update, or remove an email address from this service and distribution list, please email notice@fentonvstory.com.

This declaration is being submitted after midnight pursuant to the leave requested in Plaintiff-Appellant's emergency motion filed shortly after midnight on June 17, 2026. Plaintiff-Appellant respectfully requests that the Court accept this supporting declaration as timely or grant leave for its filing for good cause.

I also maintain public notice pages at https://fentonvstory.com/notices/ and https://fentonvstory.com/defendant-notices/. Because of the emergency timing and access limitations, I respectfully request reasonable latitude to complete any supplemental email or website notice steps within a few days after filing.

# CERTIFICATION AND DECLARATION

By signing below, I, Jeffrey Ryan Fenton, certify that this document has been executed in good faith, in the honest pursuit of justice, and in strict compliance with F.R.Civ.P. 11(b).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, except as to matters herein stated to be on information and belief, and as to such matters, I certify as aforesaid that I verily believe the same to be true.

I expressly reserve all rights, objections, and arguments concerning venue, transfer, jurisdiction, forum access, preservation of claims, and all available remedies.

Executed on June 17, 2026.

JEFFREY RYAN FENTON
Pro Se Appellant/Plaintiff
Sixth Circuit No. 25-5592
P.O. Box 400
Linden, MI, 48451-0400
Notice@FentonvStory.com
https://FentonvStory.com
(P) 615.837.1300
#TNinjustice
#iAMhuman