# EXHIBIT S-2

## TNMD DOC 238-2 — FIRST AMENDMENT RIGHT-OF-ACCESS FILING AND INCLUDED SUPPORTING MATERIALS

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 9/27/2019

PLAINTIFF'S EXHIBIT
C

IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | | |
|---|---|---|---|
| IN RE: | ) | | |
| | ) | | |
| FAWN [redacted] FENTON | ) | CHAPTER | 13 |
| [redacted] | ) | CASE NO: | 19-02693 |
| BRENTWOOD, TN 37027 | ) | JUDGE | WALKER |
| SSN: XXX-XX-[redacted]65 | ) | | |
| | ) | | |
| DEBTOR | | | |

**ORDER GRANTING EXPEDITED MOTION TO SELL REAL ESTATE AND PERSONAL PROPERTY**

This matter came before the Court on September 25, 2019 upon the Debtor's Expedited Motion to Sell Real Estate and Personal Property with notice given to all parties pursuant to Local Rule 9075-1. There being no objections raised at the call of the docket, the Motion is found to be well taken and it is therefore ORDERED as follows:

Debtor shall be allowed to sell real property located at 1986 Sunnyside Drive, Brentwood, Tennessee and items of personal property remaining in the house at auction pursuant to an Order Granting Motion to Sell Marital Residence by Auction entered in the Chancery Court for Williamson County, Tennessee on August 6, 2019 . The Debtor will sell the real estate under Section 363(f)(3) subject to the liens of Bank of America, N.A. and Bancorp South. This transaction shall be conditioned on the Debtor providing the auction report to the Trustee once the sale has taken place. All net proceeds from the sale of the property shall be deposited into the Chancery Court Clerk's Office and placed in an interest bearing account on behalf of the parties pending further orders of the Chancery Court for Williamson County, Tennessee.

IT IS SO ORDERED.

*THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE.*

APPROVED FOR ENTRY:

***/s/ Alex Koval***

Alex Koval
ROTHSCHILD & AUSBROOKS, PLLC
Attorney for Debtor(s)
1222 16th Avenue South, Suite 12
Nashville, TN 37212-2926
(615) 242-3996 (telephone)
(615) 242-2003 (facsimile)
notice@rothschildbklaw.com

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under this title before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1990 AMENDMENT

Pub. L. 101–508, title III, §3007(a)(3), Nov. 5, 1990, 104 Stat. 1388–28, provided that: ''The amendments made by this subsection [amending this section and section 541 of this title] shall be effective upon date of enactment of this Act [Nov. 5, 1990].''

Pub. L. 101–508, title III, §3008, Nov. 5, 1990, 104 Stat. 1388–29, provided that the amendments made by subtitle A (§§3001–3008) of title III of Pub. L. 101–508, amending this section, sections 541 and 1328 of this title, and sections 1078, 1078–1, 1078–7, 1085, 1088, and 1091 of Title 20, Education, and provisions set out as a note under section 1078–1 of Title 20, were to cease to be effective Oct. 1, 1996, prior to repeal by Pub. L. 102–325, title XV, §1558, July 23, 1992, 106 Stat. 841.

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by section 257 of Pub. L. 99–554 effective 30 days after Oct. 27, 1986, but not applicable to cases commenced under this title before that date, see section 302(a), (c)(1) of Pub. L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

Amendment by section 283 of Pub. L. 99–554 effective 30 days after Oct. 27, 1986, see section 302(a) of Pub. L. 99–554.

Pub. L. 99–509, title V, §5001(b), Oct. 21, 1986, 100 Stat. 1912, provided that: ''The amendments made by subsection (a) of this section [amending this section] shall apply only to petitions filed under section 362 of title 11, United States Code, which are made after August 1, 1986.''

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

REPORT TO CONGRESSIONAL COMMITTEES

Pub. L. 99–509, title V, §5001(a), Oct. 21, 1986, 100 Stat. 1911, directed Secretary of Transportation and Secretary of Commerce, before July 1, 1989, to submit reports to Congress on the effects of amendments to 11 U.S.C. 362 by this subsection.

**§ 363. Use, sale, or lease of property**

(a) In this section, ''cash collateral'' means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

(b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, except that if the debtor in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell or lease personally identifiable information to any person unless—

(A) such sale or such lease is consistent with such policy; or

(B) after appointment of a consumer privacy ombudsman in accordance with section 332, and after notice and a hearing, the court approves such sale or such lease—

(i) giving due consideration to the facts, circumstances, and conditions of such sale or such lease; and

(ii) finding that no showing was made that such sale or such lease would violate applicable nonbankruptcy law.

(2) If notification is required under subsection (a) of section 7A of the Clayton Act in the case of a transaction under this subsection, then—

(A) notwithstanding subsection (a) of such section, the notification required by such subsection to be given by the debtor shall be given by the trustee; and

(B) notwithstanding subsection (b) of such section, the required waiting period shall end on the 15th day after the date of the receipt, by the Federal Trade Commission and the Assistant Attorney General in charge of the Antitrust Division of the Department of Justice, of the notification required under such subsection (a), unless such waiting period is extended—

(i) pursuant to subsection (e)(2) of such section, in the same manner as such subsection (e)(2) applies to a cash tender offer;

(ii) pursuant to subsection (g)(2) of such section; or

(iii) by the court after notice and a hearing.

(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

(3) Any hearing under paragraph (2)(B) of this subsection may be a preliminary hearing or may be consolidated with a hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor. If the hearing under paragraph (2)(B) of this subsection is a preliminary hearing, the court may authorize such use, sale, or lease only if there is

363(B)(1) I WAS DUE A NOTICE AND A HEARING BY THE TRUSTEE, SHORTLY AFTER MY EX-WIFE (SECRETLY) FILED FOR BANKRUPTCY. MY EX-WIFE HAD COMMITTED TO PAYING THE MORTGAGES AS THE VOLUNTARY PRIMARY BREADWINNER FOR OUR FAMILY SINCE 2011. I HAD NO ACCESS TO THE ACCOUNTS, THE STATEMENTS OR NOTICES. I HAD NO KNOWLEDGE, NOTICE, OR MEANS OF KNOWING THAT A SINGLE MORTGAGE PAYMENT WAS LATE, LET ALONE THAT SEVERAL WERE DEFAULTED UPON, AND OUR MUTUALLY INVESTED IN (CASH), PURCHASED, AND DEEDED PROPERTY WAS AT RISK!

a reasonable likelihood that the trustee will prevail at the final hearing under subsection (e) of this section. The court shall act promptly on any request for authorization under paragraph (2)(B) of this subsection.

(4) Except as provided in paragraph (2) of this subsection, the trustee shall segregate and account for any cash collateral in the trustee's possession, custody, or control.

(d) The trustee may use, sell, or lease property under subsection (b) or (c) of this section—

(1) in the case of a debtor that is a corporation or trust that is not a moneyed business, commercial corporation, or trust, only in accordance with nonbankruptcy law applicable to the transfer of property by a debtor that is such a corporation or trust; and

(2) only to the extent not inconsistent with any relief granted under subsection (c), (d), (e), or (f) of section 362.

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362).

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

(g) Notwithstanding subsection (f) of this section, the trustee may sell property under subsection (b) or (c) of this section free and clear of any vested or contingent right in the nature of dower or curtesy.

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

(i) Before the consummation of a sale of property to which subsection (g) or (h) of this section applies, or of property of the estate that was community property of the debtor and the debtor's spouse immediately before the commencement of the case, the debtor's spouse, or a co-owner of such property, as the case may be, may purchase such property at the price at which such sale is to be consummated.

(j) After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.

(k) At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

(*l*) Subject to the provisions of section 365, the trustee may use, sell, or lease property under subsection (b) or (c) of this section, or a plan under chapter 11, 12, or 13 of this title may provide for the use, sale, or lease of property, notwithstanding any provision in a contract, a lease, or applicable law that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title concerning the debtor, or on the appointment of or the taking possession by a trustee in a case under this title or a custodian, and that effects, or gives an option to effect, a forfeiture, modification, or termination of the debtor's interest in such property.

(m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

(n) The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount. In addition to any recovery under the preceding sentence, the court may grant judgment for punitive damages in favor of the estate and against any such party that entered into such an agreement in willful disregard of this subsection.

(*o*) Notwithstanding subsection (f), if a person purchases any interest in a consumer credit

I was in Possession of the Property, I had Tenants (elderly & handicapped) with legitimate Leases, protected by Bankruptcy Law, State Law, ADA, and the Protecting Tenants at Foreclosure Act. I offered to bring the Mortgages Current at my 8/1/2019 Hearing in Chancery Court, while Attorney Virginia Lee Story told me that it was already too Late. That the Bankruptcy Proceedings were too far along, which is a Violation of my Constitutional Rights for Protecting MY Critical Property Interests, with my Rights Under Federal HUD/ADA/FED/FRBP Criminal & Civil Laws! Adversarial Proceeding Required by LAW!

transaction that is subject to the Truth in Lending Act or any interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time), and if such interest is purchased through a sale under this section, then such person shall remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as such person would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under this section.

(p) In any hearing under this section—

(1) the trustee has the burden of proof on the issue of adequate protection; and

(2) the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2572; Pub. L. 98–353, title III, § 442, July 10, 1984, 98 Stat. 371; Pub. L. 99–554, title II, § 257(k), Oct. 27, 1986, 100 Stat. 3115; Pub. L. 103–394, title I, § 109, title II, §§ 214(b), 219(c), title V, § 501(d)(8), Oct. 22, 1994, 108 Stat. 4113, 4126, 4129, 4144; Pub. L. 109–8, title II, §§ 204, 231(a), title XII, § 1221(a), Apr. 20, 2005, 119 Stat. 49, 72, 195; Pub. L. 111–327, § 2(a)(13), Dec. 22, 2010, 124 Stat. 3559.)

### Historical and Revision Notes

#### legislative statements

Section 363(a) of the House amendment defines ''cash collateral'' as defined in the Senate amendment. The broader definition of ''soft collateral'' contained in H.R. 8200 as passed by the House is deleted to remove limitations that were placed on the use, lease, or sale of inventory, accounts, contract rights, general intangibles, and chattel paper by the trustee or debtor in possession.

Section 363(c)(2) of the House amendment is derived from the Senate amendment. Similarly, sections 363(c)(3) and (4) are derived from comparable provisions in the Senate amendment in lieu of the contrary procedure contained in section 363(c) as passed by the House. The policy of the House amendment will generally require the court to schedule a preliminary hearing in accordance with the needs of the debtor to authorize the trustee or debtor in possession to use, sell, or lease cash collateral. The trustee or debtor in possession may use, sell, or lease cash collateral in the ordinary course of business only ''after notice and a hearing.''

Section 363(f) of the House amendment adopts an identical provision contained in the House bill, as opposed to an alternative provision contained in the Senate amendment.

Section 363(h) of the House amendment adopts a new paragraph (4) representing a compromise between the House bill and Senate amendment. The provision adds a limitation indicating that a trustee or debtor in possession sell jointly owned property only if the property is not used in the production, transmission, or distribution for sale, of electric energy or of natural or synthetic gas for heat, light, or power. This limitation is intended to protect public utilities from being deprived of power sources because of the bankruptcy of a joint owner.

Section 363(k) of the House amendment is derived from the third sentence of section 363(e) of the Senate amendment. The provision indicates that a secured creditor may bid in the full amount of the creditor's allowed claim, including the secured portion and any unsecured portion thereof in the event the creditor is undersecured, with respect to property that is subject to a lien that secures the allowed claim of the sale of the property.

#### senate report no. 95–989

This section defines the right and powers of the trustee with respect to the use, sale or lease of property and the rights of other parties that have interests in the property involved. It applies in both liquidation and reorganization cases.

Subsection (a) defines ''cash collateral'' as cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents in which the estate and an entity other than the estate have an interest, such as a lien or a co-ownership interest. The definition is not restricted to property of the estate that is cash collateral on the date of the filing of the petition. Thus, if ''non-cash'' collateral is disposed of and the proceeds come within the definition of ''cash collateral'' as set forth in this subsection, the proceeds would be cash collateral as long as they remain subject to the original lien on the ''non-cash'' collateral under section 552(b). To illustrate, rents received from real property before or after the commencement of the case would be cash collateral to the extent that they are subject to a lien.

Subsection (b) permits the trustees to use, sell, or lease, other than in the ordinary course of business, property of the estate upon notice and opportunity for objections and hearing thereon.

Subsection (c) governs use, sale, or lease in the ordinary course of business. If the business of the debtor is authorized to be operated under § 721, 1108, or 1304 of the bankruptcy code, then the trustee may use, sell, or lease property in the ordinary course of business or enter into ordinary course transactions without need for notice and hearing. This power is subject to several limitations. First, the court may restrict the trustee's powers in the order authorizing operation of the business. Second, with respect to cash collateral, the trustee may not use, sell, or lease cash collateral except upon court authorization after notice and a hearing, or with the consent of each entity that has an interest in such cash collateral. The same preliminary hearing procedure in the automatic stay section applies to a hearing under this subsection. In addition, the trustee is required to segregate and account for any cash collateral in the trustee's possession, custody, or control.

Under subsections (d) and (e), the use, sale, or lease of property is further limited by the concept of adequate protection. Sale, use, or lease of property in which an entity other than the estate has an interest may be effected only to the extent not inconsistent with any relief from the stay granted to that interest's holder. Moreover, the court may prohibit or condition the use, sale, or lease as is necessary to provide adequate protection of that interest. Again, the trustee has the burden of proof on the issue of adequate protection. Subsection (e) also provides that where a sale of the property is proposed, an entity that has an interest in such property may bid at the sale thereof and set off against the purchase price up to the amount of such entity's claim. No prior valuation under section 506(a) would limit this bidding right, since the bid at the sale would be determinative of value.

Subsection (f) permits sale of property free and clear of any interest in the property of an entity other than the estate. The trustee may sell free and clear if applicable nonbankruptcy law permits it, if the other entity consents, if the interest is a lien and the sale price of the property is greater than the amount secured by the lien, if the interest is in bona fide dispute, or if the other entity could be compelled to accept a money satisfaction of the interest in a legal or equitable proceeding. Sale under this subsection is subject to the adequate protection requirement. Most often, adequate protection in connection with a sale free and clear of other interests will be to have those interests attach to the proceeds of the sale.

At a sale free and clear of other interests, any holder of any interest in the property being sold will be permitted to bid. If that holder is the high bidder, he will be permitted to offset the value of his interest against

363(h) This was a BURDENSOM ASSET, as long as I could bring the payments Current and Keep Paying them on TIME, the Bankruptcy Trustee would have had to REMOVE our home from the Bankruptcy Estate, or PAY to Relocate my Tentnats, and paid to Relocate and Reimburse me for my INVESTMENT, not a forced AUCTION, where we instantly lost over $200. While our home is worth $800k TODAY! Scam between Courts!

the purchase price of the property. Thus, in the most common situation, a holder of a lien on property being sold may bid at the sale and, if successful, may offset the amount owed to him that is secured by the lien on the property (but may not offset other amounts owed to him) against the purchase price, and be liable to the trustee for the balance of the sale price, if any.

Subsection (g) permits the trustee to sell free and clear of any vested or contingent right in the nature of dower or curtesy.

Subsection (h) permits sale of a co-owner's interest in property in which the debtor had an undivided ownership interest such as a joint tenancy, a tenancy in common, or a tenancy by the entirety. Such a sale is permissible only if partition is impracticable, if sale of the estate's interest would realize significantly less for the estate that sale of the property free of the interests of the co-owners, and if the benefit to the estate of such a sale outweighs any detriment to the co-owners. This subsection does not apply to a co-owner's interest in a public utility when a disruption of the utilities services could result.

Subsection (i) provides protections for co-owners and spouses with dower, curtesy, or community property rights. It gives a right of first refusal to the co-owner or spouse at the price at which the sale is to be consummated.

Subsection (j) requires the trustee to distribute to the spouse or co-owner the appropriate portion of the proceeds of the sale, less certain administrative expenses.

Subsection (k) [enacted as (*l*)] permits the trustee to use, sell, or lease property notwithstanding certain bankruptcy or ipso facto clauses that terminate the debtor's interest in the property or that work a forfeiture or modification of that interest. This subsection is not as broad as the anti-ipso facto provision in proposed 11 U.S.C. 541(c)(1).

Subsection (*l*) [enacted as (m)] protects good faith purchasers of property sold under this section from a reversal on appeal of the sale authorization, unless the authorization for the sale and the sale itself were stayed pending appeal. The purchaser's knowledge of the appeal is irrelevant to the issue of good faith.

Subsection (m) [enacted as (n)] is directed at collusive bidding on property sold under this section. It permits the trustee to void a sale if the price of the sale was controlled by an agreement among potential bidders. The trustees may also recover the excess of the value of the property over the purchase price, and may recover any costs, attorney's fees, or expenses incurred in voiding the sale or recovering the difference. In addition, the court is authorized to grant judgment in favor of the estate and against the collusive bidder if the agreement controlling the sale price was entered into in willful disregard of this subsection. The subsection does not specify the precise measure of damages, but simply provides for punitive damages, to be fixed in light of the circumstances.

### References in Text

Section 7A of the Clayton Act, referred to in subsec. (b)(2), is classified to section 18a of Title 15, Commerce and Trade.

The Truth in Lending Act, referred to in subsec. (*o*), is title I of Pub. L. 90–321, May 29, 1968, 82 Stat. 146, as amended, which is classified generally to subchapter I (§1601 et seq.) of chapter 41 of Title 15, Commerce and Trade. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of Title 15 and Tables.

### Amendments

2010—Subsec. (d). Pub. L. 111–327, §2(a)(13)(A), struck out "only" before dash at end of introductory provisions.

Subsec. (d)(1). Pub. L. 111–327, §2(a)(13)(B), amended par. (1) generally. Prior to amendment, par. (1) read as follows: "in accordance with applicable nonbankruptcy law that governs the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust; and".

Subsec. (d)(2). Pub. L. 111–327, §2(a)(13)(C), inserted "only" before "to the extent".

2005—Subsec. (b)(1). Pub. L. 109–8, §231(a), substituted ", except that if the debtor in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell or lease personally identifiable information to any person unless—" and subpars. (A) and (B) for period at end.

Subsec. (d). Pub. L. 109–8, §1221(a), substituted "only—" and pars. (1) and (2) for "only to the extent not inconsistent with any relief granted under section 362(c), 362(d), 362(e), or 362(f) of this title."

Subsecs. (*o*), (p). Pub. L. 109–8, §204, added subsec. (*o*) and redesignated former subsec. (*o*) as (p).

1994—Subsec. (a). Pub. L. 103–394, §214(b), inserted "and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties" after "property".

Subsec. (b)(2). Pub. L. 103–394, §§109, 501(d)(8)(A), struck out "(15 U.S.C. 18a)" after "Clayton Act" and amended subpars. (A) and (B) generally. Prior to amendment, subpars. (A) and (B) read as follows:

"(A) notwithstanding subsection (a) of such section, such notification shall be given by the trustee; and

"(B) notwithstanding subsection (b) of such section, the required waiting period shall end on the tenth day after the date of the receipt of such notification, unless the court, after notice and hearing, orders otherwise."

Subsec. (c)(1). Pub. L. 103–394, §501(d)(8)(B), substituted "1203, 1204, or 1304" for "1304, 1203, or 1204".

Subsec. (e). Pub. L. 103–394, §219(c), inserted at end "This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362)."

1986—Subsec. (c)(1). Pub. L. 99–554, §257(k)(1), inserted reference to sections 1203 and 1204 of this title.

Subsec. (*l*). Pub. L. 99–554, §257(k)(2), inserted reference to chapter 12.

1984—Subsec. (a). Pub. L. 98–353, §442(a), inserted "whenever acquired" after "equivalents" and "and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title" after "interest".

Subsec. (b). Pub. L. 98–353, §442(b), designated existing provisions as par. (1) and added par. (2).

Subsec. (e). Pub. L. 98–353, §442(c), inserted ", with or without a hearing," after "court" and struck out "In any hearing under this section, the trustee has the burden of proof on the issue of adequate protection".

Subsec. (f)(3). Pub. L. 98–353, §442(d), substituted "all liens on such property" for "such interest".

Subsec. (h). Pub. L. 98–353, §442(e), substituted "at the time of" for "immediately before".

Subsec. (j). Pub. L. 98–353, §442(f), substituted "compensation" for "compenation".

Subsec. (k). Pub. L. 98–353, §442(g), substituted "unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder" for "if the holder".

Subsec. (*l*). Pub. L. 98–353, §442(h), substituted "Subject to the provisions of section 365, the trustee" for "The trustee", "condition" for "conditions", "or the taking" for "a taking", and "interest" for "interests".

Subsec. (n). Pub. L. 98–353, §442(i), substituted "avoid" for "void", "avoiding" for "voiding", and "In addition to any recovery under the preceding sentence, the court may grant judgment for punitive damages in favor of the estate and against any such party that entered into such an agreement in willful disregard of

363(h) WOULD HAVE ONLY ALLOWED THIS SALE (PROVIDED I COULD BRING THE PAYMENTS CURRENT AND MAINTAIN THEM) IF THE BENEFIT TO THE BK ESTATE FROM SUCH A SALE OUTWEIGHED ANY DETRIMENT TO THE CO-OWNERS. WHICH WAS LITERALLY IMPOSSIBLE. SHE HAD ROUGHLY $40K OF UNSECURE DEBTS, OUR MARITAL DEBTS LEFT IN MY NAME WERE NEVER GIVEN ANY CONSIDERATION, NOR WAS A PENNY APPLIED TO MY MARITAL DEBTS, OR PAID TO ME FOR MY INVESTMENTS. WE INSTANTLY LOST OVER **$200K** FROM OUR CASH INVESTMENTS, PLUS I LOST A MILLION DOLLAR RETIREMENT INVESTMENT, WHICH THIS PROPERTY WAS THE WHOLE OF. WORTH $800K TODAY, WITH ONLY $300K OWED!