**RECEIVED**
11/09/2026
KELLY L. STEPHENS, Clerk

# UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

**JEFFREY RYAN FENTON**

**Plaintiff–Appellant**

**v.**

**VIRGINIA LEE STORY, et al.**

**Defendants–Appellees.**

**No. 25-5592**

Appeal from the United States District Court for the Middle District of Tennessee, No. 3:24-cv-01282, Hon. Patricia A. Gaughan, Visiting District Judge. Originally filed in the Western District of Michigan, No. 1:23-cv-01097-PLM-RSK.

## OPENING BRIEF OF PLAINTIFF–APPELLANT JEFFREY RYAN FENTON

NOVEMBER 9, 2026

Jeffrey Ryan Fenton, pro se.

### DISCLOSURE STATEMENT

Appellant is an individual and is not a corporation; he has no corporate parent or publicly held company owning any interest in him. See FRAP 26.1 and Sixth Circuit Rule 26.1. This disclosure does not speak for any appellee.

## TABLE OF CONTENTS

DISCLOSURE STATEMENT ........................................................................1

STATEMENT REGARDING ORAL ARGUMENT ............................................6

JURISDICTIONAL STATEMENT ..................................................................6

ISSUES PRESENTED........................................................................................9

STATEMENT OF THE CASE.........................................................................11

SUMMARY OF ARGUMENT .........................................................................22

ARGUMENT ......................................................................................................23

I. Standards of review and the meaning of the district court's decision................23

II. Rooker–Feldman, independent injury, and Tennessee preclusion....................24

III. Counts One through Eight — separate statutory and Tennessee tort theories 25

Count One — Tenn. Code Ann. § 66-27-123: tenant notice and rent loss...........25

Count Two — Tenn. Code Ann. § 39-16-507: witness coercion and participation27

Count Three — Tenn. Code Ann. § 39-15-510: alleged abuse of elderly or vulnerable adult.........................................................................................28

Count Four — Tenn. Code Ann. § 36-4-101: divorce waiting period ..................29

Count Five — Tennessee abuse of process .........................................................31

Count Six — intentional and negligent infliction of emotional distress ...............32

Count Seven — fraud and concealment ............................................................33

Count Eight — civil conspiracy..........................................................................34

IV. Counts Nine and Ten — civil RICO, the actual original pleading, predicates and limitations...........................................................................................35

Count Nine: § 1962(b) ....................................................................35
Count Ten: § 1962(c), persons, enterprise and injury ....................................36
Original October 2023 RICO Count Six: verified comparison ...........................37
Qualifying predicates and competing explanations .........................................39
Injury discovery and the four-year period .....................................................40
V. Count Eleven — federal bankruptcy claims and the order's actual effect .......42
Estate property, plan and earlier stay ............................................................42
The August order, September sale motion, notice and September 27 federal order ....................................................................................................43
Notice and co-owner interests .......................................................................44
Remedies, finality and independent injury ....................................................48
VI. Counts Twelve through Fourteen — civil rights, constitutional rights and ADA ....................................................................................................49
Count Twelve: 42 U.S.C. §§ 1983 and 1985 ...................................................49
Count Thirteen: constitutional rights .............................................................50
Count Fourteen: Title II ADA, retaliation and interference ..............................51
VII. Defendant-specific independent defenses and the dismissal motions ...........56
VIII. Independent time bars, statutory enforceability, Rule 59(e) and amendment71
CONCLUSION AND REQUESTED RELIEF ....................................................74
CERTIFICATE OF COMPLIANCE 76
ADDENDUM — DESIGNATION OF RELEVANT LOWER-COURT DOCUMENTS ........................................................................................76

## TABLE OF AUTHORITIES


Agency Holding Corp. v. Malley-Duff & Associates, 483 U.S. 143 (1987) ........40

Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006) ........37

Apple v. Glenn, 183 F.3d 477 (6th Cir. 1999) ........23, 56, 74

Arbaugh v. Y & H Corp., 546 U.S. 500 (2006) ........23

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ........23

Baltrusaitis v. United Auto Workers, 86 F.4th 1168 (6th Cir. 2023) ........40

Begala v. PNC Bank, 214 F.3d 776 (6th Cir. 2000) ........23, 73

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ........23

Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., 986 S.W.2d 550 (Tenn. 1999) ........31, 63

Bell v. Hood, 327 U.S. 678 (1946) ........23

Boyle v. United States, 556 U.S. 938 (2009) ........36

Brown v. Tennessee Title Loans, 328 S.W.3d 850 (Tenn. 2010) ........29

Dennis v. Sparks, 449 U.S. 24 (1980) ........50, 57, 66

Ex parte Young, 209 U.S. 123 (1908) ........61

Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005) ........24

Foman v. Davis, 371 U.S. 178 (1962) ........73

Forrester v. White, 484 U.S. 219 (1988) ........60

Griffin v. Breckenridge, 403 U.S. 88 (1971) ........50

H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989) ........37

Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992) ........37

Intera Corp. v. Henderson, 428 F.3d 605 (6th Cir. 2005)....................................23

Jackson v. Smith, 387 S.W.3d 486 (Tenn. 2012) ...............................................25

Kush v. Rutledge, 460 U.S. 719 (1983)...............................................................50

Mathews v. Eldridge, 424 U.S. 319 (1976) .........................................................27

McCormick v. Braverman, 451 F.3d 382 (6th Cir. 2006) .............................24, 63

In re McKenzie, 716 F.3d 404 (6th Cir. 2013) ...............................................49, 60

Mireles v. Waco, 502 U.S. 9 (1991) ....................................................................61

MOAC Mall Holdings LLC v. Transform Holdco LLC, 598 U.S. 288 (2023) ....49

Monell v. Department of Social Services, 436 U.S. 658 (1978) ....................59, 71

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)

Republic Bank & Trust Co. v. Bear Stearns, 683 F.3d 239 (6th Cir. 2012)..........34

Reves v. Ernst & Young, 507 U.S. 170 (1993) ................................ 36, 42, 57, 66

Rogers v. Louisville Land Co., 367 S.W.3d 196 (Tenn. 2012)............................32

Rotella v. Wood, 528 U.S. 549 (2000) .................................................................40

Smith v. Dawson-Smith, 111 F. App'x 360 (6th Cir. 2004) ................................25

Tennessee v. Lane, 541 U.S. 509 (2004) ......................................................52, 61

Trau-Med of America, Inc. v. Allstate Insurance Co., 71 S.W.3d 691 (Tenn. 2002) ......................................................................................................................35

United States v. Georgia, 546 U.S. 151 (2006) ....................................................52

Wallace v. Kato, 549 U.S. 384 (2007)..................................................................71

West v. Atkins, 487 U.S. 42 (1988).....................................................................49

Will v. Michigan Department of State Police, 491 U.S. 58 (1989)................51, 61

Statutes and rules: 11 U.S.C. §§ 362, 363, 541, 1302; 18 U.S.C. §§ 1961–1964; 28 U.S.C. §§ 1331, 1367, 2107; 42 U.S.C. §§ 1983, 1985, 12132, 12203; FRAP 4, 28, 32; Fed. R. Civ. P. 4, 9, 12, 15, 59; Fed. R. Bankr. P. 7001; 6 Cir. R. 28, 30, 32.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument under Sixth Circuit Rule 34(a). The questions concerning the source of injury under *Rooker–Feldman*, federal bankruptcy sale authority and notice, distinct defenses affecting fourteen pleaded counts, and Rule 15(c) involve overlapping but legally different doctrines that would benefit from questioning by the Court. This request does not waive the appellant's pending requests concerning disability access or reasonable accommodations.

## JURISDICTIONAL STATEMENT

For record citations, M, T, and 6 identify the Western District of Michigan, Middle District of Tennessee, and Sixth Circuit, respectively. Numbers after the slash are the filing's original PageID unless otherwise indicated. The operative FAC is M:66 (sealed in Tennessee and fully redacted in Michigan); T:238-1 is its later public-access counterpart, not an amended pleading.

The district court had jurisdiction under 28 U.S.C. § 1331 over claims pleaded under the civil RICO statute, federal bankruptcy laws, 42 U.S.C. §§ 1983 and 1985, the Constitution, and the Americans with Disabilities Act. The First

Amended Complaint (FAC) also invoked 28 U.S.C. § 1332 and supplemental jurisdiction over related state claims. M:66[1]/4871, 4873; T:238-1[2]/1570, 1572. The existence of statutory federal claims provides an initial basis to examine jurisdiction; it does not establish that those claims state a cause of action or satisfy all jurisdictional restrictions. The district court possessed at least supplemental jurisdiction over state causes of action under 28 U.S.C. § 1367 to the extent federal claims supported original jurisdiction.

Fenton filed the original complaint on October 13, 2023, in W.D. Michigan No. 1:23-cv-01097-PLM-RSK. He filed the operative FAC on August 21, 2024 (M:66/4870–4972); a public/redacted counterpart was filed April 23, 2025 (T:238-1/1569–1671). The action transferred to M.D. Tennessee, No. 3:24-cv-01282, on October 25, 2024. On March 26, 2025, Visiting Judge Patricia A. Gaughan dismissed it, Doc. 236[3], PageID.1491–1503, and entered final judgment, Doc. 237[4], PageID.1504. Fenton filed his Rule 59(e) motion April 23, 2025, Doc. 238[5],

1 https://fentonvstory.com/m/66.pdf

2 https://fentonvstory.com/t/238-1.pdf

3 https://fentonvstory.com/t/236.pdf

4 https://fentonvstory.com/t/237.pdf

5 https://fentonvstory.com/t/238.pdf

PageID.1505–1568. That motion was denied May 19, 2025, Doc. 245[6], PageID.1824–1825. His notice of appeal, filed June 20, 2025, expressly designated Docs. 236, 237 and 245. Doc. 246[7], PageID.1826.

FRAP 4(a)(4)(A)(iv) restarts the appeal clock after a timely Rule 59(e) motion. Fenton filed his motion April 23, 2025, within twenty-eight days after the March 26 judgment. M.D. Tenn. Doc. 238, PageID.1505. The motion was denied May 19, 2025. Doc. 245, PageID.1824–1825. His notice, filed June 20, 2025, thirty-two days later, designated Docs. 236, 237, and 245. Doc. 246, PageID.1826. FRAP 4(a)(1)(B)(iv) provides sixty days because a party, United States Bankruptcy Judge Charles Walker, was sued for acts allegedly performed in connection with federal judicial duties. FAC, M:66/4952–4955; T:238-1/1651–1654. The United States also furnished official representation: Assistant U.S. Attorney Ryan D. Cobb signed Walker's October 25, 2024 motion to dismiss for the United States Attorney. W.D. Mich. ECF 126[8], PageID.5704–5705. After transfer, AUSA Anica C. Jones signed Walker's October 29, 2024 motion to substitute federal counsel,

---

6 https://fentonvstory.com/t/245.pdf

7 https://fentonvstory.com/t/246.pdf

8 https://fentonvstory.com/m/126.pdf

M.D. Tenn. Doc. 136[9], p. 1, seeking to replace Cobb. Jones continued appearing for Walker, including in Docs. 167[10]–168[11] (November 13, 2024) and Doc. 206[12] (February 5, 2025), before the March 26 judgment. That record supports the federal-representation safe harbor in addition to the independently applicable official-duty clause; the latter does not require continued federal representation. The timely notice invokes 28 U.S.C. § 1291.

## ISSUES PRESENTED

1. Whether the district court dismissed a fourteen-count complaint alleging a coordinated, predatory misuse of Chancery and bankruptcy processes, independent property and liberty injuries, and defendant-specific misconduct without addressing those allegations under the required standards; and whether pre-service and pre-dismissal access, service, amendment, and response restrictions cumulatively denied a meaningful opportunity to litigate.

---

9 https://fentonvstory.com/t/136.pdf

10 https://fentonvstory.com/t/167.pdf

11 https://fentonvstory.com/t/168.pdf

12 https://fentonvstory.com/t/206.pdf

2. Whether *Rooker–Feldman* and Tennessee claim preclusion improperly reached injuries independently attributable to acts by private and governmental defendants rather than state judgments themselves.
3. Whether Counts Nine and Ten, original October 2023 Count Six, the specific mailing allegations, economic injuries, Rule 15(c), accrual, and qualifying RICO predicate requirements received the proper analysis.
4. Whether bankruptcy stay protection, ownership, notice, the August Chancery order and September 27, 2019 federal sale authorization were properly reconciled under the Bankruptcy Code and controlling finality rules.
5. Whether the distinct Tennessee statutory and tort counts, constitutional and civil-rights counts, and ADA claims can withstand their respective statutory, factual, immunity, and limitations defenses, or at least merit properly considered amendment.
6. Whether each defendant's service, procedural, preclusion, liability, and immunity defenses independently sustain dismissal and whether Rule 59(e) and Rule 15 relief was properly denied.

7. Whether the district court erred in dismissing the pleaded constitutional, civil-rights, and ADA theories involving an initial civil protective order and its approximately five-year extension, where Fenton alleges lack of constitutionally adequate notice, meaningful hearing, and impartial adjudication, resulting in criminally enforceable interstate restrictions on liberty, firearms, livelihood, and participation; and how the conditions of 18 U.S.C. § 2265(b), the Fourteenth Amendment, and available independent-injury remedies bear on that dismissal. The Sixth Amendment counsel analogy is preserved as an issue requiring distinct analysis, not asserted as an automatic right in every civil protection proceeding.

8. Whether the district court erred in dismissing allegations that identified state actors knowingly tolerated or adopted materially misleading representations, denied opportunities to correct the record, and permitted selective or retaliatory treatment affecting constitutional rights; and whether, under the Fourteenth Amendment's guarantees of an impartial tribunal and evenhanded due process and equal protection, those independently pleaded injuries required defendant-specific adjudication notwithstanding judicial immunity, Rooker–Feldman, or the absence of a private right to compel attorney discipline.

## STATEMENT OF THE CASE

## NATURE OF THIS CASE

**"They just completely walked all over your rights, in the state of Tennessee, or perhaps under the Bankruptcy Code."**

Those were the words of bankruptcy trustee and attorney John McLemore during a recorded July 2, 2020, conversation with Jeffrey Ryan Fenton. McLemore directed him to 11 U.S.C. § 363. What Fenton uncovered was not merely an unfair divorce, but the use of interconnected Tennessee Chancery Court and federal bankruptcy proceedings to strip him of his home, substantial lifetime investments, and the legal protections intended to safeguard them. MIWD ECF 28, PageID.3276–3288; ECF 54-1, PageID.4367.

Fenton was a recorded co-owner and investor in the family residence, holding title with his wife as tenants by the entirety. Fenton was also the party in possession of the property, by agreement with his wife, after she moved out and got her own apartment roughly a year earlier. Still, bankruptcy counsel for his former wife obtained federal authorization to sell the property under 11 U.S.C. § 363(f)(3)—a provision governing sales free and clear of liens, not a substitute for § 363(h), which governs the forced sale of a nondebtor co-owner's ownership interest. Such a sale required the statutory protections of § 363(h), including a determination that

the benefit to the bankruptcy estate outweighed the detriment to Fenton (which was economically impossible under the circumstances), and the adversary proceeding required by Bankruptcy Rule 7001(3).

Meanwhile, Binkley and Story had already executed a Chancery order under the pretense that Fenton wished his former wife financial harm, expressly prohibiting him from interfering with or delaying the sale of his own home:

“Husband is enjoined and restrained from interfering with preparation of the home for auction, the auction or stalling the sale in any manner, either directly or indirectly.” MIWD ECF 19-6, PageID.2670.

Nor was Fenton afforded an opportunity to request adequate protection of his property interest under § 363(e). Neither appears in the federal sale order. Instead, the order recited notice and no objections. Fenton never received notice of the federal sale motion. More than two years later, United States Trustee Program trial attorney Megan Seliber confirmed in writing: “I confirmed that you did not receive notice.” MIWD ECF 1-9, PageID.226–227; ECF 1-30, PageID.1758–1761.

Seliber also provided Fenton with a copy of the deed transfer, revealing exactly how his property had been conveyed without his approval, despite his repeated objections, notices that the transfer was illegal, coerced, and fraudulent, and

demands that the property not be sold. Fenton has yet to receive a fully executed copy of the HUD-1 Settlement Statement from that sale, despite repeated requests and promises by the auctioneer to have the closing company provide it, and his inability to locate one in the Chancery Court records.

To be clear, the sale of the family's residence was of NO material value to his former wife's bankruptcy estate, because that would require having equity left over after the mortgages were paid off to apply toward the debtor's unsecured creditors, while the bankruptcy records show that never happened. In fact, the property mysteriously sold for exactly what was due on the family's outstanding mortgages (less than $300,000), plus real estate fees and closing costs, without one penny to either owner for the whole of their life's savings, premarital and post-marital retirement investments, and seven years of labor making substantial core improvements to that property.

According to the deed later supplied to Fenton by USTP Megan Seliber, the residence sold for $324,359, leaving Fenton abruptly homeless without a dollar to his benefit. Within months, the purchaser resold it for $540,000. On April 14, 2026, the property sold again for $925,000. Fenton lost his home, substantial premarital investments, accumulated equity, and the financial security upon which

he had depended to rebuild his life. MIWD ECF 48, PageID.4002–4003, 4020–4022; 6th Cir. Doc. 46, p. 94.

But losing his home was only half the injury. They also destroyed his reputation while revoking his freedom.

At the August 1, 2019 Chancery hearing, attorney Virginia Story expressly acknowledged the danger that a protective order could pose to Fenton's ability to find employment:

“Because what we don't want to do is have something go down on his record that's going to affect his employability, because he needs to get a job ASAP, so as long as we have the protection, the order of protection under the ex parte, we are good with that.” MIWD ECF 22, PageID.2820.

They promised the ex parte order of protection would terminate upon the final decree of divorce, but once Fenton was no longer an alimony risk for his ex-wife and was over the state line headed toward Michigan, Story reneged on every promise she and Binkley had made him and slapped him with a full order of protection, despite his never having raised a hand to his wife or threatened to do so, having no history of domestic disputes, never having been arrested, or even having

received a single traffic citation during his 25 hardworking, peaceful years living in Middle Tennessee.

But Story did exactly what she had promised to avoid. The full order of protection damaged Fenton's reputation, hurt his chances of finding work, and continued to burden him even after he was displaced 600 miles away to live in Michigan, where he continued struggling to rebuild his life.

Bear in mind, this took place right before and during the COVID-19 pandemic. At a time when prisons throughout our country released nonviolent criminals in the name of public health, Fenton still couldn't persuade a judge or oversight actor in Tennessee to simply UNTETHER him so that he could reasonably attempt to move forward with his life and survive the catastrophic damages the court had carelessly caused him.

The contrast is striking: counsel expressly recognized that protecting Fenton's employability mattered, yet the subsequent proceedings left him fighting to remove the allegations and restrictions that obstructed it.

These offers to mitigate damages for all involved were not merely rhetoric. His November 2019, May 2020, and October 2020 correspondence documents repeated offers to relinquish financial recovery in exchange for only his freedom.

Yet that was more than certain defendants were willing to release, and it has remained so throughout this federal case. Within the past year, the extended orders finally expired on their own, despite Fenton having requested relief when he filed this case and having made further requests directly to counsel for a stipulated motion. Yet relief was denied by both the court and the state's counsel. MIWD ECF 49, PageID.4030–4039, 4046–4051; ECF 50, PageID.4082–4085; ECF 57-1, PageID.4528–4529.

On December 2, 2021, Fenton spoke with FBI Special Agent Mark Shafer, whom he had specifically sought out to report corruption, fraud upon the court, coordinated bankruptcy fraud, and extensive misconduct involving Chancellor Michael W. Binkley and attorney Virginia Lee Story. Fenton had identified Shafer through his investigation of the federal criminal prosecution of disgraced Nashville Judge Cason “Casey” Moreland, whose criminal complaint bore Shafer's name. Fenton sought an investigator experienced in the Middle Tennessee judicial climate and in exposing corruption involving Tennessee judicial officers. MIWD ECF 52, PageID.4180–4201.

During their recorded conversation, Fenton explained just how far he had gone to resolve the matter:

“I offered them even hold harmless agreements for everybody who cost me a penny, including the judge, if they would just take the freaking order of protection off and let me go on with my life, they could keep everything they stole from me in Tennessee. I offered them that for a year and a half and they wouldn't even take it.” (42:59–43:15).

Fenton also explained why he refused to give up:

“I'm not wanting to hurt my wife at all with this, the only thing I'm wanting to do is to protect her, and to protect others in Tennessee, because I'm never going to live there again, but if they can do this to me after how much I have fought them, there are so many people that are getting screwed that don't even have a chance to fight, that is my motivation.” (3:57–4:16).

He even requested immunity for his former wife while refusing to seek immunity for himself:

“the only thing that I'm requesting out of all of this is immunity for her. I don't even want immunity for myself. If I get caught doing something wrong lock me up. But I want to protect her.” (29:57–30:05).

MIWD ECF 54-1, PageID.4371.

Fenton did not bypass Tennessee's courts or oversight authorities. He turned to them FIRST, repeatedly seeking protection and accountability. He pursued relief through the Tennessee Court of Appeals, attempted to escalate review to the Tennessee Supreme Court, and reported Story's and Binkley's fraudulent misconduct to judicial administrators, disciplinary authorities, and high-ranking state officials.

That is precisely why there are so many high-ranking Tennessee judicial and governmental officials named as defendants in this lawsuit. Fenton approached them seeking help and protection from Story and Binkley, presenting substantial evidence of misconduct and fraud while asking them to intervene. But instead of throwing him a life preserver while he was literally drowning in local court corruption, they refused to act or hold the bad actors accountable. Their own actions, inactions, refusals to intervene, and refusals to correct or report the obvious misconduct that he shared with them made them participants in the crimes that continue to plague his family, forcing him to seek accountability in a higher forum.

After years of fighting for relief, Fenton turned to the federal judiciary expecting something more fundamental than sympathy: an HONEST COURT.

He had already explained the heart of this appeal in his July 22, 2025 motion to proceed in forma pauperis:

"If the essence of this lawsuit could be boiled down to one point, that point would be the right to litigate in a court honestly and fairly, without justice being directly or indirectly defeated by attorney and judicial misconduct, of a fraudulent and biased nature." 6th Cir. Doc. 14, p. 1.

Fenton repeatedly demanded enforcement of Rule 11(b), truthful representations by officers of the court, and compliance with the professional and judicial standards governing federal litigation. He exposed contradictions, reported misconduct, and asked the court to stop allowing the proceedings to be SQUANDERED on filings that buried the serious merits of his fourteen-count complaint beneath an avalanche of disputed representations and procedural distractions.

Instead of compelling accountability, the district court continued placing the burden on Fenton to answer an expanding succession of filings whose honesty and factual foundations he had already challenged. He struggled to obtain court access, the tools and accommodations necessary to litigate, resolution of service disputes, and meaningful judicial attention to outstanding motions. For nearly a year, his

requests went without effective judicial action. He expressly informed the court that he had not completed his responses and needed an opportunity to amend his complaint.

The District Court Acted as Though the Pleading Stage Was Finished—Before Ever Ruling on Fenton's Outstanding Motions for Service or Ordering the Repeatedly Served Defendants to Appear.

Nor had the court addressed the substantial misconduct already documented in the record or Fenton's repeated requests to require certified, truthful pleadings—protections he had demonstrated were crucial when litigating against certain defendants.

On October 10, 2024, Fenton filed an amended motion requesting that all parties certify their filings as factually true, sworn under penalty of perjury, and compliant with Rule 11(b). He explained that this would prevent him from having to "waste time, energy, and other resources countering many of the false documents that have been filed and are still yet to be filed." MIWD ECF 100, PageID.5343–5345.

Five months later, Fenton again demanded accountability, explaining that "requiring all pleadings to be honest and ethical is 'ground zero' in this lawsuit, to

fairly and honestly adjudicate anything, and we still aren't even there yet." TNMD Doc. 224, PageID.1346, ¶¶69–72.

Instead of resolving these foundational issues, the district court continued imposing escalating procedural burdens upon Fenton, while the misconduct he had repeatedly reported remained unaddressed. The litigation was being SQUANDERED on the very filings and conduct he had asked the court to stop, rather than advancing the serious merits of his fourteen-count complaint.

Fenton was not asking for exemption from the rules. He demanded that the rules apply to EVERYONE, including the attorneys and judges entrusted with administering justice.

He was still fighting for an honest opportunity to litigate when the district court treated that opportunity as already exhausted.

## SUMMARY OF ARGUMENT

The dismissal requires claim-specific and defendant-specific review of every independent ground: source of injury, preclusion, immunity, statutory elements and limitations, and bankruptcy-sale authority and notice. Sections I–VIII supply the governing law.

The court must also consider cumulative prejudice from pre-service dismissal efforts, restricted access, unresolved procedural requests, and denial of amendment.

## ARGUMENT

### I. Standards of review and the meaning of the district court's decision

A Rule 12(b)(6) dismissal is reviewed de novo. *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Well-pleaded facts, not conclusory characterizations, are accepted as true. Subject-matter jurisdiction dismissed on legal grounds receives de novo review; factual jurisdictional disputes may warrant distinct treatment. Preclusion presents legal questions ordinarily reviewed de novo. A Rule 59(e) ruling, and a denial of leave to amend, are reviewed for abuse of discretion, with underlying legal rulings receiving independent review. *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005); *Begala*, 214 F.3d at 783–84.

The district court stated that it could not identify cogent allegations and characterized the entire action as insufficient. Doc. 236, PageID.1497–1498. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999), permits dismissal for want of subject-matter jurisdiction of genuinely insubstantial federal claims, including fee-paid complaints, but the existence of a difficult or unsuccessful federal claim does not make jurisdiction disappear. *Bell v. Hood*, 327 U.S. at 682–83; *Arbaugh*, 546 U.S.

at 513–16. He asks the Court to apply the elements to the particular dated transactions, recorded instruments, fax submissions, alleged acts and economic injuries.

The district court expressly ruled that the FAC would be allowed and the Michigan venue and personal-jurisdiction objections were moot. Doc. 236, PageID.1496. The argument by HND in Doc. 134[13] that the FAC was never operative therefore cannot independently support the entered judgment. Other grounds—service under Rule 4, merits sufficiency, statutes, limitation, immunity, *Barton*, and preclusion—are not thereby resolved, and Appellant addresses them separately below.

## II. Rooker–Feldman, independent injury, and Tennessee preclusion

The controlling inquiry under Exxon Mobil, 544 U.S. at 284, is whether the injury was caused by a preexisting state judgment and the federal plaintiff seeks its review and rejection. McCormick v. Braverman, 451 F.3d at 393–95, distinguishes independently tortious conduct by persons from a judgment itself. The FAC requests cancellation and expungement of protection orders, ¶ 291, M:66/4972; T:238-1/1671; that relief may require an impermissible lower federal appellate review and faces a substantial jurisdictional obstacle. But the pleading also

---

13 https://fentonvstory.com/t/134.pdf

attributes independent injuries to particular allegedly deceptive communications, business and tenant interference, personal property acts, disputed sale documents, and denial of accommodation. The district court cannot derive the source of every claimed injury from one portion of the prayer for relief while failing to consider whether a damages claim may be decided without overturning the state order. Doc. 236, PageID.1499–1500. Appellant seeks vacatur only to the extent jurisdiction exists; he does not concede any requested relief is withdrawn.

Preclusion is not jurisdiction. Under 28 U.S.C. § 1738 and *Jackson v. Smith*, 387 S.W.3d at 491, Tennessee claim preclusion requires a competent final judgment, the same claim, and identical parties or their privies. Timing and whether a claim could have been adjudicated in the previous forum are material. *Smith v. Dawson-Smith*, 111 F. App'x 360 (6th Cir. 2004), confirms a substantial opposing risk for claims attacking adjudicated divorce issues. But private actors not shown to have been parties or privies, postjudgment wrongful acts, and separately accrued federal claims cannot all be precluded merely by sharing facts with the divorce. The federal bankruptcy order has different finality and preclusion consequences from Tennessee orders. Remand is sought for claims as to which the requisite identity, privity, and judgment analysis was not made.

## III. Counts One through Eight — separate statutory and Tennessee tort theories

### *Count One — Tenn. Code Ann. § 66-27-123: tenant notice and rent loss*

Count One names Virginia Story, Michael Binkley, Story and Abernathy, PLLP, and the Williamson County Chancery Court. FAC ¶¶ 116–122, M:66/4926–4927; T:238-1/1625–1626. Fenton asserts that an August 1 order requiring departure of tenants allowed less than the statutory two-month notice and caused $1,445.16 of lost rental income. The cited order appears at ECF 1-35[14], PageID.1951–1953, and the original record identifies roommate leases in ECF 45, PageID.3800–3813. Loss of rent is an identifiable independent claimed business injury, not proof of a violation of this particular statute.

Section 66-27-123 covers notice before conversion of rented rooms or other units into units offered for sale, not solely condominium conversions. Its Class 1/Class 2 county limitation must also be applied. Whether the pleaded rental arrangements and compelled auction qualify remains disputed. Nor does a statutory notice requirement necessarily create a private damages cause of action in favor of a landlord rather than tenants. The surviving appellate contention must be that the leases and pleaded rental losses are relevant to related tort, property and RICO

---

14 https://fentonvstory.com/m/1-35.pdf

injury issues and that a properly requested amendment may identify a cognizable cause of action for those specific acts. Judicial immunity protects Binkley's judicial orders from damages, and the FAC directs the particular $1,445.16 damages request toward Story and the firm, not Binkley or the Chancery Court. FAC ¶ 122, M:66/4927; T:238-1/1626.

### *Count Two — Tenn. Code Ann. § 39-16-507: witness coercion and participation*

Count Two names Story, Kathryn Yarbrough, Story and Abernathy, Binkley, Elaine Beeler, Williamson County, and the Chancery Court. FAC ¶¶ 123–131, M:66/4927–4929; T:238-1/1626–1628. Fenton alleges eviction and geographical displacement made attendance nearly impossible; that counsel and the Chancellor represented telephone participation would be available on October 21; and that participation was subsequently prevented. ECF 57-1, PageID.4505–4506, contains his December 2019 account, predating this federal action. He seeks stated damages for business income and property equity from designated private defendants and equitable relief from governmental ones. FAC ¶¶ 130–131, M:66/4928–4929; T:238-1/1627–1628.

Section 39-16-507 is a criminal statute: there is no automatic private right of action. Its elements include coercive influence upon a witness with the required

intent; mere adverse hearing scheduling does not establish the criminal offense or a civil claim. Nonetheless, the pleaded lost opportunity to be heard is also pertinent to Counts Twelve and Thirteen and Mathews v. Eldridge, 424 U.S. 319, 335 (1976), if a protected interest and state action are shown. The telephonic arrangement must be verified against the contemporaneous hearing transcript, and causation cannot rest on the assumption that attendance would have prevented any unfavorable ruling. Judicial immunity, state-action limitations and Rooker–Feldman independently constrain the claim. Appellant requests relief only on a recognized civil basis and consideration of amendment rather than discarding the pleaded account and its injury allegations.

### *Count Three — Tenn. Code Ann. § 39-15-510: alleged abuse of elderly or vulnerable adult*

Count Three designates Story, Binkley, Yarbrough, Beeler, Clement, Hivner, Coke, Bennett, McBrayer, Story and Abernathy, the Board of Professional Responsibility, and the defined state defendants. FAC ¶¶ 132–138, M:66/4929–4930; T:238-1/1628–1629. The FAC alleges knowledge of functional disabilities and simultaneous demands to litigate, find work, pack property, mark personal effects, remove tenants, and relocate. It claims $1,400 monthly lost business/employment income, investment and equity loss, and destruction or loss

of belongings. Fenton's 2020 request, ECF 1-38, PageID.2032–2045, and firsthand declarations by Marsha Fenton, ECF 1-2, PageID.49–52, ECF 18, PageID.2417 onward, support that accommodations were sought and substantial difficulties described, though not the intent of every defendant.

Section 39-15-510 is penal, and disability under the ADA does not automatically satisfy Tennessee's vulnerable-adult definition. Tennessee implies a private statutory remedy only under the applicable legislative-intent framework. See Brown v. Tennessee Title Loans, 328 S.W.3d 850, 855–56 (Tenn. 2010). But the same facts may independently bear on intentional tort and Title II ADA elements and whether the court knew of a need for modifications. Appellant preserves Count Three and the distinct monetary versus equitable demands in ¶ 138; the proper appellate disposition depends on whether a private civil theory was sufficiently pleaded or could be corrected with amendment, not on an assumption that criminal law alone establishes liability.

### *Count Four — Tenn. Code Ann. § 36-4-101: divorce waiting period*

Count Four names Story, Yarbrough, their firm, Binkley and the Chancery Court. FAC ¶¶ 139–146, M:66/4930–4931; T:238-1/1629–1630. The pleaded factual comparison is the June 4, 2019 divorce filing versus the August 1 hearing, which

Fenton asserts occurred before the sixty-day waiting period under § 36-4-101(b). The statute must be applied to the nature of the particular hearing: an initial provisional hearing does not necessarily constitute the forbidden final divorce hearing. A violation of divorce procedure does not itself create a tort damages action against a judge or opposing counsel. The court should nonetheless consider the alleged loss of preparation and opportunity to be heard as part of a properly stated procedural due-process claim rather than merely a disfavored attempt to reverse divorce findings. Claimed economic damages and the expressly requested expungement of the protective order are distinct forms of relief, ¶¶ 145–146, M:66/4931; T:238-1/1630. Appellant preserves this count and seeks proper application of the statute and any viable independent remedial vehicle, or authorized amendment.

Counts One–Four present different statutory-remedy and scope questions, addressed individually above. Their separately pleaded rent, coercion, exploitation and participation facts also support the analysis of Counts Five–Fourteen and the requested opportunity to amend. No claim, party, injury or relief is withdrawn.

SHARED FACTUAL FOUNDATION FOR COUNTS FIVE–EIGHT. The August 29 order restricted removal of furnishings; Fenton contemporaneously sought

access to possessions; Story subsequently demanded storage or removal payments and sought their disposition. Meanwhile, bankruptcy counsel filed the differing Chancery orders and sought federal sale authority on the earlier order's framework. M:19-7/2675; M:57-1/4394–4396, 4405, 4459, 4463–4466; M:48/3993–3995; Bankr. Docs. 52–52-4, 54, 59-5, 59-6, 66. Fenton's sworn testimony and his mother's firsthand observations additionally support claimed injury and causation. Individual liability and legally necessary intent remain count-specific.

### *Count Five — Tennessee abuse of process*

Count Five names Story, Yarbrough and Story and Abernathy. FAC ¶¶ 147–152, M:66/4932–4933; T:238-1/1631–1632. Fenton alleges legal process was employed for collateral purposes associated with taking residence possession and controlling a sale rather than fairly adjudicating marital rights. Tennessee requires an ulterior motive and an improper act in use of process after its issuance. Bell ex rel. Snyder v. Icard, 986 S.W.2d 550, 555 (Tenn. 1999). An allegedly improper motive or the filing of a motion by itself is not enough. But the asserted pressure to sign an auction agreement, contemporaneous written challenge to that agreement, and communication to identified auction participants, ECF 1-13, PageID.550–551, are factual allegations to test for actual improper post-issuance acts. The defense will argue ordinary compliance with valid court orders, privilege for litigation

communications, preclusion and timeliness. Appellant responds that any actionable conduct must be judged by what private participants actually did outside merely requesting or obeying a judicial ruling, with direct causation to asserted equity, possession and income losses. Reinstatement depends on meeting the tort elements; alternatively, the requested amendment can specifically identify the process, improper use and each participant.

### *Count Six — intentional and negligent infliction of emotional distress*

Count Six is against all FAC defendants, FAC ¶¶ 153–174, M:66/4933–4939; T:238-1/1632–1638, and alleges distress linked to displacement, disputed orders and property loss, inability to work, and barriers to self-representation. Marsha Fenton's sworn 2020 and 2024 declarations provide personal observations of housing circumstances and significant time spent on legal work; ECF 1-2, PageID.49–52; ECF 18, PageID.2417 onward. These witnesses' observations corroborate claimed impact; they do not make every defendant responsible or prove intentional outrageous conduct. Under Rogers v. Louisville Land Co., 367 S.W.3d 196, 205–09 (Tenn. 2012), intentional infliction requires extreme and outrageous conduct and serious mental injury. Negligent infliction has separate duty, breach and causation elements. Some allegations describe ordinary litigation disagreements or protected decisions, which are inadequate. Cadence Bank (Doc.

170[15]) and Bank of America (Doc. 174[16]) specifically contend the FAC alleges no bank-specific outrageous conduct, negligent duty or causation. Appellant must identify each institution's actual act; an ordinary secured creditor's lien is not a tort. Judicial, governmental and trustee immunities and limitations remain independent obstacles. The viable remedy is defendant-specific tort adjudication where factual allegations satisfy all elements, or examination of a curative amendment—not treating a long list of defendants as sufficient by itself.

The concrete omission theory is that Koval's September 18 motion attached the August 29 order, yet the September 18 sale motion and the September 27 order employed the older order's residual-property framework without discussing the new prohibition on removing belongings. Bankr. Docs. 52, 52-3, 52-4, 54 and 66; ECF 19-6, PageID.2670; ECF 19-7, PageID.2675. Story's September 26 Chancery motion expressly invoked the later restriction. ECF 57-1, PageID.4463–4466. Particularity improves materially, but independent fraud requires identifying each speaker, misleading representation or duty of disclosure, legally relevant reliance

15 https://fentonvstory.com/t/170.pdf

16 https://fentonvstory.com/t/174.pdf

and caused loss; fraud on the court has a different demanding test and cannot be equated with an omitted fact alone.

### *Count Seven — fraud and concealment*

Count Seven names all defendants except Spragins, Barnett & Cobb and Rubin Lublin TN. FAC ¶¶ 175–194, M:66/4940–4946; T:238-1/1639–1645. It alleges misrepresentations about service, ownership, mortgage status, bankruptcy notice and the sale, and concealment of closing or other information. The FAC alleges Story's statements regarding service and representations about Fenton's asserted co-ownership. Contemporaneous listing objections appear at ECF 1-13, PageID.550–551; the deed at ECF 19-1, PageID.2624–2628; the Seliber email at ECF 53-6, PageID.4279. These records support existence of statements or missing notice; falsity, duty, defendant knowledge and reliance are still contested.

Rule 9(b) requires circumstances of fraud with particularity. *Republic Bank & Trust Co. v. Bear Stearns*, 683 F.3d 239, 247–48 (6th Cir. 2012). Tennessee tort elements also require an actionable misrepresentation, appropriate reliance and causation; concealment ordinarily requires an applicable duty to disclose. False statements made to a court do not automatically establish reliance by Fenton and may be subject to litigation privilege. The banks' motions argue lack of any

particular statement or duty attributable to them; the auction and title defendants require their own acts. Appellant seeks review of allegations that do identify speakers, dates and instruments and consideration of amendment for particularity where appropriate.

### *Count Eight — civil conspiracy*

Count Eight is pleaded against all defendants, FAC ¶¶ 195–200, M:66/4946–4947; T:238-1/1645–1646. Fenton alleges a common plan connecting Chancery conduct, bankruptcy filings, the auction, and the distribution of property and proceeds, causing rental, property and business losses. The dated correspondence confirms contact among particular auction participants but is not a direct admission of an unlawful agreement. Tennessee requires a combination, common design, unlawful objective or means, actionable underlying wrong and injury. Trau-Med of America, 71 S.W.3d 691, 703 (Tenn. 2002). If the underlying tort fails, conspiracy ordinarily fails too; professional coordination in a legal sale is not necessarily a tortious agreement. The district court should analyze specific claimed agreement and underlying wrongful acts rather than assume that every person who communicated belonged to a conspiracy. Appellant preserves all pleaded participants and losses, subject to individualized proof, immunity and limitations,

and alternatively seeks consideration of amendment specifying the substantive wrong and each alleged participant's agreement.

## IV. Counts Nine and Ten — civil RICO, the actual original pleading, predicates and limitations

### *Count Nine: § 1962(b)*

Count Nine specifically names Virginia Lee Story, ¶¶ 201–208, M:66/4947–4949; T:238-1/1646–1648, and alleges that she acquired or maintained enterprise control through racketeering conduct. Civil § 1962(b) requires proof of acquisition or maintenance of an interest in or control of an enterprise by means of a pattern of qualifying racketeering activity. In addition, § 1964(c) requires a direct, compensable injury flowing from that acquisition/control violation, not simply injury caused by predicate acts independent of obtaining control. Fenton pleads personal-property, equity, income and relocation-related injury; the connection to a § 1962(b)-specific acquisition injury is an independent adverse obstacle. The original § 1962(c) allegations may support shared facts for relation-back purposes, but adding a different § 1962(b) element requires assessing whether the original conduct gave fair notice. Appellant seeks element-specific evaluation of Count Nine, and if inadequately pleaded, Rule 15 consideration without conceding the theory's abandonment.

### *Count Ten: § 1962(c), persons, enterprise and injury*

Count Ten identifies Story, Binkley, Ausbrooks, Story and Abernathy, Beeler, Yarbrough, Thomas Earl Eugene Anderson, Hostettler, Neuhoff & Davis, Marlin, McArthur Sanders Real Estate, and the Chancery Court. FAC ¶¶ 209–218, M:66/4949–4952; T:238-1/1648–1651. It alleges use of a purported enterprise to conduct a pattern of unlawful activities and causing loss of equity, income, and personal property. Reves v. Ernst & Young, 507 U.S. 170, 179 (1993), requires operation-or-management participation in enterprise affairs; Boyle v. United States, 556 U.S. 938, 946 (2009), requires a common purpose, relationships, and longevity for an association-in-fact enterprise. H.J. Inc., 492 U.S. at 239–43, requires related predicates and continuity, not just multiple allegations describing one closed transaction. Holmes, 503 U.S. at 268, and Anza, 547 U.S. at 457–61, require direct causation. A state court's ordinary judicial functions do not automatically establish an unlawful enterprise; judicial immunity and state sovereignty pose additional barriers to claims against judicial actors. The FAC calculates $624,600 in claimed property and rent-related economic injury and requests $1,873,800 after RICO trebling; those are pleaded amounts and remain subject to proof of direct RICO injury and the statutory remedy. M:66/4952.

*Original October 2023 RICO Count Six: verified comparison*

The **actual original complaint**, reproduced in the latter portion of the uploaded FAC compilation and bearing W.D. Mich. ECF 1, PageID.21–23, ¶¶ 92–99, expressly pleaded § 1962(c). It named **Story, Binkley, Ausbrooks, Yarbrough, Anderson, Marlin, and the Chancery Court**. Its ¶ 94 identified mail fraud (§ 1341), federal obstruction (§ 1503), Hobbs Act extortion (§ 1951), monetary transactions (§ 1957), and fraud connected with Title 11 proceedings. It identified a parcel dated October 21, 2019 and a parcel dated March 25, 2021. Paragraph 98 claimed $1,400 monthly lost business/employment income beginning September 2019, equity including retirement investments, and personal-property losses. Paragraph 99 specified a claimed equity calculation. These are original allegations, not proof that the offenses occurred.

The FAC maintains § 1962(c) in Count Ten and adds some persons and firms, including the firm, Beeler, HND and McArthur Sanders as separately named defendants. Rule 15(c)(1)(B) allows claims arising from conduct, transactions or occurrences attempted to be set out in the original pleading to relate back; the original complaint's same sale, enterprise, asserted communications and injury narrative provide a specific basis for comparison. But Rule 15(c)(1)(C) independently conditions relation back as to newly named defendants, including

notice and mistake within the applicable Rule 4(m) period. Neither notice nor mistake is established simply by the fact that a person later learned of the lawsuit. The district court's general limitations analysis, Doc. 236, PageID.1502, did not expressly conduct these separate comparisons. Original Count Six materially rebuts any premise that the § 1962(c) theory first arose in August 2024, but relation back is not automatic.

The original filings now provide a more specific proposed causal chain for the personal-property theory: the later Chancery order restrained removal of items that the earlier order allowed Fenton to retain; Fenton immediately protested; Story confirmed the new restriction and made subsequent storage-payment demands; Koval filed the two orders together before seeking a sale authorization invoking only the earlier order. ECF 19-6, PageID.2670; ECF 19-7, PageID.2675; ECF 57-1, PageID.4405, 4459, 4463–4466; Bankr. Docs. 52-3, 52-4, 54, 66. Those facts support pleading specificity as to communications and alleged injury; they must still be tied to an actual offense listed in § 1961(1), a pattern, enterprise conduct and proximate loss. A disputed state-court order or wrongful possession of household goods alone is not a listed RICO predicate.

### *Qualifying predicates and competing explanations*

Section 1961(1) governs qualifying acts. For mail fraud, § 1341 requires a scheme to defraud and use of mails to execute or further it, and Rule 9(b) requires particularity. A judicial document mailed on October 21, 2019 or March 25, 2021 does not establish mail fraud without identifying its contents, sender, scheme, material misstatement and causal connection to injury. Section 1503 requires the qualifying federal judicial proceeding and statutory nexus; allegedly improper Chancery proceedings do not automatically satisfy it. Hobbs Act extortion requires its own coercive taking/obtaining-of-property requirements and impact on commerce; a forced signature alleged by Fenton is relevant but not conclusive. Section 1957 requires qualifying criminally derived property and a monetary transaction exceeding the threshold with the prescribed knowledge. A real estate closing is not necessarily money laundering. Bankruptcy fraud predicates must be within § 1961(1); § 157 is expressly excluded from its bankruptcy-fraud category. Alleged violations of § 1519 or other offenses not listed may not independently qualify. Several other quoted statutory provisions are not general civil RICO predicates. Procedural error, even willful error, is not synonymous with racketeering.

They also permit adverse interpretations: private professionals carried out a court-authorized sale, mailings transmitted ordinary litigation documents, and the bankruptcy judge expressly authorized the sale by September 27. Appellant must establish predicate-specific deceptive purpose and direct injury despite those explanations.

### *Injury discovery and the four-year period*

Civil RICO has a four-year limitations period. Agency Holding Corp. v. Malley-Duff & Associates, 483 U.S. 143, 156 (1987). Rotella v. Wood, 528 U.S. 549, 555–58 (2000), rejects pattern-discovery accrual; Baltrusaitis v. United Auto Workers, 86 F.4th 1168 (6th Cir. 2023), explains that this circuit has not adopted separate accrual for civil RICO; even under that doctrine, a later predicate act must cause additional injury. Fenton vigorously opposed the threatened auction in 2019, but did not yet know it would extinguish his economic interest rather than produce an equitable distribution. He identifies the October 29, 2019 closing as the first point when the complete economic loss from that transaction became certain. His original complaint, filed October 13, 2023, preceded the fourth anniversary of closing. The court must separately determine whether closing produced a new, legally distinct, directly caused RICO injury, rather than equating knowledge of a threatened auction with discovery of every subsequent economic injury.

M:48/4014–4020; M:57-1/4442–4443. Separately, fraudulent concealment and diligence remain relevant to later-discovered federal notice defects. Original Count Six asserted § 1962(c) on October 13, 2023; Rule 15(c)(1)(B) may preserve claims arising from the same transactions as to existing defendants, while added parties require the distinct Rule 15(c)(1)(C) analysis. These grounds support reversal or a proper Rule 59(e)/15 assessment where the claim-specific elements are met.

The appellate relief sought for Counts Nine and Ten is vacatur where the court failed to address properly alleged elements and to apply relation back and accrual correctly; alternatively, remand to consider a specific Rule 15 amendment.

## V. Count Eleven — federal bankruptcy claims and the order's actual effect

Count Eleven alleges bankruptcy violations against Koval, federal Bankruptcy Judge Walker, Ausbrooks, Marlin, Thomas Anderson, McArthur Sanders Real Estate, Hostettler, Neuhoff & Davis, Story, Binkley, and the Chancery Court. FAC ¶¶ 219–231, M:66/4952–4955; T:238-1/1651–1654. Alleged injuries include the claimed co-owner interest, premarital investment, loss of equity and personal property, absence of notice and lost income.

The legal questions are whether the sale authority reached Fenton's interest, whether federal notice and hearing obligations were met, and what statutory and constitutional remedies remain available.

### *Estate property, plan and earlier stay*

The July 30, 2019 confirmation order is now verified directly from Bankruptcy Doc. 39. At page 5, Part 8.1 provides that estate property revests in the debtor upon discharge or closing, whichever occurs first, unless an alternative date is specified. Part 9 specifically addresses sale of 1986 Sunnyside Drive within 180 days after confirmation and incorporation of the Bank of America confirmation-objection resolution. At page 6, the conditional provision states that BancorpSouth would begin receiving monthly payments of $275 and that if the residence was not sold within 180 days of confirmation, lienholders would receive relief from the automatic stay to exercise contractual foreclosure and possession rights under state law. Bankruptcy Doc. 39, pp. 5–6 (filed July 30, 2019). That conditional future relief is not facial authority for a Chancery auction in August, although other prior stay relief or independent authority must still be examined. Sections 541, 1306, 1327, 362 and the full confirmation order govern whether the particular interest remained protected when the Chancery order was entered.

The August 6 and August 29 Chancery orders differed materially as to removal of personal property; both were submitted in the bankruptcy sale process. M:19-6/2669–2672; M:19-7/2674–2677; M:57-1/4500–4501. The federal court's reliance on the state sale process did not expressly resolve the ownership, possession or property-removal conflict.

### *The August order, September sale motion, notice and September 27 federal order*

Bankr. Doc. 52, signed by Koval, sought to employ the auctioneer while citing the Chancery auction order. Bankr. Doc. 54 sought expedited sale of real and personal property under § 363(f)(3). The September 27 Doc. 66 order followed a September 25 hearing and directed net proceeds to the Chancery Clerk pending further state orders. M:1-9/226–227; M:57-1/4500–4501.

The September 27 bankruptcy order recited notice to all parties and no objections, although Bankruptcy Doc. 60's federal sale-motion service list did not identify Fenton despite the petition acknowledging his deeded interest. Bankruptcy Doc. 52's auctioneer-employment notice likewise named trustees and the auctioneer, not Fenton; a listing agreement did not serve the distinct federal motion. Bankruptcy Doc. 63 records notice of the hearing order, with its full recipient list requiring separate verification. The sale order cited § 363(f)(3), without an express §

363(h)(3) benefit-versus-detriment finding for the co-owner. M:1-8/81; M:1-9/226–227; M:19-2/2632–2635.

### *Notice and co-owner interests*

CURE AND PREVENTION BEFORE LOSS. The July 29 Chancery response warned that Fenton lacked lender-account access, had two tenants, and faced loss of his only shelter and income; it proposed mortgage support or a three-to-six-month orderly sale. M:1-17/692–702, especially /697–701. Marsha Fenton swore from personal knowledge that she offered funds to cure arrears; she separately recounted Jeffrey's report of Story's refusal. Jeffrey's own sworn declaration describes that exchange. M:18/2446 ¶¶164–165; M:33/3315–3316. At the August 1 hearing, counsel stated he opposed immediate auction but also contemplated eventual sale; the distinction matters to whether an effective cure and meaningful opportunity were provided. M:22/2831–2833. These original accounts support the alleged preventable property deprivation and preserve the different evidentiary foundations of both witnesses.

Seliber's March 15, 2022 correspondence acknowledged Fenton's lack of notice of the federal sale motion but suggested Chancery authority made an objection unavailing. M:53-6/4279. That competing interpretation sharpens the legal

question: whether federal notice and the nondebtor co-owner's opportunity to be heard could be displaced by a state judicial authorization.

Fenton claims tenancy by the entirety based on the deed. ECF 19-1, PageID.2624–2628. Sections 363(f), (h), (i), and (j) regulate different sale configurations and co-owner protections. Sale free and clear under § 363(f)(3) does not automatically resolve all co-owner interests or necessarily authorize sale of a nondebtor's separately owned share. Whether an adversary proceeding under Bankruptcy Rule 7001 was necessary depends on what the order actually adjudicated, including an application of § 363(h), rather than simply labeling any sale an adversary proceeding. The absence of Fenton's personal deed signature is not conclusive where a valid judicial order authorized conveyance. Ownership, authority and legal effects require comparison of deed, Chancery orders, sale motion, Doc. 66 and conveyance instrument.

A particular obstacle is that § 363(f)(3) addresses sale free and clear of liens and does not by itself supply authority to convey a nondebtor co-owner's undivided title. If § 363(h) was necessary to sell both interests, the statute required its separate predicates, including benefit to the estate exceeding detriment to the co-owner under subsection (h)(3), and Bankruptcy Rule 7001(3) (2019) required an

adversary proceeding seeking approval. The two leases also present separate possessory interests; they do not automatically make each tenant a required adversary defendant under the same provision. Section 363(e) affords adequate protection on request where its criteria apply. Those requirements must be evaluated against independent Tennessee judicial-sale authority, stay relief, the actual § 363 order, possible finality under § 363(m), and remedies available without impermissibly undoing a completed sale.

The documented benefit/detriment problem is sharpened by the October 10 Chancery order's finding of no distributable proceeds to either spouse, ECF 19-11, PageID.2692, and Fenton's allegations of lost residence, retirement investment, rental income, possessions, and years of improvements. The later Chapter 7 trustee report describes a different liquidation (a Prius) and cannot alone establish whether the September home sale provided a benefit in the earlier Chapter 13 case. Bankr. Doc. 136, pp. 1–4; ECF 51, PageID.4161–4164. The § 363(h)(3) balance, if applicable, requires the entire cognizable estate benefit and total co-owner detriment, not a simple comparison of a claimed $250,000 loss with unsecured debts discharged later.

The signed Merriman and Garcia leases, totaling $1,400 monthly gross contractual rent, establish additional possessory and economic interests. M:45/3800–3813.

The § 363(f)(3) basis is particularly contestable because that subsection requires a lien and a sale price greater than the aggregate value of liens for that condition to apply, whereas § 363(h), notwithstanding (f), separately governs sale of both the estate's and a qualifying co-owner's interests. The September 27 order described a sale "subject to" the two mortgage liens, which also must be reconciled with its invocation of § 363(f)(3). The fact that Chancery separately ordered conveyance without Fenton's signature presents the opposing theory of an independently operative state judicial sale; whether that route avoided or violated the automatic stay requires analysis of the actual property interest, stay relief and order sequence. This is not resolved solely by comparing the lien balances with the auction price. 11 U.S.C. §§ 362(a), (b)(2)(A)(iv), 363(f)(3), (h); 28 U.S.C. § 1334(e)(1).

The relevance of Fenton's alleged lawful possession and a proposed feasible mortgage cure is not that a bankruptcy petition automatically required an adversary action against him on filing. Rather, an action to recover property, determine disputed interests, or obtain § 363(h) authority to convey both a debtor's and co-owner's interests could require an adversary proceeding under the 2019 version of

Bankruptcy Rule 7001(1)–(3). Nor does absence of a documented bank foreclosure complaint alone establish that there was no default or foreclosure risk: Tennessee deeds of trust may permit nonjudicial foreclosure, and the confirmed bankruptcy plan itself included conditional stay-relief provisions. The question is whether the defendants' claimed emergency justified the particular procedures and the harms alleged, given disputed cure opportunities, existing possession and leases, notice defects, and the later bankruptcy order.

### *Remedies, finality and independent injury*

Sections 362(k) and 363 do not confer interchangeable remedies. A § 362(k) damages claim requires the statutory willful-stay-violation elements and legally qualifying injury; other issues may require proceedings in bankruptcy court. Under MOAC Mall Holdings LLC v. Transform Holdco LLC, 598 U.S. 288 (2023), § 363(m) is nonjurisdictional but may protect a good-faith purchaser's sale from reversal; stays, preclusion and collateral-attack restrictions remain relevant. Judicial immunity protects adjudicative acts; trustees' administration may implicate *Barton* and *McKenzie*. A claim against the lawyers, auction professionals or closing entities requires their own duties, acts and causation. The question is which injury, if any, remains actionable without contradicting a final sale order.

Missing notice is not an automatic RICO predicate, and the federal order is not a defense to every conceivable independent tort.

## VI. Counts Twelve through Fourteen — civil rights, constitutional rights and ADA

### *Count Twelve: 42 U.S.C. §§ 1983 and 1985*

Count Twelve names Beeler, Binkley, Coke, Garrett, Hivner, Thomas and Samuel Anderson, Marlin, McArthur Sanders Real Estate, HND, Bankers Title & Escrow, Hildebrand, and designated state defendants, excluding the State in the count's defined formulation. FAC ¶¶ 232–246, M:66/4956–4961; T:238-1/1655–1660. It asserts interference with the property sale, meaningful participation, judicial access, and records. Section 1983 requires a federal right and action under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). A private lawyer, title agent, auctioneer or lender does not become a state actor merely by conducting a court-related transaction. Under Dennis v. Sparks, 449 U.S. 24, 27–28 (1980), private joint action with a judge can satisfy the color-of-law requirement if adequately alleged, even though the judge may be immune; a conspiracy label alone does not establish joint action. For § 1985(2) and (3), the distinct federal or state proceeding clauses and, where required, class-based discriminatory animus and conspiratorial interference must be demonstrated. Kush, 460 U.S. at 724–26; Griffin, 403 U.S. at 102–03. Disability-related unfairness is not automatically a § 1985(3) protected-

class conspiracy. Statutes of limitation, judicial and trustee immunity, municipal policy and identity of the defendants remain independently decisive. Appellant seeks review as to those specific combinations that satisfy state action, agreement, and actionable injury, while preserving each asserted claim and party for proper assessment or requested amendment.

### *Count Thirteen: constitutional rights*

Count Thirteen names Ausbrooks, Beeler, Binkley, Coke, Koval, Garrett, Hivner, both Anderson defendants, Marlin, McArthur Sanders Real Estate, HND, Bankers Title & Escrow, Hildebrand, Clement, Bennett, McBrayer, Walker, Story, Yarbrough and the defined state defendants. FAC ¶¶ 247–271, M:66/4962–4968; T:238-1/1661–1667. It alleges deprivation of property and meaningful opportunity to be heard, restrictions on speech or participation, and additional constitutional injuries. An appropriate cause of action is essential: § 1983 generally supplies the route for state-action constitutional claims, while federal-officer damages theories require different law and are not available for every alleged wrong. Will, 491 U.S. at 64–71, excludes states and appropriate state arms from § 1983 damages as 'persons'; federal constitutional rights do not automatically support direct suits against private actors. The Ninth Amendment ordinarily does not provide a free-standing damages claim. Certain acts attributed to Binkley are adjudicative and

protected by judicial immunity, even if alleged erroneous. Nonjudicial functions, conduct outside all jurisdiction and properly pleaded prospective relief require separate review, but are narrowly defined. Appellant asks that the pleaded property and process theories be analyzed under their proper vehicles and defenses, with amendment considered where identifying the remedial theory or responsible defendant could cure defects. Count Thirteen separately requests $450,000 in punitive damages against the specified nonexcluded defendants based on alleged malicious intent or reckless indifference. M:66/4968.

### *Count Fourteen: Title II ADA, retaliation and interference*

Count Fourteen names Binkley, Beeler, Walker, Clement, Bennett, McBrayer, Coke and defined state defendants. FAC ¶¶ 272–290, M:66/4968–4971; T:238-1/1667–1670. Fenton requested Tennessee appellate-court accommodations on July 8, 2020 under Policy 2.07 (ECF 1-38, PageID.2032–2045); a fax report indicates thirteen pages successfully transmitted (ECF 57-1, PageID.4566). These records evidence an actual request, not receipt by every official or a deliberate refusal. Under Tennessee v. Lane, 541 U.S. 509, 531–34 (2004), Title II reaches access to courts, but liability requires disability, exclusion by reason of disability and a necessary reasonable accommodation; compensatory damages ordinarily require the applicable intentional-discrimination showing. Section 12203

retaliation/interference requires distinct causation. Individual-capacity Title II claims are generally unavailable, and United States v. Georgia, 546 U.S. 151, 159 (2006), requires a claim-sensitive state-immunity analysis; Lane does not abrogate immunity for all pleaded wrongs. Appellant seeks review of specifically attributed denials, available prospective relief and properly supported damages, preserving all original demands.

### Approved supplemental constitutional questions — protective-order deprivation and judicial integrity

PROTECTIVE ORDER / QUASI-CRIMINAL CONSEQUENCES. Fenton alleges that the initial and extended orders operated as coercive and retaliatory restraints rather than merely preserving domestic peace, and that the 2020 extension occurred without a new motion, actual notice, hearing or sufficient cause. The amended Tennessee order reproduced in M:17-1/2341–2346 bears a September 24, 2020 filed-for-entry stamp; its form recites notice and an opportunity to be heard. The original notice, service records, full unannotated order, hearing docket, and any application for extension are needed to resolve that direct conflict. Tennessee appellate accommodation records appear at M:1-38/2032–2045 and a July 8, 2020 fax confirmation at M:57-1/4566–4567. The October 5, 2020 notice identifies specific protective-order and employment consequences, M:57-1/4528–4529.

Plaintiff alleges the order caused loss of firearm possession rights and employment access; he reports the order has since expired. These alleged past injuries should be separately evaluated under the pre-existing constitutional and ADA counts instead of being treated solely as a request for review of a state judgment. But Rooker–Feldman, judicial immunity, standing, limitations, adequate pleading of state action, and available relief require distinct answers; no federal jurisdiction to erase a state judgment is presumed.

INTERSTATE ENFORCEMENT AND PROCESS. Under 18 U.S.C. § 2265(a)–(b), mandatory interstate full faith and credit attaches to qualifying protection orders only where the issuing court had jurisdiction and the respondent received constitutionally sufficient notice and opportunity to be heard; for ex parte orders the statute also requires a legally and constitutionally timely opportunity to be heard. The statutory point is about conditions on interstate recognition, not a blanket private damages action or a guarantee that an out-of-state federal court may vacate the originating order. In addition to Fourteenth Amendment procedural due process, Fenton preserves the argument that criminally enforceable civil restrictions warrant rigorous constitutional safeguards, including a case-specific inquiry into whether counsel or comparably meaningful protections were required

given asserted indigence and disability-related impediments. The Sixth Amendment does not automatically attach to every civil order; criminal-contempt proceedings and actual criminal prosecutions must be analyzed separately. No new FAC count is being added here.

RETALIATION, INTERFERENCE, AND CAUSATION. Count Fourteen expressly invokes Title II and 42 U.S.C. § 12203. Sections 12203(a) and (b) must be addressed separately: adverse action after protected ADA activity, and threats, intimidation, coercion or interference with exercise or enjoyment of ADA rights, respectively. Fenton's July 2020 accommodation request, October 2020 notices, and claimed extension effects provide alleged protected activity, contemporaneous notice and injuries. The brief must identify which FAC-named defendant had actual knowledge, which act followed, why a causal connection is plausibly alleged, which entity or individual may be sued, and what remedies apply. The protective-order allegation should not be converted into a Hobbs Act extortion holding solely because Fenton felt coerced into silence; a Hobbs Act predicate requires legally qualifying obtaining or attempted obtaining of property. Preserve the separately pleaded property-related predicates subject to original-record proof.

EVENHANDED JUSTICE / KNOWING MISREPRESENTATIONS. The actionable question is whether specific defendants, acting under color of law or in legally qualifying joint action, knowingly used material misrepresentations or denied meaningful participation in ways that independently deprived Fenton of constitutional rights. Original-record comparisons include: the July 29, 2019 response by his own counsel warning of imminent homelessness, undisclosed mortgage status, two tenants, and less destructive alternatives, M:1-17/692–702; the August 1 hearing transcript, M:22/2818 onward; the August 6 and August 29 Chancery orders, M:19-6/2670 and M:19-7/2675; Fenton's August 30 prompt written challenge to the changed restrictions, M:57-1/4405; and the conflicting bankruptcy sale-notice record, Bankr. Docs. 54, 60 and 66, with U.S. Trustee trial counsel's March 2022 acknowledgment, M:53-6/4279. A recital in an order must not automatically resolve a material factual contradiction against plaintiff at Rule 12(b)(6); an allegation of intentional falsehood also does not automatically override judicial immunity or establish constitutional bias. Apply relevant standards to each official, private actor and adopted dismissal ground.

## VII. Defendant-specific independent defenses and the dismissal motions

Doc. 236, PageID.1496–1503, allowed the FAC, rejected Michigan venue/personal-jurisdiction motions as moot, and granted pending motions only

insofar as they sought Rule 12(b)(6) dismissal. Its separate Apple, Rooker–Feldman, preclusion, judicial/trustee/sovereign immunity and some limitations conclusions are contested elsewhere in this brief. The order did not adjudicate each Rule 4 objection or alternative Rule 56 request. Critically, its PageID.1495 identifies the second objection as Doc. 221[17]; the docket identifies the second objection as Doc. 222[18], whereas Doc. 221 is Fenton's Spragins service/appearance motion. That misidentification matters to whether service and motion objections actually received consideration, but is not, without prejudice or a legally material overlooking, reversible error.

Marlin and McArthur Sanders Real Estate (Counts Six, Eight, Ten–Thirteen as pleaded; FAC M:66/4933–4968; T:238-1/1632–1667): ECF 1-13, PageID.550–551, identifies Marlin and Anderson in contemporaneous opposition to the September 28 auction; ECF 19-11, PageID.2692, records proceeds allocated to expenses and liens, with none to either spouse. This links auction activity to the claimed dispossession, but not to fraud, Reves enterprise management, Dennis

---

17 https://fentonvstory.com/t/221.pdf

18 https://fentonvstory.com/t/222.pdf

joint state action, or an independently tortious act. W.D. Mich. ECF 92[19], PageID.5191–5210, also requested alternative Rule 56 relief. Doc. 236, PageID.1496, treated Michigan venue and personal jurisdiction as moot and did not grant summary judgment. The strongest response is that the pleaded contemporaneous objection and alleged affirmative sale participation must be tested under the particular tort or federal count rather than dismissed as only an attack on a divorce judgment; independent Rule 9(b), causation, state-action, and limitations deficits remain, with Rule 15 relief sought if properly available.

**Hostettler, Neuhoff & Davis (Counts Six–Eight, Ten–Thirteen; Docs. 133[20]–134): Doc. 236 allowed the FAC, defeating its nonoperative-pleading premise. Its other objections—firm-specific conduct, Rule 9(b) particularity, RICO management/predicates, § 1983 state action and Rule 4(h) service—cannot be answered by the firm's brokerage role alone. The alleged auction sequence and lost property interest, FAC M:66/4933–4968; T:238-1/1632–1667, permit a transaction-specific causation inquiry, but no separate false statement or unlawful agreement by HND is verified. Appellant seeks vacatur only for a**

---

19 https://fentonvstory.com/m/92.pdf

20 https://fentonvstory.com/t/133.pdf

**pleaded count supported by identified conduct and proper legal elements, or consideration of the preserved amendment request.**

Cadence/BancorpSouth (Counts Six–Eight; Doc. 170, PageID.168–196): FAC M:66/4875; T:238-1/1574, identifies the predecessor lender; ECF 1-17, PageID.699–700, records Fenton's contemporaneous complaint that he lacked mortgage information while attempting to preserve equity. That supports a plausible chronology of claimed delayed knowledge and loss, but not a bank-specific tort duty, knowing concealment, reliance or agreement. The appellate response to a categorical "no injury" premise is the documented equity and account-access allegation; the independent Rule 12(b)(6) response remains insufficient unless a particular lender act satisfying each Tennessee tort element and timely accrual is identified. Amendment is the alternative, without substituting a new claim.

Williamson County and Sheriff's Office (Counts Twelve–Fourteen and other pleaded counts; Docs. 171[21]–172[22], PageID.201–213): FAC M:66/4919–4920; T:238-1/1618–1619, alleges physical removal by deputies, an identified

21 https://fentonvstory.com/t/171.pdf

22 https://fentonvstory.com/t/172.pdf

governmental act and alleged possession injury distinct from mere dissatisfaction with a judgment. But Monell, 436 U.S. at 694, makes county § 1983 liability depend on a causative municipal policy or final policymaker; compliance with a state court order is not, without more, county policy. Title II likewise demands a particular denied service or reasonable modification attributable to a public entity; the separate July 2020 state appellate-court request, ECF 1-38, PageID.2032–2033, does not itself establish county notice. The sheriff's office suability, capacities, timely accrual and service remain unanswered; no Monell policy or independent county ADA denial is represented as verified.

Bank of America Corporation and Bank of America, N.A. (Counts Six–Eight; Docs. 173[23]–174, PageID.217–222): M:66/4870–4881; T:238-1/1569–1580, and ECF 1-17, PageID.699–700, distinguish the captioned corporation from the secured N.A. lender and show the alleged account-information problem. A cognizable investment or equity injury does not establish a misrepresentation by either entity, a duty to disclose to Fenton, justified reliance, outrageous conduct or unlawful conspiracy. The requested alternative is proper Rule 59(e)/15 review of

23 https://fentonvstory.com/t/173.pdf

any specific curative proposal, not imposing tort liability from a secured debt payoff.

Elaine Beeler, M.D. Tenn. Docs. 183[24]–184[25], PageID.327–342, advances improper service, quasi-judicial immunity, individual Title II nonliability, limitations and failure to state a claim. The FAC alleges record and court-access activity; ECF 57-1, PageID.4405, documents an August 30 communication copying Beeler about orders restricting property. Forrester v. White, 484 U.S. 219, 227–30 (1988), requires functional rather than job-title immunity analysis; purely administrative record handling may differ from actions executing a judge's directions. Actual Rule 4 service/extension record, capacity and limitations remain independently dispositive if the complaint cannot overcome them.

Henry E. Hildebrand III, M.D. Tenn. Doc. 185[26], PageID.343–352, asserts the Barton doctrine, lack of bankruptcy-court leave, trustee immunity, timeliness and insufficient federal civil-rights allegations. The FAC challenges administration linked to property loss, M:66/4952–4955; T:238-1/1651–1654. Under In re

---

24 https://fentonvstory.com/t/183.pdf

25 https://fentonvstory.com/t/184.pdf

26 https://fentonvstory.com/t/185.pdf

McKenzie, 716 F.3d 404, 413–14 (6th Cir. 2013), allegations of wrongful administration do not themselves defeat a trustee's protection. The 28 U.S.C. § 959(a) business-operation exception ordinarily does not include asset liquidation. No verified leave or outside-duty act presently answers these independent grounds; allegations and requested relief are preserved, without claiming an established exception.

Tennessee state defendants, M.D. Tenn. Docs. 190[27]–191[28], PageID.366–378, assert Eleventh Amendment and judicial immunities, absence of private criminal-statute remedies, deficiencies in officials' capacities and time bars. FAC, M:66/4870, 4968–4971; T:238-1/1569, 1667–1670, names governmental and judicial actors and seeks relief concerning property and court-access injuries. A state-court judicial act is generally immune even if alleged malicious, Mireles v. Waco, 502 U.S. 9, 11–12 (1991); Will, 491 U.S. 58, 71 (1989), limits damages under § 1983. An Ex parte Young, 209 U.S. 123 (1908), claim requires a proper state officer and prospective relief from an ongoing federal violation, not simply reversal of a past state order. Tennessee v. Lane, 541 U.S. 509 (2004), concerns

---

27 https://fentonvstory.com/t/190.pdf

28 https://fentonvstory.com/t/191.pdf

Title II access to courts but does not prove a denied accommodation. Pleaded ministerial acts, official capacities, sovereign-immunity limits, state-court relief and individual facts must be distinguished; independent immunity and remedy barriers remain unresolved.

Story, Story & Abernathy, and Yarbrough (defendant-specific count assignments differ; Story alone is expressly named in Count Nine, and Count Eleven names Story but not Yarbrough or the firm; FAC ¶¶ 116–227, M:66/4926–4955; T:238-1/1625–1654): STORY'S SUCCESSIVE REPRESENTATIONS AND THE ORIGINAL RECORD. Fenton identifies a cumulative sequence of materially disputed representations, not simply isolated litigation disagreements. At the August 1, 2019 hearing, Story attributed the absence of a home sale to Fenton's repeated excuses (M:22/2821–2822); the cited earlier correspondence instead records negotiations over proceeds, transitional support, and documented safeguards for surrendering his investment (M:1-26/1317–1318; M:44/3773, 3781). At the August 29 hearing, Story attributed to Fenton an agreement to leave by September 1; Fenton disputed that statement immediately, saying the deadline concerned the tenants (M:23/2867–2869). The prior written order directed tenant departure by August 30 but did not expressly direct Fenton to leave by September

1 (M:19-6/2669–2672). Story's October 21 affidavit described his handwritten letter as a desire not to contest the divorce; Fenton points to the conditions stated in that letter, including withdrawal of contested accusations (M:48/4004–4008). These cited comparisons support his pleading-stage inference of successively incomplete presentations, not an adjudicated finding of deliberate deception or court reliance. Their relevance to reversal depends on the particular post-issuance acts, reliance, privilege, limitations, and independent injuries pleaded in Counts Five, Seven–Ten and the claims actually naming each defendant. The independent misuse-of-process theory turns on acts after issuance: the August 29 order restricted removal of belongings previously permitted by the August 6 order; Story then confirmed that restriction, demanded storage/moving charges and sought disposition of remaining property. ECF 19-6, PageID.2670; ECF 19-7, PageID.2675; ECF 57-1, PageID.4459, 4463–4466; ECF 48, PageID.3993–3995. Under Bell v. Icard, 986 S.W.2d at 555, those demands must be tested as allegedly improper use of process for collateral property objectives, not merely motive or court filings. Direct property loss supplies a potentially independent injury under McCormick; privilege, orders authorizing acts, timeliness, causation and reliance remain defenses. Yarbrough is separately named in Counts Two–Six, Eight and Ten and, where expressly designated, Count Seven (M:66/4927–4952; T:238-

1/1626–1651). Fenton alleges firsthand that she personally prepared/coordinated inaccurate accusations and accelerated filings, impairing meaningful response; the allegation is not established by her employment or the conduct of Story. Specific signed filings, dates, contradictions, responses and post-issuance acts attributable to Yarbrough still must be matched to the FAC before tort, Rule 9(b), RICO or joint-action liability can be sustained. For Story's Count Nine, enterprise-acquisition injury under § 1962(b), distinct from sale injury alone, remains essential. Appellant seeks reversal of blanket judgment-source treatment of independently pleaded acts and, where a particular element is curable, review of Rule 59(e)/15 relief, without assuming the merits defects cured.

**Distinct procedural defenses and individualized service record.** Story and Story & Abernathy's W.D. Mich. ECF 76 (PageID.5055–5075) sought dismissal for service, the July 8 service order, amendment procedure, Michigan personal jurisdiction, and venue; its enumerated argument did not develop a separate Rule 12(b)(6) merits ground. Doc. 236, PageID.1493–1496, treated Michigan jurisdiction and venue objections as moot after transfer and did not expressly adjudicate ECF 76's service objection. Those procedural defenses cannot be recast as independently adopted merits holdings merely because Doc. 236 generally

referenced other defendants' Rule 12(b)(6) arguments. Separately, Yarbrough was not a movant in ECF 76: her registered-mail return, M.D. Tenn. Doc. 180, PageID.281–285, reports individual pickup and a signed USPS electronic receipt on October 25, 2024. Actual validity and timing of service remain legal questions under Rules 4(e) and 4(m), but her record must not be conflated with Story's or the firm's.

Rothschild & Ausbrooks; Alexander Koval (FAC Counts Seven–Eight and Eleven; Count Ten only as to actually named defendants, M:66/4940–4955; T:238-1/1639–1654; Koval also Count Thirteen, M:66/4962–4968; T:238-1/1661–1667): Koval personally signed the September 18, 2019 Bankruptcy Doc. 52 motion to employ the auctioneer and attached BOTH Chancery orders as Docs. 52-3 and 52-4; his separate expedited sale motion, Doc. 54, relied on the earlier August 6 order without reconciling the August 29 restriction on Fenton removing property. Bankr. Doc. 66 authorized sale September 27 and recited notice. Ausbrooks, not Koval, signed the Doc. 60 certificate whose recipient list omits Fenton. The debtor schedules identified Fenton as a spouse on the deed, ECF 19-2, PageID.2632; the later U.S. Trustee communication confirmed absence of sale-motion notice, ECF 53-6, PageID.4279. These originals connect particular counsel actions to the

claimed nondebtor notice/property injury; they do not show fraudulent knowledge, a personal duty of debtor's counsel to Fenton, required reliance, or an actionable RICO predicate. The September 27 final order, judicial protections, litigation privilege, § 363(m), limitations and remedy channel remain substantial adverse grounds. The narrower appellate proposition is that the September order cannot itself retroactively answer what authority existed in August or extinguish every independent personal-property or notice injury without the relevant legal analysis; reversal requires a viable civil remedy against each lawyer, not just an inaccurate recital.

Thomas and Samuel Anderson; Bankers Title & Escrow (FAC Counts Six, Eight, Ten–Thirteen where each is expressly named; M:66/4933–4968; T:238-1/1632–1667): The September 2019 auction correspondence specifically identifies Thomas Anderson, ECF 1-13, PageID.550–551; October 10 accounting reflects discharge of expenses and liens without distributions to either spouse, ECF 19-11, PageID.2692. Participation in auction/conveyance can cause distinct economic loss even if an order was entered, defeating a categorical judgment-source characterization. But no verified separate Samuel Anderson act, Bankers Title misstatement or reliance, unlawful agreement, § 1961 predicate, Reves

management, or Dennis joint state action presently supplies each count's necessary element. Proof of service for Bankers Title was filed as Doc. 201[29], PageID.493–509, reporting November 2, 2024 service; counsel appeared March 13, 2025 (Doc. 225[30]), before dismissal. The distinct transactional acts, Rule 9(b), entity capacity, timeliness and any merits defenses remain for actual count-specific adjudication or properly supported amendment.

Spragins, Barnett & Cobb; Rubin Lublin TN (all counts actually naming each preserved; FAC Count Seven expressly excludes both, ¶ 176, M:66/4940; T:238-1/1639): Doc. 221, PageID.1129–1163, sought to correct Spragins's name and compel appearance and attached service material; it was not the second objection cited by Doc. 236. Rubin Lublin moved to dismiss, W.D. Mich. ECF 86[31], on service, venue and merits grounds, so it was not nonappearing. Doc. 236 rejected Michigan venue objections as moot and granted Rule 12(b)(6) relief but did not decide service objections independently or explicitly resolve Doc. 221. The precise independently tortious conduct by either firm, underlying conspiracy wrong,

---

29 https://fentonvstory.com/t/201.pdf

30 https://fentonvstory.com/t/225.pdf

31 https://fentonvstory.com/m/86.pdf

litigation/collection privilege, limitations, and defendant-specific FAC counts remain unresolved.

Service/nonappearance and procedural preservation (Rules 4, 12, 55): Fenton requested individualized service determinations, defect identification, reissued Tennessee summonses, Rule 4(m) cure and USMS assistance where authorized. M:61/4740–4743; M:89–90; T:177/234–243; T:221/1129–1147; T:223/1224–1226, 1234–1236; T:224/1363–1367. The three allegedly repeatedly served, still-nonappearing private actors are Yarbrough, Koval and Spragins, Barnett & Cobb; Bankers Title appeared March 13, 2025. T:180/281–296; T:225. Koval moved for the disputed § 363(f)(3) sale; Fenton alleges Yarbrough enabled Story's misconduct. Spragins's individualized role and all three service records require evaluation, not assumptions of liability or default. Doc. 223 was held in abeyance March 11, before March 26 dismissal. On remand, Fenton requests defendant-specific service rulings, good-cause findings and Rule 4(m) extensions where mandatory or discretionary; reissued summonses, authorized alternative service or Rule 4(c)(3) assistance as appropriate; then lawful Rule 12 or 55 procedures if

warranted. His protective filings reserved full merits responses, T:211/715–716; T:224/1362, which were not completed before dismissal.[32][33][34][35][36][37]

PRESERVED CASE-MANAGEMENT REQUEST; PRE-SERVICE AND COMPOUNDING PREJUDICE. After Beckering's recusal, Maloney's reassignment and Kent's referral, Fenton contends that he was forced to defend the action against pre-service judicial dismissal and access obstacles before litigating defendants' merits. M:3–4/2092–2093; M:6/2096; M:8/2101–2106. Maloney expressly held that the paid-fee action could not then be dismissed for improper venue, yet identified an alternative sua sponte implausibility route. M:31/3291–3295. Fenton's contemporaneous declaration explained that Kent's recommendation diverted him from completing the FAC into substantial evidence filings to demonstrate merit. M:15/2188–2257. Kent denied ECF access, and service assistance remained disputed after months of delay. M:9/2107–2108;

32 https://fentonvstory.com/t/224.pdf

33 https://fentonvstory.com/t/180.pdf

34 https://fentonvstory.com/t/192.pdf

35 https://fentonvstory.com/t/223.pdf

36 https://fentonvstory.com/t/179.pdf

37 https://fentonvstory.com/t/194.pdf

M:16/2258–2266; M:55/4378–4384; M:60–62/4736–4760. Maloney vacated Kent's referral without reaching the recusal allegations. M:71/5045. Separately, Walker's own proposed order contemplated targeted redaction first, yet Maloney restricted three whole filings without an express infeasibility finding. M:136–137/5735–5736. After Fenton sought a narrow public substitute, Maloney acknowledged examining his submission but did not address the narrow-tailoring objection. M:141-1/5991–6011; M:141/5989–5990. These access events present a claimed independent public-access injury, not proven judicial motive or automatic reversal. Fenton sought access, service assistance and scheduling to litigate the merits. He alleges those obstacles diverted his efforts. Doc. 224 sought a seven-phase stay, service/access rulings and time for individualized responses; Doc. 223 sought service cure. T:223/1215–1241; T:224/1321–1327, 1358–1367. Fenton had completed NO defendant-specific merits response to ANY dismissal motion; his Story affidavit challenge sought Rule 11 oversight, not a full merits response. He reserved full opposition after threshold rulings, yet dismissal followed first. T:238/1516–1526. His Rule 59 motion challenged the judgment's characterization of his responses and its reduction of alleged bankruptcy and Chancery injuries to state-court orders. T:238/1514–1520, 1536–1540. The fourteen counts and numerous dismissal grounds compounded the burden. He contests procedural

prejudice without claiming that stay requests automatically suspended deadlines or establishing judicial intent. Fenton's February 2025 sworn Walker-address declaration expressly accepted targeted protection of residential details while challenging blanket document restrictions; he estimated roughly 400 diverted work hours and $1,000 in related expense during an active service-and-dismissal-motion period. T:218/1058; see supporting declaration and exhibits filed with T:217–219. The estimate is testimony, not adjudicated damages; he proposed narrower privacy protections.

Residual dispositive gaps requiring original-source checks: Story/firm privilege and timely tort elements; Yarbrough's individual acts; Koval's duty and bankruptcy finality; Anderson/Bankers Title individualized claims; Spragins/Rubin Lublin grounds; bank duties; county Monell policy; service validity and extensions; and actual prejudice from Doc. 236's Doc. 221/222 citation error. Preservation alone does not cure any independent dismissal ground.

## VIII. Independent time bars, statutory enforceability, Rule 59(e) and amendment

Doc. 236, PageID.1502, held that "some" claims were time-barred without identifying the accrual date for each count. Section IV addresses RICO's separate federal four-year analysis. Counts Six–Eight, and Twelve–Fourteen where

applicable, require distinct accrual, fraudulent concealment, discovery and estoppel analysis; denial of wrongdoing alone does not restart limitations. Federal law governs § 1983 accrual, with Tennessee's borrowed limitations period. Wallace v. Kato, 549 U.S. 384, 388 (2007).

The FAC expressly invoked equitable estoppel. M:66/4921; T:238-1/1620. Fenton sought critical dates from counsel in August 2019 and was instructed not to file pro se while counsel remained of record. M:48/4018. Before the auction, he challenged the compelled listing agreement, revoked his signature, objected to the sale, and asked for projected proceeds. M:57-1/4442–4443. His Rule 59(e) filing recounts efforts to obtain help during 2020–2021, his July 2, 2020 consultation with bankruptcy trustee McLemore, and his discovery of § 363's significance only when later transcribing that call. T:238 ¶¶83–86, 98. In January 2022, Acting U.S. Trustee Paul Randolph acknowledged six emails seeking review; on March 15, 2022, Trial Attorney Megan Seliber confirmed Fenton did not receive notice of the bankruptcy sale motion as a co-owner. M:1-13/564–566; M:48/4019. The FAC also alleges later discovery of undisclosed relationships among participants. M:66 ¶¶73–75. These pleaded acts, discoveries, and persistent attempts to obtain review support defendant- and claim-specific evaluation of fraudulent concealment and

equitable estoppel. Fenton knew about the threatened auction and some injuries in 2019; his separate argument concerns federal notice defects and alleged conflicts undisclosed despite his objections and years of investigation. The district court did not address those grounds count by count. The Rule 59(e) declaration also expressly invokes equitable estoppel based on Fenton's forced displacement from Tennessee and defendants' efforts to require litigation in the distant forum while electronic filing and remote participation remained unresolved. T:238-3/1775. This access-based ground accompanies, rather than replaces, the concealed-bankruptcy-notice theory.

Sections 66-27-123, 39-16-507, 39-15-510 and 36-4-101 face independent private-remedy or applicability objections. Appellant preserves every pleaded count, theory and existing form of relief, but does not assert that a new cause of action arises simply from a statutory violation. The October 13, 2023 original RICO complaint may satisfy Rule 15(c)(1)(B) for claims alleging the same transactions against existing parties; defendants added in the amended complaint require a separate Rule 15(c)(1)(C) inquiry. The alleged October 2019 deed, March 2021 mailing and March 2022 notice confirmation must each be tested for a distinct injury, discovery and diligent tolling, not simply deemed fresh accrual dates.

Fenton timely requested leave to improve citations and plead a Second Amended Complaint. T:238/1509. Postjudgment amendment requires reopening the judgment; Rule 59(e) is not a routine second pleading opportunity. Begala v. PNC Bank, 214 F.3d 776, 783–84 (6th Cir. 2000). Foman v. Davis, 371 U.S. 178, 182 (1962), identifies pertinent futility, delay, prejudice and good-faith considerations. Potential particularizations, only upon verification and authorization, concern the 2021 RICO mailing, defendant-specific auction/closing acts, knowledge of conflicting orders and notice omissions, ADA accommodation requests, and any municipal policy. The court was not automatically obliged to allow an inadequately proposed amendment; the question is whether it properly evaluated the concrete postjudgment request and asserted manifest injustice, rather than dismissing the Rule 59 motion as incomprehensible without addressing material identified contradictions. T:238/1509–1526, 1536–1550; T:245/1824–1825.

### Preservation of briefing-access objections under the September 25, 2026 Sixth Circuit order

Fenton preserves objections concerning service, access, case management and meaningful opportunity to address overlapping dismissal motions. T:223/1215–1241; T:224/1321–1374. The September 25, 2026 appellate order, 6:59-1, permits one principal brief and appropriate FRAP motions.

## CONCLUSION AND REQUESTED RELIEF

Appellant requests reversal or vacatur of the March 26, 2025 judgment and the May 19, 2025 postjudgment denial, and remand for adjudication of every legally reviewable issue across all fourteen FAC counts and all defendants named in the operative FAC, without abandoning claims or defendants on account of contested joinder or service. The Court should apply proper Rule 12 and Apple standards; independent-injury, preclusion and Tennessee tort analysis; distinct § 1962(b)/(c), original Count Six and Rule 15(c) analysis; bankruptcy stay, notice, co-owner, sale-order and remedies law; statutory remedies; constitutional, civil-rights and ADA requirements; individualized immunity, limitations, service/nonappearance and amendment issues. On remand, Fenton first seeks individualized service adjudication and lawful cure, appropriate participation by properly served outliers, resolution of access and accommodation requests, and a workable schedule for complete defendant-specific responses. This brief is not those completed responses. All pleaded relief remains sought, subject to lawful jurisdiction and review standards.

All monetary damages (including property equity, investment, rent, employment/business, personal-property and other asserted injuries), declaratory and equitable demands, requested vacation or expungement of orders, trebling or

other statutory enhancements where legally authorized, punitive relief where available, interest, fees and costs where authorized, and jury demand remain as pleaded, M:66/4972; T:238-1/1671. This reservation does not represent that any particular form of relief is necessarily within a federal district court's power. Alternative arguments and editing for economy do not waive any pleaded claim, defendant, alleged injury, theory or remedy. Specifically, the FAC pleads $624,600 in claimed property/rent damages, a Count Ten RICO trebling request of $1,873,800, a separate $300,000 punitive request in Count Ten, and a $450,000 punitive request in Count Thirteen, with the FAC's specified defendant exclusions and distinct remedies preserved. M:66/4952, 4968.

Respectfully submitted,

Jeffrey Ryan Fenton
Pro Se Plaintiff-Appellant
Sixth Circuit No. 25-5592
P.O. Box 400, Linden, MI 48451-0400
Notice@FentonvStory.com
https://FentonvStory.com
(P) 615.837.1300
#TNinjustice

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,995 words, excluding the parts exempted by Fed. R. App. P. 32(f) and Sixth Circuit Rule 32(b). This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)–(6).

Date: November 9, 2026    Signature:

## ADDENDUM — DESIGNATION OF RELEVANT LOWER-COURT DOCUMENTS

This designation identifies relevant district-court record counterparts and PageIDs under Sixth Circuit Rules 28(b)(1)(A)(i) and 30(g)(1). W.D. Michigan and M.D. Tennessee PageID sequences are distinct. Original bankruptcy docket Docs. 39, 52, 52-3, 52-4, 54, 60 and 66 must be checked for inclusion in the transmitted appellate record; reproduced counterparts include W.D. Mich. ECF 1-9, PageID.226–227, and ECF 19-6/19-7, PageID.2669–2676. Entries are organized by source docket in the table below; final Rule 30(g) designation and applicable record pagination remain subject to verification. Doc. 222 is confirmed from the original PDF at PageID.1164–1214; Doc. 223 is verified from its original filed copy, PageID.1215–1241 (27 pages).

| Record | Identified document | Pinpoint or range |
| --- | --- | --- |
| W.D. Mich. ECF 1 | Original complaint, especially original RICO | PageID.1–33; 21–23 |

| Record | Identified document | Pinpoint or range |
| --- | --- | --- |
| | Count Six | |
| W.D. Mich. ECF 1-2 | Marsha Fenton declaration, 2020 | PageID.48–63; 49–52 |
| W.D. Mich. ECF 1-9 | Reproduced Sept. 27 bankruptcy sale order | PageID.226–227 |
| W.D. Mich. ECF 1-12 | Property-interest, sale and value exhibits | PageID.479–528 |
| W.D. Mich. ECF 1-13 | Sale correspondence and notice-related exhibits | PageID.550–551 and cited pages |
| W.D. Mich. ECF 1-17 | July 29 response and request for short continuance | PageID.692–702 |
| W.D. Mich. ECF 1-38 | ADA request and professional letters | PageID.2032–2045 |
| W.D. Mich. ECF 18 | Marsha Fenton 2024 sworn declaration | PageID.2417–2488 (especially 2446) |
| W.D. Mich. ECF 19-1 | Deed, tax evidence | PageID.2624–2629 |
| W.D. Mich. ECF 19-2 | Bankruptcy schedules, plan and deed-interest description | PageID.2632–2646 |
| W.D. Mich. ECF 19-3[38] | U.S. Trustee attorney email on lack of sale notice | PageID.2648 |
| W.D. Mich. ECF 19-6 | August 6 Chancery order | PageID.2669–2671 |
| W.D. Mich. ECF 19-7 | August 29 Chancery order | PageID.2674–2676 |
| W.D. Mich. ECF 19-11 | October 10 Chancery sale | PageID.2692 |

38 https://fentonvstory.com/m/19-3.pdf

| Record | Identified document | Pinpoint or range |
|---|---|---|
| | proceeds order | |
| W.D. Mich. ECF 22 | August 1 Chancery transcript | PageID.2818–2862 |
| W.D. Mich. ECF 28 | McLemore-call declaration | PageID.3276–3288 |
| W.D. Mich. ECF 43 | Financial account-access and household budget exhibits | PageID.3717–3724 |
| W.D. Mich. ECF 45 | Merriman and Garcia original leases | PageID.3800–3813 |
| W.D. Mich. ECF 48 | September 2019 personal-property demands | PageID.3993–3995 |
| W.D. Mich. ECF 51 | January 2021 trustee accounting | PageID.4161–4168 |
| W.D. Mich. ECF 53[39] / 53-6 | Fenton bankruptcy affidavit and U.S. Trustee notice email | PageID.4258–4265; 4279 (ECF 53-6) |
| W.D. Mich. ECF 57-1 | 2019 proceedings, property correspondence, motions and ADA fax exhibits | PageID.4405, 4459, 4463–4466, 4502–4508, 4566–4567 |
| M:66 (W.D. Mich. ECF 66) | Original operative First Amended Complaint, all fourteen counts and prayer | PageID.4870–4972 |
| W.D. Mich. ECF 92 | Marlin / McArthur Sanders original dismissal motion | PageID.5191–5210 |

39 https://fentonvstory.com/m/53.pdf

| Record | Identified document | Pinpoint or range |
|---|---|---|
| W.D. Mich. ECF 95-1[40] | Original Walker individual-service return, as identified in later supplemental return | PageID.5252–5256 (cross-reference in M.D. Tenn. Doc. 194; original not independently rechecked) |
| W.D. Mich. ECF 126 | Federal Bankruptcy Judge Walker motion signed by AUSA Cobb | PageID.5704–5705 |
| M.D. Tenn. Docs. 133–134 | HND dismissal motion and memorandum | Doc. 133 PageID.212–223; Doc. 134 PageID.242–287 |
| M.D. Tenn. Doc. 136 | Motion to substitute AUSA Jones as counsel for federal Judge Walker | Doc. 136, p. 1 (filed 10/29/2024; original examined; PageID uncertain) |
| M.D. Tenn. Doc. 170 | Cadence dismissal memorandum | PageID.168–196 |
| M.D. Tenn. Doc. 172 | County / Sheriff's Office dismissal memorandum | PageID.201–213 |
| M.D. Tenn. Doc. 174 | Bank of America dismissal memorandum | PageID.217–222 |
| M.D. Tenn. Doc. 179 | Amended individual-service return for Bankruptcy Judge Walker | PageID.268–280 (filed 11/25/2024; original verified) |
| M.D. Tenn. Doc. 180 | Yarbrough amended service return | PageID.281–296 (reported receipt 10/25/2024) |
| M.D. Tenn. Docs. 183–184 | Beeler dismissal motion and memorandum | PageID.327–330; 331–342 |

40 https://fentonvstory.com/m/95-1.pdf

| Record | Identified document | Pinpoint or range |
|---|---|---|
| M.D. Tenn. Doc. 185 | Hildebrand dismissal motion | PageID.343–352 |
| M.D. Tenn. Docs. 190–191 | Tennessee state defendants’ dismissal papers | PageID.366–369; 370–378 |
| M.D. Tenn. Doc. 192 | Koval service return | PageID.379–408 (reported service 10/31/2024) |
| M.D. Tenn. Doc. 194 | Supplemental Walker service declaration, registered-mail and USPS delivery evidence | PageID.428–440 (especially 428, 432, 435–437; original verified) |
| M.D. Tenn. Doc. 201 | Bankers Title service return | PageID.493–509 (reported service 11/2/2024) |
| M.D. Tenn. Doc. 221 | Spragins naming and appearance motion | PageID.1129–1163; inspect original service exhibit |
| M.D. Tenn. Doc. 222 | Second objection; misnumbered as 221 in Doc. 236 | PageID.1164–1214 (51 pages; verified from original PDF) |
| M.D. Tenn. Doc. 223 | Second motion for extension/assistance with service; held in abeyance March 11, 2025 | Doc. 223 PageID.1215–1241 (verified against filed PDF) |
| M.D. Tenn. Doc. 224 | Motion to stay dispositive motions; identifies four allegedly served nonappearing defendants | PageID.1321–1374 (especially 1365) |
| M.D. Tenn. Doc. 225 | Bankers Title notice of appearance | Docket entry 03/13/2025 |

| Record | Identified document | Pinpoint or range |
|---|---|---|
| M.D. Tenn. Doc. 236 | Dismissal opinion and order | PageID.1491–1503 |
| M.D. Tenn. Doc. 237 | Final judgment | PageID.1504 |
| M.D. Tenn. Docs. 238 / 238-2 / 238-3 | Rule 59 motion; supplemental exhibit; sworn declaration | PageID.1505–1568; 1707–1752; 1753–1799 |
| M.D. Tenn. Doc. 238-1 | Public/redacted FAC counterpart (not operative); pleading body corresponds to M:66 | PageID.1569–1706; corresponding pleading body 1569–1671; appended exhibits 1672–1706 |
| M.D. Tenn. Doc. 245 | Rule 59 denial | PageID.1824–1825 |
| M.D. Tenn. Doc. 246 | Notice of appeal | PageID.1826–1831 |